**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TOLANO ANDERSON, CATHY ANDERSON, | ) | |
| RICHARD WILKINS, BRENDA WILKINS, | ) | |
| LLOYD WHEATLEY, and | ) | Civ. Action No. 06-_____ |
| AUDRIA WHEATLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| and WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF REMOVAL**

TO:    UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF DELAWARE

Defendants Wachovia Mortgage Corporation and Wachovia Corporation (collectively,

"Removing Defendants"), by and through their undersigned counsel, state the following in

support of their removal of this action pursuant to 28 U.S.C. §§ 1441 and 1446:

1.      On or about August 15, 2006, the above-captioned plaintiffs (collectively, the

"Plaintiffs") commenced a civil action in the Superior Court of the State of Delaware in and for

Kent County, captioned *Tolano Anderson, et al. v. Wachovia Mtg. Corp., et al.*,

docket 06C-08-022JTV.

2.      Plaintiffs' Complaint, a true and correct copy of which is annexed hereto as

Exhibit A, names each of the Removing Defendants as defendants.

3.      On August 25, 2006, the Sheriff of Kent County or one of his deputies served the

Removing Defendants' registered agent with the Complaint.  (*See* Kent County Docket, a true

and correct copy of which is annexed hereto as Exhibit B.)

4.     Plaintiffs' Complaint raises claims pursuant to 42 U.S.C. § 1981 (Complaint ¶ 72) and 15 U.S.C. § 1691 (Complaint ¶ 75).  The United States District Courts have original jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     Pursuant to 28 U.S.C. § 1441, the Removing Defendants hereby give notice of the removal of this civil action from the Superior Court in and for Kent County, Delaware, to the United States District Court for the District of Delaware.

6.     This notice of removal is being filed within thirty days after the Removing Defendants received Plaintiffs' state court Complaint, as required by 28 U.S.C. § 1446(b).

7.     Copies of this notice of removal will be duly filed with the Prothonotary of the Superior Court in and for Kent County.

Date:  September 12, 2006

_____
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL
       & LEWIS LLP
824 N. Market St., Suite 1001
Wilmington, DE  19801
(302) 888-4554

OF COUNSEL:

Elizabeth K. Ainsley, Esquire
Stephen A. Fogdall, Esquire
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2000

2

PHDATA 1391900_1

# EXHIBIT A

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| TOLANO ANDERSON, CATHY ANDERSON, RICHARD WILKINS, BRENDA WILKINS, LLOYD WHEATLEY, and AUDRIA WHEATLEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | C. A. No.  06C-08-022 JTV |
| v. | ) ) | NON-ARBITRATION |
| WACHOVIA MORTGAGE CORPORATION and WACHOVIA CORPORATION, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

**TO THE SHERIFF OF NEW CASTLE COUNTY**
**YOU ARE COMMANDED:**

To summon the above-named Defendant so that, within 20 days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon John S. Grady, Plaintiff's attorney, whose address is 6 North Bradford Street, Dover, Delaware 19904, an Answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense).

To serve upon Defendant a copy hereof and of the Complaint (and of the Affidavit of Demand, if any has been filed by Plaintiff.

_____

Prothonotary

Per:_____
Deputy

Dated:  8/18/06



EFiled: Aug 11 2006  2:24PM EDT
Transaction ID 12054556

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY: N **KENT** S          CIVIL ACTION NUMBER: ___O6C- 08 - 022 JTV___

CIVIL CASE CODE: __CDBT__          CIVIL CASE TYPE: __Debt/Breach of Contract__
(SEE REVERSE SIDE FOR CODE AND TYPE)

