# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## OPENING BRIEF OF DEFENDANTS WACHOVIA MORTGAGE CORPORATION AND WACHOVIA CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

---

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

Michael J. Barrie
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Counsel for Defendants Wachovia Mortgage Corporation*
*and Wachovia Corporation*

September 20, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 1

SUMMARY OF ARGUMENT ...................................................................................... 3

CONCISE STATEMENT OF FACTS ........................................................................... 5

ARGUMENT ............................................................................................................... 10

I.      All Of Plaintiffs' Claims Are Time Barred ........................................................ 11

II.     Plaintiffs Fail To State A Claim Under The Equal Credit Opportunity Act
        Or Under Section 1981 ...................................................................................... 14

III.    Plaintiffs Fail To State A Claim Under Delaware Contract Law ........................ 17

CONCLUSION ........................................................................................................... 23

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexis v. International Harvester, Inc.*, 2003 U.S. Dist. LEXIS 15671
(E.D. Pa. July 29, 2003) ....................................................................... 14

*Andrews v. Abbott Labs.*, 2002 U.S. Dist. LEXIS 6832 (D. Del. Apr. 18, 2002) ............. 12

*Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573 (D. Del. 2006) ........................... 16

*In re Chiang*, 385 F.3d 256 (3d Cir. 2004) ....................................................... 15

*Floyd v. Saturn of Newark*, 2006 U.S. Dist. LEXIS 2466 (D. Del. Jan. 24, 2006) .... 11, 16

*General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375 (1982) ........................ 14

*Hood v. Midwest Sav. Bank,* 95 Fed. Appx. 768 (6th Cir. 2004) ...................................... 15

*Latimore v. Citibank Federal Sav. Bank*, 151 F.3d 712 (7th Cir. 1998) ................ 16, 17, 18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................. 15, 16, 17

*Monahan v. City of Wilmington*, 2004 U.S. Dist. LEXIS 1322 (D. Del. Jan. 30,
2004) ............................................................................................... 12

*Pagano v. Hadley*, 553 F. Supp. 171 (D. Del. 1982) ......................................................... 13

*Pension Benefit Guaranty Corp. v. White Consolidated Industrial, Inc.*, 998 F.2d
1192 (3d Cir. 1993) .......................................................................... 20

*Powell v. American General Finance, Inc.*, 310 F. Supp. 2d 481 (N.D.N.Y. 2004) ........ 14

*Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117 (D. Del. 2003) ........................................ 11

## STATE CASES

*American Homepatient, Inc. v. Collier*, 2006 Del. Ch. LEXIS 79 (Apr. 19, 2006) ......... 18

*Ayres v. Jacobs & Crumplar, P.A.*, 1996 Del. Super. LEXIS 565 (Dec. 31, 1996) ......... 13

*Cypress Associates, LLC v. Sunnyside Cogeneration Associates Project*, 2006
Del. Ch. LEXIS 61 (Mar. 8, 2006) ................................................. 21

*Daystar Construction Management, Inc.*, 2006 Del. Super. LEXIS 286 (July 12, 2006) ...................................................................................................... 21

*Little Peoples, Inc. v. Robin's Nest Child Care, Inc.*, 1996 Del. Super. LEXIS 266 (July 18, 1996) ........................................................................................ 18

*Patterson v. Vincent*, 61 A.2d 416 (Del. 1948)............................................... 13

*Pierce v. International Insurance Co. of Illinois*, 671 A.2d 1361 (Del. 1996)................ 19

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999) ...................................... 20, 21

## FEDERAL AND STATE STATUTES

42 U.S.C. § 1981.................................................................................*passim*

15 U.S.C. § 1691..................................................................................... 2

15 U.S.C. § 1691e............................................................................... 3, 11

10 Del. C. § 8119 ................................................................................ 3, 12

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

A.    **Nature Of The Proceeding**

In this action, plaintiffs seek to convert inadequately-pled contract claims under Delaware law into federal claims based on race discrimination by tacking onto their allegations the conclusory assertion that "similarly situated whites" were not required to comply with standard loan conditions that plaintiffs, who are African-American, allege were imposed on them. Plaintiffs allege that defendants Wachovia Mortgage Corporation and Wachovia Corporation (collectively, "Wachovia") required them to comply with standard lending practices -- such as repairing their homes and paying a twenty-percent down payment in the absence of primary mortgage insurance -- prior to agreeing to give plaintiffs mortgage loans for the purchase of three properties on North DuPont Highway, in Dover, Delaware.

