# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C. A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| and WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

GRADY & HAMPTON, LLC
John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
jgrady@gradyhampton.com
*Attorneys for Plaintiffs*

DATED:    November 1, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF CASES AND FEDERAL AND STATE STATUTES .................................. ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................. 1

STATEMENT OF FACTS .................................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................................... 6

ARGUMENT ..................................................................................................... 8

   I.   PLAINTIFFS HAVE MADE A *PRIMA FACIE* CASE OF VIOLATION OF 42 U.S.C. §1981........................................................................................... 8

   II.   PLAINTIFFS HAVE PLED A CAUSE OF ACTION OF THE TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS............................... 15

   III.   PLAINTIFFS HAVE STATED A CAUSE OF ACTION PURSUANT TO THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ................ 17

   IV.   PLAINTIFFS' FEDERAL CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS.................................................................................... 19

   V.   THE CLAIMS FOR VIOLATION UNDER THE EQUAL CREDIT OPPORTUNITY ACT ARE HEREBY WITHDRAWN WITH PREJUDICE.... 22

## TABLE OF CASES AND FEDERAL AND STATE STATUTES

### <u>Cases</u>

*A & A Air Services, Inc. v. Jane Richardson*, 2006 WL 2382433 (Del. Common Pleas)  18

*Aman v. Court Furniture Rental Corp.*, 85 F.3d 1074 (3rd Cir. 1996)............................. 11

*Andrews v. Abbott Laboratories*, 2002 Lexis 6832 (D. Del. 2002) ................................... 20

*Blue Chip Capital Funds II, Ltd. Partnership v. Tubergen*, 2006 WL 2589393 (Del. Ch.)

.................................................................................................................................. 18

*Carter v. Duncan Higgins, LTD*, 727 F.2d 1225 (D.C. 1994) ......................................... 10

*Cendant Corp. Securities Litigation,* 181 Fed. Appx. 206 2006 WL 1342808 (3rd Cir.

2006) ...................................................................................................................... 18

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir.)................................................. 11

*Estate of Daramola v. Coastal Mart, Inc.*, 170 Fed. App. 536 2006 WL 497549 (10th Cir.)

.................................................................................................................................. 13

*Gemini Phys. Therapy & Rehab, Inc. v. State Farm Mut. Auto Ins. Co.*, 40 F.3d 63 (3rd

Cir. 1994) ............................................................................................................... 16

*Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2000).................. 6

*Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (2001) ................................ 8

*Hatfield's Seaford v. Rauser*, 2001 WL 1456795 (Del. Super.) ........................................ 9

*Jackson v. University of Pittsburgh*, 826 F.2d 230 (3rd Cir. 1987) ................................... 10

*Jones v. Donnelly*, 541 U.S. 369 (2004) .................................................................. 7, 19, 20

*Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000) ..... 6, 13

*Kunda v. Muhlenburg College*, 621 F.2d 532 (3rd Cir. 1980).......................................... 13

*Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712 (7th Cir. 1998)....................... 9

*Lemontagne v. American Convenience Prods.*, 750 F.2d 1405 (7th Cir. 1984) ............... 11

*Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3rd Cir. 1989) ............................. 11

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973) ................................................ 8, 9, 11

*Monahan v. City of Wilmington*, 2004 Lexis 1322 (D. Del.)........................................... 20

*Nami v. Fauver*, 82 F.3d 63 (3rd Cir. 1996) ...................................................................... 6

*Nelson v. Fleet National Bank*, 949 F. Supp. 254 (D. Del. 1996) ......................... 6, 15, 16

*North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*,

    2006 WL 2588971 (Del. Ch.) ................................................................................. 17

*Parker v. State of Delaware*, Del. Supr. 893 A.2d 964 (2006)........................................ 20

*PAS Communications, Inc. v. Sprint Corporation*, 139 F. Supp. 2d 1149 (D. Kan. 2001)

    ...................................................................................................................................... 13

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) ................................................ 19

*Price Waterhouse v. Hopkins*, 492 US 228, 271 109 S. Ct. 1775, 104 L. Ed. 2d 268

    (1989)............................................................................................................................ 11

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)............................... 13

*Sheridan v. E.I. DuPont deNemours and Company*, 1000 F.3d 1061 (1996).............. 8, 10

*Simms v. Oklahoma Ex Rel Department of Mental Health and Substance Abuse Services*,

    165 F.3d 1321 (10th Cir. 1999) ................................................................................ 13

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ..................... 11

*The United States Postal Service Board of Governors v. Atkins*, 460 U.S. 711, 103 Supr.