| CAPTION:<br>TOLANO ANDERSON, CATHY ANDERSON,<br>RICHARD WILKINS, BRENDA WILKINS,<br>LLOYD WHEATLEY, and AUDRIA WHEATLEY | NAME AND STATUS OF PARTY FILING DOCUMENT:<br><br>TOLANO ANDERSON, CATHY ANDERSON, RICHARD WILKINS, BRENDA WILKINS, LLOYD WHEATLEY, and AUDRIA WHEATLEY, Plaintiffs |
|---|---|
| Plaintiffs, | DOCUMENT TYPE: (E.G., COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>COMPLAINT, PRAECIPE, SUMMONS, CERTIFICATE OF VALUE |
| v. | NON-ARBITRATION **X**<br>(CERTIFICATE OF VALUE MAY BE REQUIRED)<br><br>Arbitration __ Mediation __ Neutral Assessment __<br>Defendant (Circle One) ACCEPT    REJECT |
| WACHOVIA MORTGAGE CORPORATION and WACHOVIA CORPORATION, | JURY DEMAND YES **X** NO ___<br><br>TRACK ASSIGNMENT REQUESTED: (CIRCLE ONE)<br>**EXPEDITED   STANDARD   COMPLEX** |
| Defendants. | |
| ATTORNEY NAME(S):<br><br>**John S. Grady, Esquire (#009)** | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR<br>COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING<br>JUDGE'S INITIALS |
| FIRM NAME:<br>**GRADY & HAMPTON, LLC** | |
| ADDRESS:<br>**6 North Bradford Street** | |
| **Dover DE   19904** | EXPLAIN THE RELATIONSHIP(S): |
| TELEPHONE NUMBER:<br>**(302) 678-1265** | |
| FAX NUMBER:<br>**(302) 678-3544** | OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: |
| E-MAIL ADDRESS: | |
| | (IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGES) |

EFiled: Aug 11 2006 2:24[...]
Transaction ID 12054556

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

TOLANO ANDERSON, CATHY ANDERSON,    )
RICHARD WILKINS, BRENDA WILKINS,    )
LLOYD WHEATLEY, and                 )
AUDRIA WHEATLEY,                    )
                                    )
            Plaintiffs,             )    C. A. No.
                                    )
    v.                              )    NON-ARBITRATION
                                    )
                                    )    JURY TRIAL DEMANDED
WACHOVIA MORTGAGE CORPORATION        )
and WACHOVIA CORPORATION,           )
                                    )
            Defendants.             )

## COMPLAINT

1.     Plaintiffs are all African Americans.

2.     At all times pertinent and for several years previous, Plaintiffs Tolano Anderson, Cathy Anderson, Lloyd Wheatley, and Audria Wheatley all had bank accounts at Wachovia Bank.

3.     Prior to June 2004, Plaintiffs Tolano Anderson,(hereafter referred to as Anderson) Cathy Anderson, Lloyd Wheatley (hereafter referred to as Wheatley), and Audria Wheatley between them had approximately six (6) mortgages and at least six (6) banking additional accounts all with Wachovia Bank.

4.     On or about June 2004, Plaintiff Tolano Anderson contacted J. D. Hogsten, (hereafter referred to as Hogsten) a loan officer for Defendants Wachovia, and told him that the Andersons, Wilkins, and Wheatleys planned to purchase three (3) homes located on Silver Lake whose addresses are 580 North DuPont Highway, 584 DuPont North Highway, 592 DuPont Highway from Mr. Jack Aigner.

5.    The Andersons and the Wheatleys intended to use their purchased homes as a primary residence; the Wilkins intended to us their purchased home as a secondary residence.

6.    Anderson explained to Hogsten that all three (3) homes had to be purchased. And that if one home was not purchased, all of them would collectively lose the $40,000.00 non refundable deposit, of which each had put in $13,333.33.

7.    - With that in mind, Hogsten advised Anderson how to proceed with the purchases and assured him that the bank understood that the sale was an individual sale, although the Andersons, Wilkins, and Wheatleys would all take title separately to three (3) different properties.

8.    Shortly thereafter, Anderson contacted Hogsten to discuss further financial plans, however, Hogsten was unavailable. So, Anderson spoke to Ms. Deanne Wilks and asked that she give the information to Hogsten.

9.    Wachovia Corporation is a large institutional bank which provides, among other things, mortgage services to its customers and to its applicants. The Andersons and Wheatleys were ongoing customers of the bank. Wachovia Mortgage Corporation is a subsidiary of Wachovia Corporation.

10.    Anderson explained to Hogsten that throughout the transaction he would be the key person to receive all the information for the Anderson, Wilkins, and Wheatleys.

11.    After the agreement of sale was signed and a deposit was put down, Hogsten advised Anderson that an appraisal will be needed for all the properties.

12.    Shortly thereafter, Anderson met with an appraiser assigned to appraise his home sent by Hogsten.

2

13.   At the time, it appeared to Anderson that Hogsten and the appraiser appeared to know each other well.  In fact, after the meeting the appraiser and Hogsten went out to lunch.