Plaintiffs do not assert that there was no basis for the loan conditions Wachovia allegedly imposed. Plaintiffs do not contend that the properties did not need to be repaired. Plaintiffs merely assert that they did not wish to make these repairs. Likewise, plaintiffs do not deny that lenders generally require a twenty-percent down payment in the absence of primary mortgage insurance ("PMI"), and do not deny that Wachovia could not obtain PMI for one of their loans. Plaintiffs merely assert that this was a "surprise" and that they were not "prepared" for the additional down payment.

Nor do plaintiffs make any allegation that these conditions were purposefully imposed because of their race. They do not allege that any employee at Wachovia expressed any racial animus or even mentioned plaintiffs' race on any

occasion.  The sole basis for their claim of race discrimination is that similarly situated whites allegedly were not required to comply with the conditions they assert were imposed on them.  As discussed below, this allegation is insufficient as a matter of law to state a claim for race discrimination.  Plaintiffs must allege that Wachovia purposefully discriminated against them, and they have made no attempt to do so.

In addition to their putative claims for race discrimination, plaintiffs also attempt to assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  These claims likewise fail.  Plaintiffs' core contention is that they agreed to conditions of their loans that they now regret.  No court ever has recognized a claim for breach on such allegations, and this Court should refuse to do so here.

### B.    Stage Of The Proceeding

On August 11, 2006, Plaintiffs filed their complaint in Kent County Superior Court, asserting four claims:

First, plaintiffs allege that by requiring them to make repairs to the properties and comply with other standard loan conditions that were not imposed on "similarly situated whites," Wachovia violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a), which forbids "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race [or] color . . . ."  Complaint ¶¶ 75, 84, 94.[1]

---

[1]    Plaintiffs' complaint is included in the Appendix beginning at A-01.

Second, plaintiffs allege that by requiring them to comply with these standard loan conditions, Wachovia violated 42 U.S.C. § 1981(a), which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  Complaint ¶¶ 72, 81, 91.

Third, plaintiffs allege that by requiring them to comply with these standard loan conditions, Wachovia "tort[i]ous[ly] interfere[d]" with plaintiffs' contract of sale with the seller of the properties.  Complaint ¶¶ 73, 82, 92.

Fourth, plaintiffs allege that by requiring them to comply with these standard loan conditions, Wachovia "breach[ed] [the] contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing."  Complaint ¶¶ 74, 83, 93.

On September 13, 2006, Wachovia removed the action to this Court, and now moves to dismiss plaintiffs' complaint.

## SUMMARY OF ARGUMENT

1.    All of plaintiffs' claims are time-barred.  Plaintiffs' ECOA claim is subject to a two-year statute of limitations under 15 U.S.C. § 1691e(f).  Plaintiffs' Section 1981 claim is subject to Delaware's two-year statute of limitations for personal injury actions under 10 Del. C. § 8119.  Lastly, because plaintiffs are seeking compensation for alleged emotional and dignitary harms as a result of being treated in an "inferior manner," Complaint ¶ 95, plaintiffs' claims for tortious interference and breach of

contract also are subject to the two-year personal injury statute of limitations. Because plaintiffs filed their complaint more than two years after the alleged "discrimination" in this case took place, plaintiffs' claims should be dismissed as untimely.

2.  Plaintiffs' claims under ECOA and Section 1981 should be dismissed because plaintiffs do not -- and cannot -- allege purposeful discrimination. Nowhere in plaintiffs' complaint do they assert that plaintiffs were required to make repairs to the properties and comply with other such standard conditions because of their race. Instead, they assert only that "similarly situated whites" were not required to comply with these conditions. Complaint ¶ 67. While in certain contexts such an allegation may be sufficient to state a *prima facie* case of race discrimination, this is not one of those contexts. Moreover, plaintiffs have no claim for discrimination when, on their own allegations, they did receive the loans from Wachovia and successfully purchased the properties.

3.  Plaintiffs' claims for tortious interference and breach of contract also fail. As to plaintiffs' tortious interference claim, Wachovia could not have interfered with plaintiffs' contract with the seller of the properties when that contract never was breached: on their own allegations, plaintiffs did in fact purchase the properties. As to plaintiffs' breach of contract claim, plaintiffs cannot complain that they had to make repairs to the properties when, on their own allegations, they would have made these repairs in any event, and signed mortgage contracts in which they expressly promised to do so. Nor can they complain that they had to increase the down payment on one of the properties when Wachovia could not obtain PMI for one of the loans. Plaintiffs voluntarily chose to purchase these properties and chose to accept the standard conditions

that these purchases entailed.  As a matter of law, plaintiffs can have no claim for breach

of contract or breach of the implied covenant of good faith and fair dealing based on their

voluntary acceptance of loan conditions that they now regret.

## CONCISE STATEMENT OF FACTS

Plaintiffs in this action are three African-American couples:  Tolano and

Cathy Anderson, Richard and Brenda Wilkins, and Dr. Lloyd and Audria Wheatley.