    Ct. 1478, note 3 (1983) ............................................................................................... 10

*Ventura v. National*, 419 A.2d 942 (Del. Ch. 1980)........................................................ 15

*Village of Arlington Heights v. Metro Housing Development Corporation*, 429 US 252

  (1977) ................................................................................................ 10

*Waller v. Woods*, 752 A.2d 1175 (Del. Ch.) ................................................... 21

## **Statutes**

15 U.S.C. §1591(a)(1) ......................................................................................... 9

28 U.S.C. §1658(a) ........................................................................................... 19

42 U.S.C. §1981 ................................................... 6, 7, 8, 9, 10, 12, 14, 19, 20, 23

42 U.S.C. §1983 ................................................................................................ 10

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed a lawsuit in this case on August 11, 2006, alleging race and contract violations.  The Defendants have removed this case to the United States District Court and filed a motion to dismiss all of Plaintiffs' claims.

After Plaintiffs filed their answering brief and amended complaint, the Defendants withdrew their motion to dismiss and then filed another motion to dismiss. This brief represents Plaintiffs' answering brief.

## STATEMENT OF FACTS

Plaintiffs are all African-Americans.  They came together and agreed to purchase three properties in a white neighborhood located at 580 N. DuPont Highway, 584 N. DuPont Highway, and 592 N. DuPont Highway, from Mr. Jack Aigner. (para 4)[*]  The property backs up to Silver Lake in Dover, Delaware.

Plaintiffs Anderson and Wheatley had dealt with Wachovia previously and obtained approximately eight (8) mortgages in neighborhoods that were in predominantly black or poor neighborhoods. (para 3)  The Defendants Anderson and Wheatley intended to use the purchased homes as primary residents while Wilkins intended to use his as a secondary residence. (para 5)

The Plaintiffs were all purchasing the properties from a Mr. Jack Aigner.  The negotiations were made with Aigner collectively and the arrangement was that he was selling all three properties and that if one of the deals fell through they would lose the $40,000.00 deposit which they had put down.  He was using the proceeds in a 1031 exchange. (para 6)  This information was supplied to J. D. Hogsten of Wachovia. (para 7)

It is alleged in the complaint that from the very beginning Hogsten was attempting to undermine the entire transaction.  First, Hogsten met Anderson for the appraisal of the property that he was purchasing and for unexplainable reasons the appraiser was looking for excuses not to appraise the property. (para 14-17)  The first excuse was that there was some damage done to the basement.  The second excuse was that there were no comparables. (para 17)  The appraiser at all times was an agent of Wachovia.  Anderson challenged Hogsten concerning the appraisal problems and produced comparables.  In light of this, Hogsten backed off and the property was

---

[*] All "para" references are references to the Amended Complaint.

appraised at $267,000.00, (para 21) which was the purchase price. Thereafter, Hogsten then created a new condition for the Anderson property: that the property be put into a "move-in" condition, even though the property had already been appraised for the sales contract price. Hogsten continued to disparage the property to Dr. Wilkins that the Anderson property was just a pile of sticks. (para 26) Anderson spent $15,000.00 plus sweat equity to meet this Hogsten requirement.

After the Wilkins property was appraised, he was asked to prove that the funds used for the deposit were his money and show its source. (para 30) It is alleged that there was another attempt by Hogsten to make the transaction more difficult for three African-Americans who were trying to purchase homes in an all-white neighborhood. It is also alleged that these procedures were not the normal customary practice of the bank. (para. 31).

The complaint alleges that on July 23, Hogsten again informed Anderson that the purchase of the property could not go through because there was not enough value in the property, even though the property had already appraised for the value of the loan. (para 33) This is alleged as another separate act by Hogsten to discourage the sale of the property to the three African-American couples in a white neighborhood.