14.   Almost immediately upon meeting with the appraiser, Anderson was told by the appraiser that he could not appraise the house because there was some damage to the basement.

15.   Upon information of belief, the appraiser at that time refused to appraise the house upon the request of Hogsten, who had his own undisclosed reasons for undermining the aforesaid purchase.

16.   Hogsten then told Anderson that it would be impossible to have an appraisal because it was impossible to find comparable homes and, as a result, the bank would not be able to make the loan.

17.   Upon information of belief, Hogsten's comment that it was impossible to find other comparables was, in fact, a ruse and a second attempt to undermine the transaction of the Plaintiffs.

18.   Anderson thereafter contacted Carl Kaplin, another appraiser, who advised him that there were other comparables and, in fact, approximately ten (10) minutes time faxed him several other comparable homes.

19.   Thereafter, Anderson advised J. D. Hogsten that there were comparables and faxed them to him.

20.   Thereafter, Anderson asked Hogsten for another impartial appraiser for his property.

21.     Another independent appraiser did come out to appraise the property adjacent to DuPont Highway for $267,000 which was the purchase price.

22.     Shortly thereafter, a commitment letter was provided to Wilkins and Anderson.

23.     Hogsten had advised Anderson that he was not going to make enough money on this transaction because Anderson had contacted to Deanne Wilks on one occasion and because of that contact with Anderson, he had to split his commission with her.

24.     Upon information of belief, Hogsten had no intention of permitting the transaction to be completed, knowing at the time that it would cost Plaintiffs $40,000 in the loss of the deposit.

25.     After the appraisals were approved, Hogsten told Anderson that in order for the sale to be completed, he would require Anderson's home to be put into "move in" condition, even though it had been appraised for a total purchase price in the condition that it was in.

26.     On or about July 2, 2004, Dr. and Mrs. Wilkins met with Hogsten in his Wachovia office.  In the conversation, Hogsten informed the couple that the home being purchased by the Andersons was "nothing more than a pile of sticks and bricks and he could assign no value to it at all".

27.     The statement by Hogsten was further evidence of his seeking to undermine the entire transaction.

28.     Shortly thereafter, Hogsten informed Anderson that the property had significant value as a potential commercial property.  Hogsten asked Anderson if he would change the transaction from residential to commercial and Anderson said he did not wish to do so.

4

29.     Shortly thereafter, the Wilkins home appraisal was completed.   The home appraised at a value exceeding the sales price.

30.     After Mr. Hogsten informed Dr. Wilkins that he was now required to prove that the funds used for the deposit was his money and show its source.

31.     This is not normal customary practice of the bank.

32.     On or about July 23, 2004, Hogsten informed Dr. Wilkins that he was required to provide documentation proving that his deposit on the home was his own money.  This again, is not customary procedure of the bank.

33.     On or about July 23, 2004, Hogsten informed Anderson that the purchase of his property could not go though.  He said that there was not enough value in the property.  At that time, Anderson advised Mr. Hogsten that the required work was nearly complete and was ready for an impartial appraiser's assessment.  On that same day, Hogsten made additional negative comments about the pending transactions to Mr. & Mrs. Anthony Wallace, who were there at the bank on another matter.

34.     After the appraisal for the Anderson property was completed, the appraisal value was the same as the sales price.

35.     On or about July 2004, the appraisal for the Wheatley property was completed.  The value of the appraisal exceeded the sales price.

36.     Despite the fact that the Wheatley property appraised above the sales price, Hogsten informed Wheatley that he was now required to complete upgrades on the property to ensure that everything was in move in condition prior to settlement.

37.     Wheatley explained that as a buyer he did not want to waste thousands of dollars upgrading the house prior to settlement because he is planning custom upgrades

after the settlement. He also explained that he did not have access to the home and was not able to complete upgrades to sell his house prior to settlement. Despite the request by Wheatley, Hogsten refused to lift the bank's requirement.

38.    This was another attempt by Hogsten to undermine the sale of the properties.

39.    In order to assist Wheatley, Anderson intervened in the matter.

40.    Anderson questioned Hogsten about the bank's policy concerning appraisals, repairs, warranties, and such matters. Hogsten refused to answer his questions. Hogsten referred Anderson to a female loan officer to answer his question about the bank's policy.