### A.     Anderson's Initial Meeting With Hogsten

According to plaintiffs, in June 2004, Tolano Anderson contacted J.D.

Hogsten, "a loan officer for Defendants Wachovia," about plaintiffs' plans to purchase

three properties located on North DuPont Highway from a Mr. Jack Aigner.  Complaint ¶

4.  Anderson allegedly told Hogsten that "all three (3) homes had to be purchased.  And if

one home was not purchased, all of them would collectively lose the[ir] $40,000.00

nonrefundable deposit."  Complaint ¶ 6.

Hogsten informed Anderson that their loans would be subject to the

satisfaction of certain conditions, including an approved appraisal of the properties.

Complaint ¶ 11.

After Anderson's conversation with Hogsten, plaintiffs allege that they

signed an agreement of sale with Aigner and paid the $40,000.00 deposit.  Complaint ¶

11.

**B.      The Andersons' Property**

The property the Andersons intended to purchase was scheduled to be appraised shortly after Anderson's initial meeting with Hogsten.  Complaint ¶ 12.  But, according to plaintiffs, the appraiser told Anderson that he could not appraise the house because there was damage to the basement.  Complaint ¶ 14.  Plaintiffs do not deny that the property was damaged, but assert that the appraiser refused to do the appraisal on instructions from Hogsten, "who had his own undisclosed reasons for undermining the aforesaid purchase."  Complaint ¶ 15.

Notably, plaintiffs do not allege that the appraiser refused to appraise the property because of their race.  Nor do they allege that Hogsten acted out of racial animus in supposedly telling the appraiser not to complete the appraisal.  Plaintiffs merely assert that Hogsten had "his own undisclosed reasons" for blocking the transaction.

As further evidence of Hogsten's "undisclosed reasons for undermining" plaintiffs' purchases, plaintiffs allege that Hogsten later told Anderson that he was "not going to make enough money on this transaction" because he would have to split his commission with another Wachovia loan officer who had spoken with plaintiffs.  Complaint ¶ 23.  Plaintiffs assert that "Hogsten had no intention of permitting the transaction to be completed, knowing at the time that it would cost Plaintiffs $40,000 in the loss of the deposit."  Complaint ¶ 24.[2]

---

[2]      Plaintiffs' complaint leaves it a complete mystery why a Wachovia loan officer would want to intentionally undermine a loan transaction, depriving his employer of potential profits and himself of a commission, simply to cause plaintiffs the

*…Continued*

According to plaintiffs, Anderson eventually obtained an approved appraisal for the property and received a commitment letter from Wachovia for a loan. Complaint ¶¶ 21, 22.  Hogsten then told Anderson that his home would have to be "put into 'move in' condition" before he could obtain the loan.  Complaint ¶ 25.  According to plaintiffs, Anderson accepted this condition and performed the necessary work to put the home into "move in" condition.  Complaint ¶ 33.

### C.    The Wheatleys' Property

The property the Wheatleys intended to purchase was appraised in July 2004.  Complaint ¶ 35.  Plaintiffs allege that the appraisal exceeded the sales price of the property.  Complaint ¶ 34.  Nevertheless, according to plaintiffs, Hogsten informed Wheatley that he would be "required to complete upgrades on the property to ensure that everything was in move in condition."  Complaint ¶ 36.  Wheatley allegedly responded that he "did not want to waste thousands of dollars upgrading the house prior to settlement because he is planning custom upgrades after the settlement."  Complaint ¶ 37.[3]

---

*Continued from previous page*

loss of $40,000.  Nor do plaintiffs suggest why Hogsten would be motivated to do this simply because his commission would not be "enough money."  In any event, even if this allegation is true, on its face it is not a discriminatory reason for attempting to undermine the transaction.

[3]    Plaintiffs make no attempt to explain why it would be a "waste" to make upgrades to the house, particularly when the Wilkins already were "planning custom upgrades."

### D.    The Wilkins' Loan Application

Plaintiffs allege that when Dr. Wilkins applied for the Wilkins' loan, Hogsten informed him that he would have to "prove that the funds used for the deposit were his money and show its source."  Complaint ¶ 30.  Plaintiffs assert that "[t]his is not normal customary practice of the bank," Complaint ¶ 31.[4]

### E.    Settlement Of The Properties

Plaintiffs allege that the three homes were scheduled for settlement "on or about August 2004."  Complaint  ¶ 45.  The Anderson and Wilkins settlements were completed on August 6, 2004.  Complaint ¶ 46, 68.  At the closing, both the Andersons and the Wilkins signed mortgage contracts in which they expressly promised to "promptly repair the Property if damaged."[5]

Plaintiffs allege that the settlement for the Wheatley property could not be completed on August 6, 2004 because "Wachovia was unable to obtain the PMI" for the Wheatley home.  Complaint ¶ 61.  Hogsten informed plaintiffs that, as a result, the Wheatleys would need to put down an additional 15% on the home (to bring their down

---

[4]    In fact it is a standard procedure in loan underwriting.  By way of background, this is known as "sourcing and seasoning" the borrower's funds.  *See, e.g*, http://www.mortgageunderwriters.com/prepare.html (advising home buyers that "[l]enders must see that you have had the [funds to close] for three months, [and] they must see where it came from.").