In July 2004, the appraisal of the Wheatley property was completed and the value exceeded the sale price. (para 35) There should have been no problem with Wheatley obtaining a mortgage. Nevertheless, the bank required Wheatley to complete upgrades on the property to assure that the property was in move-in condition. The conditions imposed upon Wheatley were another instance where Hogsten attempted to undermine the entire transaction to all three parties. Wheatley specifically indicated that the

requirement was impossible because he did not have access to the home and he was not in a position to make the upgrades. (para 37) Wheatley initially spent over $50,000.00 in upgrades to meet the requirement of Hogsten.

At this point in time, Anderson questioned the bank's policy concerning the appraisals, repairs and warranties and such matters; however, the bank refused to answer his questions, (para 41) further evidence that the bank was not treating the three African-American couples fairly. The bank was using subjective criteria for these three African-Americans, which made it difficult for them to purchase their homes. In order for this transaction to go forward, the owner did agree to permit Wheatley to make the necessary changes. (para 42) Settlements for Anderson and Wilkins were completed; however, Hogsten created another hurdle by not permitting settlement on the Wheatley home until he received a letter from a certified contractor that the roof on the Wheatley home did not have any leaks. (para 48, para 51) This new hurdle Plaintiffs were able to overcome because of the fortuity that Aigner was able to obtain, almost on a day's notice, a roofing contractor to provide the certification. With that hurdle overcome, Hogsten created a new hurdle with Wheatley by requiring an additional 15% down payment before he would provide the closing documents. (para 56) This was the last hurdle created by Hogsten. Throughout this entire time, Anderson was aware that if the deal fell through Plaintiffs' collectively faced the possible loss of $40,000.00 of their deposit.

Wheatley eventually did obtain the 20% down payment and the final settlement went through on August 13, 2004. From the point of view of Plaintiffs, Defendants had collectively created repeated barriers for them which only concluded on August 13, 2004.

4

During the week of August 16, 2004, Hogsten made further remarks to Anderson that the bank was going to be watching for him. (para 68)

## SUMMARY OF THE ARGUMENT

1.  In evaluating a motion to dismiss pursuant to rule 12(b)(6), every reasonable inference should be given to the Plaintiffs.  The motion should be denied unless it appears to a certainty that Plaintiffs are entitled to no relief under any state of facts which could be proven.  *Nami v. Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996).

2.  Plaintiffs have made out a *prima facie* case of race discrimination pursuant to 42 U.S.C. §1981.  *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1101-1102 (10th Cir. 2001), cert. den. 554 U.S. 1131 (2002).

3.  Evidence of procedural violation and deviation from established practices and procedures can be evidence of intentional discrimination.  *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

4.  The suit for tortious interference of a contractual relationship can be made even where Plaintiffs were ultimately able to complete their contract with a third party; Restatement of Torts §766A, if Plaintiffs can show performance was more burdensome or expensive.  *Nelson v. Fleet National Bank*, 949 F. Supp. 54 (D. Del. 1996).

5.  All three Plaintiffs have suffered damages proximately caused by the unreasonable conditions set upon Plaintiffs' mortgage applications.

6.  Plaintiffs are all African-Americans who have applied for housing in a previously all-white neighborhood.  They have demonstrated that unreasonable appraisal and financing requirements were laid upon them contrary to the rules and regulations of the bank.

7.      The statute of limitations for violation of 42 U.S.C. §1981 for the amendments

found at 42 U.S.C. §1981(b) is 4 years.  *Jones v. Donnelly*, 541 U.S. 369 (2004).

The claims of the Plaintiffs fall within 42 U.S.C. §1981(b).

## ARGUMENT

## I.    PLAINTIFFS HAVE MADE A *PRIMA FACIE* CASE OF VIOLATION OF 42 U.S.C. §1981.

Different courts have attempted to analyze the *prima facie* case of a plaintiff in a §1981 case in many different ways.  In the case of *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1101-1102 (2001), the court of appeals stated the basic elements of a §1981 claim.  A plaintiff must show (1) that the Plaintiff is a member of a protected class, (2) that the defendant had the intent to discriminate on the basis of race, and (3) that the defendant interfered with a protected activity as defined in §1981.  That court and many other courts generally have had little problems with the first element, that the plaintiff is a member of a protected class.  The second element, that a defendant had the intent to discriminate on the basis of race, is the issue that has caused a great deal of litigation.  Courts have said that intentional discrimination can be proved by direct or circumstantial evidence.