41.    Anderson contacted the loan officer who told him that the bank's policies on issues of appraisals, repairs and warranties are confidential and are not available to the public. She said that the criteria used by Wachovia in such matters are for internal office use only and she could not discuss the matter.

42.    Wheatley thereafter requested of the owner access to the house so that upgrades demanded by the bank could be completed. The owner agreed.

43.    Wheatley then informed Hogsten that the required work had been completed.

44.    Hogsten sent the appraiser back to the house to conduct another appraisal. Once again, the appraisal said that the house was valued in excess of the sales price.

45.    All three (3) homes were finally scheduled for settlement on or about August, 2004.

46.    The Anderson and Wilkins settlements were completed. However, the Wheatley documents were not forwarded to the closing attorney by Wachovia.

6

47.    Even though the settlements of Anderson and Wilkins had been completed, Anderson and Wilkins were concerned because, unless the third property was settled, as per the agreement of sale, Plaintiffs could still lose the nonrefundable deposit of $40,000.

48.    When Anderson learned that the settlement papers had not been sent to the office of the closing attorney, he immediately contact Hogsten and was informed that Wachovia could not send the closing papers because it needed a letter from a certified contractor saying that the roof on the Wheatley home did not have any leaks.  This was another attempt to undermine the transactions.

49.    Anderson reminded Hogsten that if all three (3) properties did not settle that day, all the sales would be voided and they would lose over $40,000 in nonrefundable deposits.  Hogsten did not care.

50.    Anderson informed Hogsten that this new requirement about the certified letter from the contractor was unacceptable.

51.    Mr. Hogsten then stated that without the letter there would be no settlement and that it appeared the whole deal was off.

52.    The Seller, angered by the banks' actions, made a phone call to arrange for his personal contractor to fax a letter per Hogsten's request.

53.    When Anderson informed Hogsten that the letter was in route, Hogsten stated that the bank also wanted an additional fifteen percent (15%) down payment from Wheatley before it would be sending the closing documents.  This was another attempt by Hogsten to undermine the transactions.

54.    Anderson told Hogsten that this was an unexpected surprise and Wheatley was not prepared for the change.

7

55.   Hogsten suggested that the Seller reduce the sale price. The Seller declined.

56.   Hogsten then said that Wheatley would have to come up with the twenty percent (20%) of the purchase or the deal was off.  This transaction all took place at the settlement office of the attorney

57.   At that point, the Seller, in view of what he perceived as improper conduct by the bank, agreed not to void the entire transactions because he felt that the bank's actions were unreasonable.

58.   At that point, the Plaintiffs nevertheless, would still be subject to a $40,000 loss of their deposit, if all three (3) transactions did not go forward.

59.   Thereafter, Wheatley did obtain the twenty percent (20%) down payment from joint accounts.  By doing so, he was informed by Hogsten that if they pay the twenty percent (20%) they would not have enough cash resolve to qualify for the loan.  This was another attempt by Hogsten to undermine the transactions.

60.   The settlement date was scheduled for Wheatley was cancelled.

61.   On August 12, 2004, Destefano informed Wheatley that Wachovia was unable to obtain the PMI for his home and that the only way around that situation was to pay twenty percent (20%) down and eliminate the PMI requirement.

62.   Anderson attempted to contact a Mr. Skowronski and Mr. Destefano from Wachovia about the reasons for denying the PMI.  This was another attempt to undermine the transaction.

63.   Settlement was now scheduled for August 13, 2004.

64.   Wachovia now stated that a twenty percent (20%) down payment was required; however, at this time, Hogsten was on vacation at the Outer Banks.

8

65.    Mr. Aigner, the Seller, called Mr. Destefano at Wachovia and informed him that he was aware of the bank's inappropriate conduct and that the scheduled settlement was being sabotaged.  Mr. Skowronski intervened and approved the release of the loan documents and the settlement was finally completed.

66.    Upon information of belief, the numerous requests for appraisals, house improvements, and changes in developments, and other last-minute requirements imposed upon the Andersons and the Wheatleys were a violation of internal rules and regulations of the Defendants.

67.    Similarly situated whites were not required to meet all the requirements imposed upon the Plaintiffs to be eligible for a mortgage.