[5]    A-23, A-41.  The Court properly may consider these mortgage contracts without converting this motion into one for summary judgment.  *See, e.g., Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

payment up to 20%).  Complaint ¶ 53, 56.  According to plaintiffs, this was "an unexpected surprise and Wheatley was not prepared for the charge."  Complaint ¶ 54.

Plaintiffs assert that at this point "the Seller, in view of what he perceived as improper conduct by the bank, agreed not to void the entire transactions."  Complaint ¶ 57.  But plaintiffs allegedly still would lose the $40,000.00 deposit if the sale of the Wheatley property was not completed.  Complaint ¶ 58.

The settlement of the Wheatley property was rescheduled for August 13, 2004.  Complaint ¶ 63.

When Wachovia reiterated that the Wheatleys would be required to increase their down payment to 20%, Aigner allegedly called a "Mr. Destefano at Wachovia and informed him that he was aware of the bank's inappropriate conduct and that the scheduled settlement was being sabotaged."  Complaint ¶ 65.  At that point, allegedly, a "Mr. Skowronski intervened and approved the release of the loan documents."  Complaint ¶ 65.

Upon release of the loan documents, the Wheatleys agreed to make the additional down payment and, like the Andersons and the Wilkins, signed a mortgage contract in which they expressly promised to "promptly repair the Property if damaged."[6]

---

[6]       *See* A-59.  The Wheatleys' mortgage contract shows that their loan was for $213,330.00, which is 79.9% of the $267,000 purchase price of the property.  *See* A-53.

At no point in any of these events do plaintiffs assert that Hogsten or any other Wachovia employee purposefully discriminated against them. Nor do plaintiffs make any allegation that would suggest such an inference. Plaintiffs do not allege that anyone at Wachovia ever commented on plaintiffs' race, or expressed any discriminatory motive or racial animus. Plaintiffs merely allege that "[s]imilarly situated whites were not required to meet all the requirements imposed upon the Plaintiffs to be eligible for a mortgage." Complaint ¶ 67.

Plaintiffs allege that "a week or two" before the August 6, 2004 settlement of the Anderson property, "Hogsten told Wheatley that he would be watched." Complaint ¶ 68. Plaintiffs give no indication why Hogsten would have needed to "watch" Wheatley, and they make no allegation that Wheatley would be "watched" because of his race.

Similarly, plaintiffs allege that Hogsten told Anderson he "had better be careful because the Bank would be watching him." Complaint ¶ 68. Plaintiffs allege that Anderson "interpreted this as a veiled threat by the Bank that the Andersons would be subject to an unusually high degree of scrutiny." Complaint ¶ 68. Again, plaintiffs do not allege why Wachovia would be "watching" him, and plaintiffs make no allegation that Anderson would be "subject to an unusually high degree of scrutiny" because of his race.

## ARGUMENT

In resolving this motion, the Court applies the familiar standard of accepting all of plaintiffs' factual allegations as true and drawing all *reasonable*

inferences in plaintiffs' favor. *Wright v. Pepsi Cola Co.,* 243 F. Supp. 2d 117, 120 (D.

Del. 2003). Here there is no reasonable inference that Wachovia purposefully

discriminated against plaintiffs, given the bare assertion that "similarly situated whites"

were not required to comply with comparable loan conditions. Plaintiffs' may not use the

Rule 12(b)(6) standard to boot-strap an inference of racial animus.

## I.    All Of Plaintiffs' Claims Are Time Barred.

On plaintiffs' allegations, any actionable conduct by Wachovia occurred

on or before August 6, 2004, when the Andersons' and Wilkins' transactions closed.

Complaint ¶ 68. By that date, the Andersons and the Wheatleys had made the required

repairs to their homes, and the Wheatleys had been informed that an additional down

payment would be necessary. Complaint ¶ 53, 56. Plaintiffs did not file their complaint

until August 11, 2006. Because all of plaintiffs' claims are subject to a two-year statute

of limitations, none of their claims are timely.