The court, in *Sheridan v. E.I. DuPont deNemours and Company*, 1000 F.3d 1061, 1071-1076 (1996), reviewed the difficulties and methods in proving intentional discrimination.  The court said there will seldom be eyewitness testimony as to the employer's mental process.  "Cases charging discrimination are uniquely difficult to prove and often dependent upon circumstantial evidence."

One model that has developed through the years is the model of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  In that model, the plaintiff was only required to demonstrate (1) that he was a member of a racial minority, (2) he applied and was qualified for a job, (3) he was rejected for the position, and (4) the position remained open.  Discrimination was inferred from this bare showing.  Using the *McDonnell*

*Douglas* model, the burden then shifts to the employer to explain its conduct meaning the employee has the opportunity to demonstrate his reasons supplied by the employer burden pretext.  This is not a classic *McDonnell Douglas v. Green* case.

In the case of *Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712 (7th Cir. 1998), Judge Posner reviews the *prima facie* case of credit discrimination brought pursuant to 15 U.S.C. §1591(a)(1).  In that case, he said that "the Supreme Court has reminded us that *McDonnell Douglas* was not intended to be a straight jacket into which every discrimination case must be forced into."  (p. 714)

Judge Jan Jordan in *Hatfield's Seaford v. Rauser*, 2001 WL 1456795 (Del. Super.) acknowledges that in some cases a different analysis is necessary.  In her analysis of a discrimination case in connection with the treatment of a customer in a restaurant, Judge Jordan listed her elements as follows:  (a) plaintiff was a member of a protected class, (b) refusal of service, (c) were others treated more favorably.

She acknowledges that the third element of a *prima facie* case showing of discrimination that others were treated more favorably may not necessarily be the best kind in evaluating a discrimination case.  She states:

> Many courts have discussed the difficulty of proving the third element.  It may be wholly unrealistic to require a member of a protected class to identify victims of such outlandishly horrendous service who were not members of a protected class.

**Intentional discrimination**

Plaintiffs' cause of action for discrimination pursuant to 42 U.S.C. §1981 is for intentional discrimination.  Courts have indicated that proof of intent is an essential element of a case under 42 U.S.C. §1981 and that standards for proving it are essentially

9

the same as under Title 7 and under 42 U.S.C. §1983 in an intentional discrimination case.

The courts have long ago indicated that in proving intentional discrimination, both circumstantial and direct evidence may be used. In *Village of Arlington Heights v. Metro Housing Development Corporation*, 429 US 252, 265-268 (1977), the court analyzed the kind of evidence necessary to prove racial discrimination. The court said that both circumstantial and direct evidence of intent may be available. In *Carter v. Duncan Higgins, LTD*, 727 F.2d 1225, 1232 (D.C. 1994), the court examined the kind of evidence necessary to make out a *prima facie* case of intentional discrimination. In that §1981 case, the court said:

> The discriminatory animus, however, can be demonstrated through either direct or indirect evidence. In an analogous disparate treatment case under Title 7, the Supreme Court stated 'as in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of facts should consider all the evidence, and giving it whatever weight and credibility it deserves.' (T)he District Court should not have required the plaintiff to submit direct evidence of discriminatory intent. *The United States Postal Service Board of Governors v. Atkins*, 460 U.S. 711, 103 Supr. Ct. 1478, 1481, note 3 (1983).

In *Sheridan v. E.I. duPont DeNemours and Company*, 100 F.3d 1061, 1071 (1996), the court reviewed the methods of producing proof of intentional discrimination. The court there said:

> As the Supreme Court has noted, 'there will seldom be eyewitness testimony as to the employer's mental processes.' *The United States Postal Service Board of Governors v. Atkins*, 460 US 711, 716, 103 Supr. Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). We have recognized that "[d]iscrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered." *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3rd Cir. 1987), cert. denied, 484 US 1020, 108 Supr. Ct. 732, 98 L. Ed. 680 (1988). Cases charging discrimination are uniquely difficult to prove and often depend upon circumstantial evidence. See,

e.g., *Aman v. Court Furniture Rental Corp.*, 85 F.3d 1074, 1081-82 (3rd Cir. 1996); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 48 (3rd Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3rd Cir.)(1987) cert. dismissed, 43 US 1052, 108 S. Ct. 26, 97 L.Ed2d 815 (1987); *Dylan v. Kohl's*, 746 F.2d 998, 1002 -1003 (3rd Cir. 1984). "This is true in part because…discrimination… is often subtle." *Chipollini*, 814 F.2d at 899. '[A]n employer who knowingly discriminates… may leave no written records revealing the forbidden motive and may communicate it orally to no one.' *Id.* (quoting *Lemontagne v. American Convenience Prods.*, 750 F.2d 1405, 1410 (7th Cir. 1984)  The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation often are unavailable or difficult to acquire.  See *Price Waterhouse v. Hopkins*, 492 US 228, 271 109 S. Ct. 1775, 1801-02, 104 L. Ed. 2d 268 (1989); (O'Connor, J., concurring) ("[T]he entire process of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by". *TransWorld Airlines, Inc. v. Thurston*, 469 US 111, 121, 105 Supr. Ct. 613, 621-22, 83 L. Ed. 523 (1985). (p. 1071)

The courts have used many different models from many different situations.  The *McDonnell Douglas* model is a model that was derived out of a hiring case.  The Supreme Court itself has stated the analytical framework of *McDonnell Douglas* cannot be used in every case.  *McDonnell Douglas v. Green*, *supra.* at 802.  See also *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981).  In this case, the *prima facie* case is met in the following ways:  (a) Plaintiffs are members of a minority, (b) Plaintiffs applied for and were entitled to credit in their mortgage application, (c) the Defendants created at least 10 identifiable hurdles (pretexts) which were not reasonably related to any business purpose for the sole purpose of discouraging Plaintiffs from purchasing property in a white neighborhood, (d) the Plaintiffs have suffered both emotional and monetary damages as a result of the criteria imposed upon them which were subjective in nature and not required by any reasonable banking standards.

The Plaintiffs in this case allege that from the very beginning the Defendant, through its agent Hogsten, was intent on turning down the mortgage to Anderson. The complaint alleges that the refusal of even one mortgage could disrupt the sale to the other two parties. Hogsten first, through an appraiser, attempted to turn down the mortgage by stating that the property could not be appraised because there were no comparables. This hurdle was overcome by Plaintiff Anderson within minutes when he was able to find another appraiser who found he could find comparables.

The Defendants required both Anderson and Wheatley to spend thousands of dollars to upgrade the property in another attempt to undermine the mortgage application. Finally, at the very last minute, Hogsten created new criteria for legally changing the down payment that was required by requiring a certification by a roofer. These were all subjective changes applied to Plaintiffs, which Plaintiffs assert evidence intentional discrimination.

In the motion to dismiss, every reasonable inference is to be given to the Plaintiffs. It is not an unreasonable interpretation in this case to suggest that the Defendants did not want to have three black families obtain homes on Silver Lake, which is a desirable white neighborhood in the city of Dover. In this age of more sophisticated banking, the bank could hardly tell the Plaintiffs that they would not give them a mortgage because they were black. It is suggested that a more sophisticated method of discrimination, which is equally forbidden by §1981, is to create unreasonable hurdles.

The allegations in this case are that there were large numbers of procedural irregularities. It is well-settled law that significant evidence of procedural violations and deviations from established practices and procedures can be sufficient to demonstrate

intentional discrimination.  See *PAS Communications, Inc. v. Sprint Corporation*, 139 F. Supp. 2d 1149, 1193 (D. Kan. 2001). and cases cited therein; *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *Simms v. Oklahoma Ex Rel Department of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1328 (10th Cir. 1999).  See also *Estate of Daramola v. Coastal Mart, Inc.*, 170 Fed. App. 536 2006 WL 497549 (10th Cir.).  Evidence of pretext may include, but is not limited to, the following:  prior treatment of plaintiff; employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating…criteria and the use of subjective criteria).  A showing that an employer's justifications for its behavior are pre-textual permits a finding of intentional discrimination but does not compel it.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-147 (2000).  See also *Kunda v. Muhlenburg College*, 621 F.2d 532, 539 (3rd Cir. 1980), (procedural irregularities considered by the trial court in connection with its finding that the discrimination was intentional.)