68.    A week or two before the August 6, 2004, settlement, Hogsten told Wheatley that he would be watched.  During the week of August 16, 2004, Hogsten contacted Anderson and told he had better be careful because the Bank would be watching him.  Anderson interpreted this as a veiled threat by the Bank that the Andersons would be subject to an unusually high degree of scrutiny.

## COUNT ONE

### The Andersons

69.    Plaintiff Anderson incorporates by reference, paragraphs 1 through 68.

70.    Requirements made upon all the Plaintiffs to complete the settlement were designed to discourage and undermine the settlement and stop the purchase of the aforesaid homes, and interfere with the agreement of sale between the Andersons and the Sellers.

9

71.    In similar situations, whites are not required to go through all of the appraisals, home improvements, and financial requirements imposed upon the Andersons.

72.    The conduct of the bank violated 42 U.S.C. §1981 which prohibits racial discrimination in contractual matters.

73.    The conduct of the Defendants constituted a tortuous interference with the contractual rights and business opportunities of the Andersons with the Sellers.

74.    The conduct of the Defendants constituted a breach of contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing.

75:    The conduct of the Defendants constituted a violation of Plaintiff's rights pursuant to 15 U.S.C. §1691 and 12 C.F.R. Part 202 in that Defendants was discriminating against Plaintiffs.

76.    As a result of the Defendants' conduct, the Andersons suffered the following damage.

   a. The humiliation, inconvenience and aggravation throughout the transactions.

   b. The cost of approximately $15,000.00 plus numerous man hours to refinish their home in a manner which  they would not have done except for the unreasonable requirement of the Bank even after the home had already been appraised for the value of the property.

WHEREFORE, the Andersons request that this Court award them general compensatory damages, for the inconvenience, humiliation, contractual damages for $15,000.00 plus additional labor that was put in the house that would not have otherwise been necessary and which was of no value to the Andersons, plus punitive damages, and attorney's fees and costs.

10

## COUNT TWO

## The Wheatleys

77.    Plaintiffs Wheatley incorporate by reference paragraphs 1 through 68.

78.    The requirement of the refurbishing of the home and the additional down payment put a strain on the Wheatley's other business transactions which Hogsten was aware of.   After six (6) months, the Wheatleys were forced to sell which cost them approximately $3,500.00 in transfer taxes.

79.    The Wheatley's did meet the home improvement requirements and spent approximately $50,000.00, which they could not afford and which they did not intend to do, to improve their house.

80.    Because of all the unanticipated funds Wheatley had to put into the house, he did not have those funds available for his business.   Wheatley estimates that he lost another $50,000.00 because of the unreasonable requirements of the bank.

81.    The conduct of the bank violated 42 U.S.C. §1981 which prohibits racial discrimination in contractual matters.

82.    The conduct of the Defendants constituted a tortuous interference with the contractual rights and business opportunities of the Wheatleys with the Seller.

83.    The conduct of the Defendants constituted a breach of the contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing.

84.    The conduct of the Defendants constituted a violation of Wheatley's rights pursuant to 15 U.S.C. §1691 and 12 C.F.R. Part 202 in that Defendants was discriminating against the Wheatleys.

11

WHEREFORE, the Wheatleys request this Court award them general compensatory damages for:

a. The humiliation and inconvenience and aggravation throughout the transactions.

b. To compensate them for the damages incurred which will remain necessary for making repairs which were not needed and should not have been required by the appraisal in the amount of $50,000 plus the additional cost of prematurely selling their property which cost them $3,500.00, plus at least $50,000.00 in loss of business opportunities, plus the loss of the increase in value of their home had they been able to keep it, plus the loss of the use of $40,000.00 which was required as a down payment, plus punitive damages and attorney's fees.

## COUNT THREE

### The Wilkins

85.    Plaintiffs Richard Wilkins and Brenda Wilkins incorporate by reference, paragraphs 1 through 68.

86.    The Wilkins entered into an agreement of sale for the purchase of three (3) homes with their friends, the Andersons and the Wheatleys, in order to own waterfront property on Silver Lake.

87.    The transaction was a joint effort depending upon all three individuals obtaining mortgage approval for the purchase of these properties.

88.    Upon the signing of the original contract, the Wilkins were confident that all three would be able to obtain financing from a reasonable lender.