### A.    Plaintiffs' ECOA Claim Is Untimely.

An action under ECOA "shall be brought within two years from the date

of the occurrence of the violation." 15 U.S.C. § 1691e(f); *see also Floyd v. Saturn of

Newark,* 2006 U.S. Dist. LEXIS 2466, *13 (D. Del. Jan. 24, 2006) ("Affirmative claims

under the ECOA are subject to a two year statute of limitations.").

On plaintiffs' own allegations, any actionable race discrimination that

plaintiffs could have experienced occurred on or prior to August 6, 2004. Plaintiffs'

complaint was not filed until August 11, 2006.  Hence, plaintiffs' claims under ECOA are time barred.

**B.     Plaintiffs' Section 1981 Is Untimely.**

Because they seek compensation for the essentially dignitary or emotional harm of being subjected to race discrimination, claims under Section 1981 "are characterized as personal injury claims" and therefore are subject to Delaware's two year statute of limitations for such actions.  *Monahan v. City of Wilmington,* 2004 U.S. Dist. LEXIS 1322, *8 (D. Del. Jan. 30, 2004); *see also Andrews v. Abbott Labs.,* 2002 U.S. Dist. LEXIS 6832, *16 (D. Del. Apr. 18, 2002) ("The statute of limitations applicable to Section 1981 claims is the Delaware two-year personal injury statute of limitations."); 10 Del. C. § 8119 ("No action brought for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained.").

Thus, as with plaintiffs' claims under ECOA, plaintiffs' Section 1981 claims are time barred.  Plaintiffs' claim is that Wachovia insisted on conditions to their loans that Wachovia allegedly does not impose on white borrowers.  If plaintiffs ever had a cause of action -- which they did not -- it accrued, at the latest, on August 6, 2004, the date the Andersons' and Wilkins' transactions closed, and the Wheatleys were told they would have to increase their down payment.  Complaint ¶ 53, 56.  Because plaintiffs' complaint was not filed until August 11, 2006, their Section 1981 claims are barred by Delaware's two-year personal injury statute of limitations.

###### C.    Plaintiffs' Claims Under Delaware Law Are Untimely.

Plaintiffs' claims under Delaware law nominally are based on contract theories.  They assert that Wachovia "breach[ed] [their] contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing."  Complaint ¶ 74, 83, 93.  However, plaintiffs allegations make clear that they are seeking compensation for the alleged "humiliation, inconvenience and aggravation of being treated in an inferior manner," Complaint ¶ 95; *see also* Complaint ¶ 76 (claiming "humiliation, inconvenience and aggravation throughout the transactions").

In Delaware, the determination of which statute of limitations applies depends not on the cause of action asserted but on the injury alleged.  *See, e.g., Patterson v. Vincent,* 61 A.2d 416, 418 (Del. 1948) (noting that the applicable statute of limitations "is in no way concerned with the form of action that is brought"); *Pagano v. Hadley,* 553 F. Supp. 171, 176-77 (D. Del. 1982) ("[T]he first step in determining the proper limitations period under Delaware law is to focus on the nature of the injury suffered rather than the form of action brought.").

Where a plaintiff seeks damages for emotional and dignitary harms, such as "embarrassment, anxiety, economic loss, [or] humiliation," the claims are for personal injuries.  *Ayres v. Jacobs & Crumplar, P.A.,* 1996 Del. Super. LEXIS 565, at *27 (Dec. 31, 1996).  This applies no less to plaintiffs' claims here:  "However these counts may be worded, they . . . assert personal injury type damages."  *Id.* at *28.  "The two year statute of limitations of 10 Del. C. § 8119 consequently applies."  *Id.*

## II.     Plaintiffs Fail To State A Claim Under The Equal Credit Opportunity Act Or Under Section 1981.

Plaintiffs' putative discrimination claims cannot survive without allegations that Wachovia's acts were purposefully discriminatory.  *See, e.g., General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391 (1982) ("[Section] 1981 . . . can be violated only by purposeful discrimination.").[7]  Plaintiffs make no such allegations here.  Nowhere do plaintiffs allege any evidence of overt discrimination or racial animus toward them on the part of Hogsten or anyone else at Wachovia.  They simply assert that "[s]imilarly situated whites were not required to meet all the requirements imposed upon the Plaintiffs to be eligible for a mortgage."  Complaint ¶ 67.  This fails to state a claim of discrimination.  *Cf. Alexis v. Int'l Harvester, Inc.,* 2003 U.S. Dist. LEXIS 15671, at *9-*10 (E.D. Pa. July 29, 2003) (Section 1981 claim dismissed where plaintiff's complaint "presents no factual support for an allegation of discrimination and merely recites his conclusion that [defendants breached his contract] because of his race").[8]

---

[7]     Under ECOA, though not under Section 1981, some courts have recognized "disparate impact" theories that do not depend on an allegation of purposeful discrimination.  Plaintiffs make no attempt to employ such a theory here.  Under this approach, "a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group."  *Powell v. American Gen. Fin., Inc.,* 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004).  Plaintiffs do not -- and cannot -- allege that Wachovia engages in a "policy or practice" of discrimination.  Nor do they allege a statistically significant adverse effect on a protected group.  Thus, in this case plaintiffs must allege purposeful discrimination to state an ECOA claim.