Defendants in brief argue that Plaintiffs cannot prove intentional discrimination because the lender ultimately approved the Plaintiffs' loans.  Plaintiffs have alleged that the Defendants have created unreasonable conditions for the approval of the loans and those conditions have caused Anderson over $15,000.00 in out-of-pocket costs and innumerable hours of labor.  Plaintiffs further charge that Wheatley was required to spend over $40,000.00 to have his loan approved and Wilkins spent $5,400.00 in unnecessary trips.

Certainly, this court would find no difficulty in the charge of discrimination if a bank had a sign that said that for black customers, but not for white customers, all house

must be fixed up in move-in condition to obtain a mortgage loan, or the bank had a sign saying that the black customers must provide sweat equity above and beyond the appraisal price which whites are not required to do.

42 U.S.C. §1981(a) and (b) provide that all persons under the jurisdiction of the United States shall have the same right in every state and county to make and enforce contracts. The court defines the term "make and enforce contracts" as to include "the making, performance, modification, and termination of contracts, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship". There is nothing in the statute that suggests that the Bank can be forgiven of its discriminatory conduct just because the Plaintiffs have been willing to meet some of the unreasonable demands of the bank.

## II. PLAINTIFFS HAVE PLED A CAUSE OF ACTION OF THE TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.

In this case, Plaintiffs have argued that the Defendants were well aware that the Plaintiffs had a contract with Mr. Aigner. Defendants had contracted with Plaintiffs and had an obligation in good faith to process their mortgages. Defendants have suggested that because Plaintiffs and Aigner were eventually able to complete their contracts, then there can be no relief for Plaintiffs. The Defendants ignore the fact that Plaintiffs allege that they have spent thousands of dollars meeting what they perceive as unreasonable requirements of the bank. Delaware generally follows the Restatement. In the case of *Nelson v. Fleet National Bank*, 949 F. Supp. 254, 260 (D. Del. 1996), this district court specifically refers to the Restatement of Contracts §766A, which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other person from performing the contract or causing this performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

This is precisely what Plaintiffs contend. Plaintiffs do not contend that the conduct of the Defendants prevented Plaintiffs from performing this contract, but rather because its performance became more expensive or burdensome. Defendants' allegation that because Aigner never breached the contract, therefore Plaintiffs have no cause of action is simply incorrect. See also *Ventura v. National*, 419 A.2d 942, 946 (Del. Ch. 1980). In that case, the court said that the elements for an allegation of tortious interference with contractual relations requires (a) an intent to cause a breach, (b) of an existing contract, (c) proximate causation, and (d) damages. Plaintiffs suggest that all of those elements have been met.

Attached to this brief is the standard jury instruction taken from Pattern Jury Instructions for Superior Court. The jury instruction includes the provision found in the Restatement §766A.

the Defendants rely on *Gemini Phys. Therapy & Rehab, Inc. v. State Farm Mut. Auto Ins. Co.*, 40 F.3d 63, 66 (3rd Cir. 1994) for the proposition that the Delaware courts would not follow Restatement (Second) of Torts §766A. *Gemini* is a Third Circuit case interpreting Pennsylvania law. *Nelson v. Fleet National Bank*, *supra*., a Delaware federal court suggests that Delaware would follow §766A. Furthermore, the standard Delaware jury instructions provide a specific jury instruction interpreting §766A. See attached jury instruction.

### III.   PLAINTIFFS HAVE STATED A CAUSE OF ACTION PURSUANT TO THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

The Plaintiffs allege that they had collectively gone to the bank because they collectively wanted to purchase three adjoining homes on Silver Lake in Dover, Delaware.  Plaintiffs' allegation is that they had a right to be treated fairly and that on at least ten different occasions, as outlined in the statement of facts, the bank had made attempts to cause Plaintiffs to lose their mortgage and to lose the contract with Aigner and their security deposit.  Defendants, in their brief, suggest that Wachovia merely insisted that Plaintiffs meet standard loan conditions.  This is a disputed fact.  The allegations are that Wachovia created unreasonable loan conditions specifically designed to defeat Plaintiffs' contract.  The allegation against the Defendants is that they had a duty to treat Plaintiffs fairly and they failed to do so, thereby providing Plaintiffs with the dilemma of either losing their deposit of $40,000.00 and the opportunity to purchase the homes that they chose to purchase or complying with the unreasonable requirements of the bank.  The bank cannot, and should not, be permitted to get away with that kind of conduct.