89.    The conduct and treatment of the Andersons and the Wheatleys up until August 13, 2004 subjected them to possible loss of the funds.

90.    They also experienced aggravation, inconvenience and humiliation in dealing with Wachovia Bank.

91.    The conduct of the bank violated 42 U.S.C. §1981 which prohibits racial discrimination in contractual matters.

92.    The conduct of the Defendants constituted a tortuous interference with the contractual rights and business opportunities of the Wilkins with the Sellers.

93.    The conduct of the Defendants constituted a breach of contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing.

94.    The conduct of the Defendants constituted a violation of Plaintiff's rights pursuant to 15 U.S.C. §1691 and 12 C.F.R. Part 202 in that Defendants was discriminating against Plaintiffs.

95.    As a result of the conduct of the Defendants, the Wilkins the humiliation, inconvenience and aggravation of being treated in an inferior manner in connection with the mortgage application.

    a.    The humiliation, inconvenience and aggravation of being treated in an inferior manner in connection with the mortgage application.

WHEREFORE, the Wilkins demand general compensatory damages for the humiliation, aggravation and inconvenience, punitive damages and attorney fees and costs.

GRADY & HAMPTON, LLC

_____/S/_____John S. Grady_____
John S. Grady (I.D. 009)

13

6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*

DATE:    August 10, 2006

14

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| TOLANO ANDERSON, CATHY ANDERSON, RICHARD WILKINS, BRENDA WILKINS, LLOYD WHEATLEY, and AUDRIA WHEATLEY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 06C-08-022 JTV |
| v. | ) ) | NON-ARBITRATION |
| WACHOVIA MORTGAGE CORPORATION and WACHOVIA CORPORATION, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

<u>CERTIFICATE OF VALUE</u>

Plaintiffs hereby certify that the value of this case is exceeds of $100,000.00.

GRADY & HAMPTON, LLC

_____/S/____John S. Grady_____
John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*

DATE:        August 11, 2006

# EXHIBIT B

Click to Print

Printed on: Tuesday, September 12, 2006 10:59:15 EDT

## Case History Search

Search Created:
Tuesday, September 12, 2006 10:59:15 EDT

| | | | | | |
|---|---|---|---|---|---|
| **Court:** | DE Superior Court-Kent County | **Judge:** | Vaughn, James | **File & Serve Live Date:** | 8/11/2006 |
| **Division:** | Civil | **Case Number:** | 06C-08-022-JTV | **Document(s) Filed:** | 8 |
| **Case Type:** | CDBT - Debt/Breach of Contract | **Case Name:** | Anderson, Tolano et al vs Wachovia Mortgage Corp et al | **Date Range:** | All |

1-3 of 3 transactions   <<Prev Page 1 of 1 Next>>

| Transaction | ▽Date/Time | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|---|---|
| 12288276 | 9/7/2006 9:42 AM EDT | File Only | 06C-08-022-JTV Anderson, Tolano et al vs Wachovia Mortgage Corp et al | John S Grady, Grady & Hampton LLC | 3 | Praecipe | Alias Praecipe • Linked to (1) | 0.2MB |
| 12262338 | 9/5/2006 9:51 AM EDT | File And Serve | 06C-08-022-JTV Anderson, Tolano et al vs Wachovia Mortgage Corp et al | Lisa M Lowman, DE Superior Court-Kent County | 2 | Sheriffs Return | Sheriff's Return for Wachovia Corporation | 0.5MB |
| 12054556 | 8/11/2006 2:24 PM EDT | File Only | 06C-08-022-JTV Anderson, Tolano et al vs Wachovia Mortgage Corp et al | John S Grady, Grady & Hampton LLC | 1 | Complaint | Complaint | 0.1MB |
| | | | | | | Praecipe | Praecipe • Linked from (1) | 0.1MB |
| | | | | | | Case Information Statement | Case Information Statement | 0.1MB |
| | | | | | | Summons | Summons - New Castle County | 0.1MB |
| | | | | | | Summons | Summons - Kent County | 0.1MB |
| | | | | | | Certificate of Value | Certificate of Value | 0.1MB |

1-3 of 3 transactions   <<Prev Page 1 of 1 Next>>

**LexisNexis** *File & Serve*