[8]     Indeed, plaintiffs' allegations here are even thinner than those in *Alexis,* because plaintiffs never allege, conclusorily or otherwise, that Wachovia took any actions toward them because of their race.

Plaintiffs clearly are seeking to exploit the "burden-shifting" framework that courts frequently apply in cases of alleged employment discrimination.  This framework, first adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), has been aptly explained by the Seventh Circuit as follows:

> Under [the *McDonnell Douglas*] standard, in a typical case of employment discrimination, involving say the denial of a promotion to a black employee, the plaintiff would have to show only that he was qualified for the promotion and that a white got it instead, and the burden would then be on the employer to come forth with a noninvidious reason for why the white rather than the black got the promotion.

*Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 713 (7th Cir. 1998).

Some courts have applied the *McDonnell Douglas* framework to discrimination claims in the lending context.  On this approach, a plaintiff establishes a "prima facie case" of credit discrimination where:  "(1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) the loan application was rejected despite his or her qualifications; and (4) the lender continued to approve loans for applications with qualifications similar to those of the plaintiff."  *Hood v. Midwest Sav. Bank,* 95 Fed. Appx. 768, 778 (6th Cir. 2004).  This shifts the burden to the lender "to articulate a legitimate, nondiscriminatory reason for the denial."  *Id.*[9]

Plaintiffs here appear to believe that they can allege a "prima facie case" of discrimination merely by asserting that:  (1) they were required to satisfy certain

---

[9]     The Third Circuit has never addressed whether the *McDonnell Douglas* framework applies in the credit discrimination context, but has alluded to it in *dicta.  See In re Chiang*, 385 F.3d 256, 259 (3d Cir. 2004).

conditions in order to obtain their loans; but (2) whites were not required to satisfy these conditions.  Plaintiffs are mistaken for two reasons.[10]

First, plaintiffs were never denied credit.  No case ever has suggested that a plaintiff may be entitled to an inference of *intentional* discrimination because he alleges not that the lender refused to extend him credit, but merely that a lender required him to satisfy a condition before making the loan.  As Courts in this District have explained:

> [T]here is nothing demonstrating that [plaintiffs] were denied credit based on a discriminatory action.  *In fact, plaintiffs were not denied credit at all.*  Instead, [defendant] changed the terms originally proposed after the appraisal was submitted.  Plaintiffs, however, were still qualified for a loan from [defendant] . . . albeit at a less favorable rate.  Therefore, plaintiffs have failed to carry their burden to prove a prima facie case under the ECOA.

*Brown v. Interbay Funding, LLC,* 417 F. Supp. 2d 573, 578 (D. Del. 2006) (emphasis added); *see also Floyd v. Saturn of Newark,* 2006 U.S. Dist. LEXIS 2466, *14 (D. Del. Jan. 24, 2006) (dismissing ECOA claim where "Plaintiff does not allege that Defendant denied him credit").

Second, as the Seventh Circuit explained in *Latimore,* the analogy to employment discrimination that purportedly supports the application of the *McDonnell Douglas* framework fails in the context of alleged credit discrimination.  In the employment discrimination context, the plaintiff alleges that he is a minority and that a non-minority was given the *same* job for which he himself applied.  But in no sense does

---

[10]    The argument here applies equally to plaintiffs' ECOA and Section 1981 claims.

a lender give to a white person the *same* loan that it declined to give a minority.  As

*Latimore* explains:

> The fact that a qualified black is passed over for promotion in
> favor of a white has been thought sufficiently suspicious to place
> on the defendant the minimum burden of presenting a noninvidious
> reason why the black lost out.  But it is the competitive situation --
> the black facing off as it were against the white -- that creates the
> (minimal) suspicion and there is no comparable competitive
> situation in the usual allegation of credit discrimination.  Latimore
> was not competing with a white person for a $ 51,000 loan.  A
> bank does not announce, "We are making a $51,000 real estate
> loan today; please submit your applications, and we'll choose the
> applicant that we like best and give that applicant the loan."

*Latimore,* 151 F.3d at 714.