The implied covenant of good faith arose in an employment context.  It is intended to protect not only employees, but also creditors.  See *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 2006 WL 2588971 (Del. Ch.) "The implied covenant of good faith and fair dealing also protects creditors."

> The covenant of good faith and fair dealing, implies in every Delaware contract, arises from fundamental notions of fairness.  It is a judicial convention designed to protect the spirit of an agreement when, without violating an expressed term of the agreement, one side uses oppression or underhanded tactics to deny the other side the fruits to the parties' bargain.

In re *Cendant Corp. Securities Litigation,* 181 Fed. Appx. 206 2006 WL 1342808 (3rd Cir. 2006).

Plaintiffs suggest in this case that this is one of those instances where the bank created unreasonable requirements for Plaintiffs' credit applications which were not countenanced by the bank's own regulations. See *Blue Chip Capital Funds II, Ltd. Partnership v. Tubergen*, 2006 WL 2589393 (Del. Ch.) where the court sustained a claim for breach of the implied covenant of good faith and fair dealing in the corporate context. See also *A & A Air Services, Inc. v. Jane Richardson*, 2006 WL 2382433 (Del. Common Pleas).

The Defendants argue in their brief that Plaintiffs have failed to articulate a cause of action under the implied covenant of good faith and fair dealing. The Defendants misstate Plaintiffs' claims when they state that "Plaintiffs' core plan is that they accepted loan conditions which they now regret accepting." Plaintiffs' claim is that unreasonable conditions were repeatedly made upon them in attempting to obtain a loan which has cost Anderson $15,000.00 plus innumerable labor hours, Wheatley in excess of $50,000.00, and Wilkins $5,400.00 in lost time and traveling, plus the requirements subsequently of having to go out and buy the house which Wheatley could no longer afford.

Defendants' argument that there is no credible basis to incur bad faith on Wachovia's part belies the allegations of the complaint. In a motion to dismiss, the allegations of the complaint have to be read in the light most favorable to the Plaintiffs. The allegations read in a light most favorable to the Plaintiffs are that indeed Wachovia breached its implied duty of good faith and fair dealing to the Plaintiffs.

## IV.    PLAINTIFFS' FEDERAL CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

The critical facts and allegations in this case for time purposes are as follows: Plaintiffs contacted Defendants for a mortgage in June 2004.  Through a series of events which terminated on August 13, 2004, they were put through unreasonable hurdles (pretexts).  The allegations are that the conduct of the bank was continuing through August 13, 2004, even though Anderson and Wilkins went to settlement on August 6, 2004, because all three of the Plaintiffs' families had entered an agreement with Aigner for the purchase of the three properties.  Failure by one would subject all of them to the loss of their deal.  Suit was filed on August 11, 2006.

The statute of limitations for 42 U.S.C. §1981 is 4-year statute of limitations.  In the case of *Jones v. Donnelly*, 541 U.S. 369 (2004), the court analyzed the construction of 28 U.S.C. §1658(a), which creates a 4-year statute of limitations for causes of actions "arising under any act of Congress enacted after December 1, 1990".  42 U.S.C. §1981 was amended in 1991.  The issue before the court in *Jones v. Donnelly* was how that amendment effected the statute of limitations.  The court concluded:

> We conclude that a cause of action 'arises under an act of Congress enacted' after December 1, 1990 – and therefore is governed by §1658's 4-year statute of limitations – if a plaintiff's claim against a defendant was made possible by a post-1990 enactment. (p. 382)

The 1991 amendment which came into effect was a direct response to the Supreme Court case of *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), in which the Supreme Court held that the then existing §1981 provisions statutory right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract.  In that case, the court held that the petitioner's hostile work

environment, wrongful discharge, and refusal to transfer claims did not state violations of the original version of §1981. The addition to §1981 to claim "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" arguably includes most, if not all, of the claims of the Plaintiffs in this case. It is the Plaintiffs' contention that the additional burdens were put upon them after they signed the original application and can be described as "terms, and conditions" protected by the 1991 amendment. See also *Parker v. State of Delaware*, Del. Supr. 893 A.2d 964 (2006) for a discussion of §1981 prior to and after the 1991 amendment.