In short, because plaintiffs cannot support an inference of purposeful

discrimination on the basis of a conclusory assertion that "similarly situated whites" were

not required to satisfy the loan conditions they allege were imposed on them, and may not

utilize the burden shifting framework of *McDonnell Douglas* to create such an inference,

their claims under ECOA and Section 1981 should be dismissed.

**III.    Plaintiffs Fail To State A Claim Under Delaware Contract Law.**

Plaintiffs purport to assert two claims under Delaware law:  (1) that

Wachovia "tort[i]ous[ly] interfere[d] with the contractual rights and business

opportunities of the [plaintiffs] with the Sellers," Complaint ¶ 73, 82, 92; and (2) that

Wachovia "breach[ed] [their] contract for a mortgage and the covenant of good faith and

fair dealing in the contract to provide financing," Complaint ¶ 74, 83, 93.  Plaintiffs fail

to state a claim upon which relief can be granted as to both of these theories.

**A.     Plaintiffs Cannot Allege Tortious Interference With Contractual Relations.**

Under Delaware law, "[i]n order to recover for the intentional interference with a contract there must be:  (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."  *Little Peoples, Inc. v. Robin's Nest Child Care, Inc.,* 1996 Del. Super. LEXIS 266, *10 (July 18, 1996).  Crucially important here is the allegation that the defendant "caus[ed] the *breach*" of the contract.  "Without a breach, there can be no tortious interference."  *American Homepatient, Inc. v. Collier,* 2006 Del Ch. LEXIS 79, *11 (Apr. 19, 2006).

On plaintiffs' own allegations, Aigner never breached the contract of sale with plaintiffs.  Plaintiffs received their loans and the sales of all three properties were successfully completed.  Hence, plaintiffs' claim that Wachovia tortiously interfered with their contract with Aigner fails as a matter of law.

**B.     Plaintiffs Cannot Allege Breach Of Contract Or Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

Plaintiffs' sole basis for alleging that Wachovia breached "the contract for a mortgage" or breached the implied covenant of good faith and fair dealing "in the contract to provide financing" is that two of the families (the Andersons and the

Wheatleys) purportedly had to comply with certain conditions before Wachovia would agree to give them loans.[11]

        As to the Andersons, the only concrete allegation made is that they had to spend "$15,000 plus numerous man hours" putting their home in "move in" condition. Complaint ¶ 76.  They assert that they "would not have done" this, Complaint ¶ 76, despite that, on their own allegations, they were intending to "move in" to the house, Complaint ¶ 5.  Similarly, as to the Wheatleys, the only concrete allegation is that they had to "waste" money "upgrading" the house prior to settlement, despite that, on their own allegations, they were "planning custom upgrades after the settlement."  Complaint ¶ 37.[12]

        These allegations do not state a claim either for breach of contract or for breach of the implied covenant of good faith and fair dealing.  First, plaintiffs can have no claim for breach of contract based on any repairs they made to the properties because all of them signed mortgages in which they expressly promised to "promptly repair the

---

[11]    The only allegation plaintiffs make with respect to the Wilkins is that they had to prove the source of the funds used to make their deposit.  Plaintiffs do not explain how this standard underwriting procedure could constitute a breach of contract or how, even if it did, the Wilkins suffered damages cognizable in contract as a result.  The Wilkins' allegation that they suffered the "humiliation, inconvenience and aggravation of being treated in an inferior manner" does not state a ground for recovery in contract.  *Cf. Pierce v. Int'l Ins. Co. of Illinois,* 671 A.2d 1361, 1367 (Del. 1996) ("Any recovery for emotional distress without accompanying physical injury must be based in tort law").

[12]    Plaintiffs also allege that they had to get multiple appraisals for their properties.  Complaint ¶¶ 20, 21, 44.  But plaintiffs make no allegation that these appraisals caused them damages cognizable in contract.

Property if damaged."[13]  Notably, plaintiffs do not dispute in their complaint that the properties needed repairs.  They merely assert that they did not wish to make them.  But whether they wished to or not is beside the point:  making these repairs was a condition of the loans that plaintiffs voluntarily accepted when they signed their mortgage contracts.

Likewise, the Wheatleys' allegation that they were forced to increase their down payment when Wachovia could not obtain PMI for their loan fails to support a claim for breach of contract or for breach of the implied covenant of good faith and fair dealing.  Again, the Wheatleys voluntarily accepted this increased down payment when they signed their mortgage contract.[14]

The theory of "breach" plaintiffs are attempting to assert is unheard of.  Plaintiffs' core claim is that they accepted loan conditions that they now regret accepting.  But even assuming that the conditions at issue were "unreasonable," Complaint ¶ 76 -- which they were not -- that would not state a claim for breach of contract.  A plaintiff never is entitled to damages for accepting an unreasonable contract term.