The case of *Monahan v. City of Wilmington*, 2004 Lexis 1322 (D. Del.) was decided before *Jones v. Donnelly*, as was the case of *Andrews v. Abbott Laboratories*, 2002 Lexis 6832 (D. Del. 2002). *Jones v. Donnelly* effectively overrules *Monahan* and *Andrews*.

Defendants suggest that Plaintiffs' claim would have been cognizable under §1981 prior to the 1991 amendments. Plaintiffs disagree. The claims are <u>not</u> that the Defendants refused to <u>contract</u> with Plaintiffs, but rather that the conduct of Defendants repeatedly attempted to discourage or create new conditions to defeat the contract. Plaintiffs suggest that the alleged conduct of the Defendants is more akin to harassment or "benefits, privileges, terms, and conditions" protected by the 1991 amendments rather than the formation of a contract of §1981 prior to the 1991 amendments.

Defendants also argue that the statute of limitations for all these Plaintiffs should begin to run on August 6, 2004, the date of the settlement of Anderson and Wilkins. Plaintiffs disagree. All three Plaintiffs entered into a transaction with Wachovia to purchase three adjacent houses from one seller who was planning to use this sale in a

1031 exchange.  Plaintiffs allege that the discriminatory conduct continued up until August 13, the date of the final closing.  Suite was filed on August 11, 2006.

*Waller v. Woods*, 752 A.2d 1175, 1183 (Del. Ch.), relied upon by the Defendants, is not helpful.  In that case, limited partners sued the corporate general partners and officers alleging breach of fiduciary duties.  In this case, Plaintiffs are not requesting that Wachovia's conduct undermined <u>Plaintiffs'</u> rights not Wachovia's rights under the contract.  Wachovia certainly can be liable for interfering with the performance of Plaintiffs' rights under Plaintiffs' contract with Wachovia.

The Defendants characterize repeatedly Wachovia's conduct as a good faith business decision (Def. brief p. 23).  The issue in this cause is whether Defendants' contract was performed in good faith.  Plaintiffs' allegations are that they were taken in bad faith. In this motion to dismiss, Plaintiffs' allegations must be accepted as true.

V.    **THE CLAIMS FOR VIOLATION UNDER THE EQUAL CREDIT OPPORTUNITY ACT ARE HEREBY WITHDRAWN WITH PREJUDICE.**

## CONCLUSION

Plaintiffs have alleged that the Defendants have violated their federal and state rights in the mortgage application process which took place between June and August 2004.

The statute of limitations for violations of 42 U.S.C. §1981(e) is 4 years for violations that are not covered with the 1991 amendments.

In a motion to dismiss, the allegations of a complaint should be liberally construed on behalf of a plaintiff. Plaintiffs are all minorities. They were all seeking to obtain credit for housing in a previously all white neighborhood and allege that the Defendants created at least 10 separate hurdles, in violation of the Plaintiffs' contractual rights and in violation of the bank's own regulations. Procedural irregularities of such a nature are sufficient to demonstrate intentional discrimination. The allegations of the complaint also demonstrate that the Plaintiffs' contractual rights to have their mortgage fairly processed have been violated.

Plaintiffs request that the Court deny Defendants' motion to dismiss.

GRADY & HAMPTON, LLC

_____/S/_____ John S. Grady_____
John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*

DATED:       November 1, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of November, 2006, a true and correct copy of

the **PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** was served via CM/ECF

Pacer upon the following:

> Michael J. Barrie, Esquire
> Schnader, Harrison, Segal & Lewis, LLP
> 824 N. Market Street
> 10th Floor, Suite 1001
> Wilmington, DE  19801-3011


GRADY & HAMPTON, LLC

_____/S/____ John S. Grady_____
John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*