Nor can plaintiffs state a claim for breach of contract simply by repeating the assertion that Wachovia sought to "undermine the settlement," Complaint ¶ 70, or "undermine the entire transaction," Complaint ¶ 27.  There is no such thing as a cause of action based on a defendant's alleged attempt to undermine its own contract.  *Cf. Wallace*

---

[13]    A-23, A-41, A-59.

[14]    *See* A-53.

*v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999) ("[A]n entity cannot be liable for interfering with the performance of its own contract.").

Nor do plaintiffs' allegations state a claim for breach of the implied covenant of good faith and fair dealing. On plaintiffs' own allegations, Wachovia merely "insisted" that plaintiffs meet standard loan conditions, such as repairing the collateral and making a twenty-percent down payment. But plaintiffs abandoned any claim for putative breach of the implied covenant of good faith and fair dealing when they voluntarily accepted the loans and signed the mortgage contracts. *Cypress Assocs., LLC v. Sunnyside Cogeneration Assocs. Project,* 2006 Del. Ch. LEXIS 61, *30 (Mar. 8, 2006) ("[A] claim for breach of an implied covenant generally cannot be based on conduct authorized by the terms of the agreement.").

Plaintiffs' allegation that they had to spend additional money to comply with the loan conditions is irrelevant. That a defendant's insistence on certain conditions may "incidentally harm the other party to the contract is of little moment in the breach analysis." *Daystar Constr. Mgmt., Inc.,* 2006 Del. Super. LEXIS 286, *34-*35 (July 12, 2006). At the end of the day, plaintiffs voluntarily chose to purchase these properties and chose to accept the standard conditions that these purchases entailed.

Plaintiffs cannot argue that they were "forced" to meet these conditions because they did not want to lose their $40,000 deposit. Plaintiffs made a separate voluntary decision to give Aigner a nonrefundable deposit. As a matter of law, a lender is entitled to conditions to protect the collateral of the loan, without having to worry that

this insistence may impose costs on the borrower that the borrower voluntarily assumed under a separate contract with a third party.[15]

Lastly, plaintiffs fail to allege any damages.  On their own allegations, the Wheatleys were "planning custom upgrades" to their property in any event, and the Andersons would indeed be "mov[ing] in" to their property as their primary residence. Plaintiffs cannot seriously maintain that the repairs and upgrades were a "waste."  Nor do they attempt to deny in their complaint that these repairs improved the value of their homes.

In sum, plaintiffs have no claim for breach of contract or for breach of the implied covenant of good faith and fair dealing.  Their real contention is that they regret accepting certain conditions of their loans.  As a matter of law, this cannot support a claim for damages.  Plaintiffs' contract claims should be dismissed.

---

[15]    Furthermore, there simply is no credible basis to infer bad faith on Wachovia's part.  There is no rational reason to suspect that Wachovia would seek to sabotage its own loan transactions simply to deprive plaintiffs of a $40,000 deposit.

## CONCLUSION

For these reasons, defendants Wachovia Mortgage Corporation and Wachovia Corporation hereby respectfully ask that the Court grant this motion and dismiss plaintiffs' complaint in this action for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Michael J. Barrie

*Of Counsel*                                    Michael J. Barrie
Elizabeth K. Ainslie                            Schnader Harrison Segal & Lewis LLP
Stephen A. Fogdall                              824 N. Market Street
Schnader Harrison Segal & Lewis LLP             10th Floor, Suite 1001
1600 Market Street, Suite 3600                  Wilmington, DE 19801-3011
Philadelphia, PA 19103                          (302) 888-4554
(215) 751-2000

*Counsel for Defendants Wachovia Mortgage Corporation*
*and Wachovia Corporation*

Dated:  September 20, 2006

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

## ORDER

_____

AND NOW, this ___ day of _____ , 2006, upon consideration of the motion of defendants Wachovia Mortgage Corporation and Wachovia Corporation to dismiss the complaint in this action pursuant to Federal Rule of Civil Procedure 12(b)(6), it is HEREBY ORDERED that defendants' motion is GRANTED, and plaintiffs' complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

_____
Sue L. Robinson, C.U.S.D.J

## CERTIFICATE OF SERVICE

I, Michael J. Barrie, certify that the forgoing Motion and Opening Brief of

Defendants Wachovia Mortgage Corporation and Wachovia Corporation to Dismiss

Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) has been

electronically filed and is available to be viewed and downloaded on the Court's ECF

website. I further certify that I have served a copy of the Motion and Brief upon the

following by overnight mail:

John S. Grady, Esquire
Grady & Hampton, LLC
6 North Bradford Street
Dover, DE 19904

/s/ Michael J. Barrie

September 20, 2006