**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| Plaintiffs, | ) ) ) | C.A. No. 06 CV 00567 (SLR) |
| v. | ) ) | |
| WACHOVIA MORTGAGE CORPORATION and WACHOVIA CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

---

**REPLY BRIEF OF DEFENDANTS WACHOVIA MORTGAGE CORPORATION AND WACHOVIA CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

Michael J. Barrie (#4684)
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Counsel for Defendants Wachovia Mortgage Corporation and Wachovia Corporation*

November 13, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.      Plaintiffs' Section 1981 Claim Is Barred By Delaware's Two-Year Statute Of Limitations For Personal Injury Actions ............................................................ 1

II.     Plaintiffs Fail To State A Claim Under Section 1981 Because They Do Not -- And Cannot -- Allege Purposeful Discrimination ......................................... 3

III.    Plaintiffs' Theory Of Tortious Interference Has No Foundation In Delaware Law ................................................................................................................ 5

IV.    Plaintiffs' Acceptance Of "Unreasonable" Contract Terms Cannot Give Rise To A Claim For Breach ................................................................................. 7

CONCLUSION ........................................................................................................... 10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*American Homepatient, Inc. v. Collier,* 2006 Del. Ch. LEXIS 79 (Apr. 19, 2006) ....... 5, 6

*Aspen Advisors LLC v. United Artists Theatre Co.,* 843 A.2d 697 (Del. Ch. 2004) .......... 6

*Carter v. Duncan-Huggins, Ltd.,* 727 F2d 1225 (D.C. Cir. 1984) ...................................... 4

*Dana Transp., Inc. v. Ableco Fin., LLC,* 2005 U.S. Dist. LEXIS 18086,
    (D.N.J. Aug. 17, 2005) ................................................................................. 8, 9

*Delaware State College v. Ricks,* 449 U.S. 250 (1980) ....................................................... 3

*Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    40 F.3d 63 (3d Cir. 1994) ................................................................................. 7

*Jones v. R.R. Donnelley & Sons,* 541 U.S. 369 (2004) ....................................................... 2

*Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712 (7th Cir. 1998) .................................. 5

*Nelson v. Fleet Nat. Bank,* 949 F. Supp. 254 (D. Del. 1996) .......................................... 6, 7

*PAS Communications, Inc. v. K.E. Johnson Consultants, Inc.,* 139 F. Supp. 2d 1149,
    (D. Kan. 2001) ................................................................................................ 4

*Patterson v. McLean Credit Union,* 491 U.S. 164 (1989) .............................................. 1, 2

*Pierce v. Metropolitan Prop. & Liab. Ins. Co.,* 1983 U.S. Dist. LEXIS 11368
    (S.D. Ohio Nov. 25, 1983) ........................................................................... 2, 3

*Price v. Sorrell,* 784 P.2d 614, 616 (Wyo. 1989) ............................................................... 7

*Russell v. K-Mart Corp.,* 761 A.2d 1 (Del. 2000) ............................................................... 6

*Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (3d Cir. 1996) ...................... 4

## STATUTES

28 U.S.C. § 1658 .............................................................................................................. 1, 2

42 U.S.C. § 1981 ...................................................................................................... 1, 2, 3, 4, 5

10 Del. C. § 8119 .................................................................................................................. 2


## MISCELLANEOUS

Del. P.J.I. Civ. § 12.7 ................................................................................................ 6

Restatement (Second) of Contracts § 766A ............................................................. 5, 6, 7

Case 1:06-cv-00567-SLR    Document 14    Filed 11/13/2006    Page 4 of 14

## ARGUMENT

Plaintiffs' brief in opposition to Wachovia's motion to dismiss their amended complaint simply highlights the flawed assumptions underlying their claims:

- Plaintiffs erroneously suppose that they may invoke a four-year statute of limitations for their Section 1981 claims that by its terms does not apply.

- Plaintiffs erroneously suppose that because purposeful discrimination can sometimes be proved by circumstantial evidence, they do not have to *plead* purposeful discrimination in their complaint.

- Plaintiffs erroneously suppose that they can have a claim for tortious interference with contractual relations under Delaware law when they have not alleged that any contract has been breached.

- Plaintiffs erroneously suppose that they can assert a claim for breach of contract by alleging merely that they accepted "unreasonable" contract terms.

These errors compel dismissal of plaintiffs' claims.

### I. Plaintiffs' Section 1981 Claim Is Barred By Delaware's Two-Year Statute Of Limitations For Personal Injury Actions.

Plaintiffs fail to demonstrate that they are entitled to the four-year statute of limitations provided under 28 U.S.C. § 1658. This provision by its terms only applies to "a civil action arising under an Act of Congress enacted after the date of the enactment of this section," *i.e.,* December 1, 1990. On plaintiffs' own view, their Section 1981 claims are based on Wachovia's alleged insistence on discriminatory conditions of plaintiffs' loans, such as making repairs to their properties and, in the case of the Wheatleys, increasing their down payment. As explained in Wachovia's opening brief, such a claim was within the ambit of the pre-1991 version of Section 1981, *see Patterson v. McLean Credit Union,* 491 U.S. 164, 177 (1989), thus precluding application of

Section 1658, *see Jones v. R.R. Donnelley & Sons,* 541 U.S. 369, 382-83 (2004). Instead, plaintiffs' Section 1981 claims are subject to Delaware's two-year personal injury statute of limitations under 10 Del. C. § 8119.

Plaintiffs' attempt to analogize this case to a "harassment" or hostile work environment case that might be subject to Section 1658 fails. *See* Plaintiffs' November 1, 2006 Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) ("Pls. Brf.") at 20. Plaintiffs' allegations are that: (1) the three couples engaged in a single arms-length lending transaction with Wachovia (though, in reality there were three separate loans for three separate couples); and (2) in order to complete this "single" transaction, plaintiffs had to comply with discrete loan conditions that they now assert were discriminatory. On their own allegations, plaintiffs' Section 1981 claims could have been brought under the pre-1991 version of the statute, on the theory that Wachovia was "offer[ing] to make a contract only on discriminatory terms." *Patterson,* 491 U.S. at 177. Thus, the two-year state law statute of limitations applies, not Section 1658.

Plaintiffs concede that by August 6, 2004, they had made the alleged required repairs to the properties and had been informed that an increased down payment would be necessary. They filed their complaint on August 11, 2006, five days after the two-year limitations period provided in 10 Del. C. § 8119 had expired. Plaintiffs' argument that one of their three purchases was not completed until August 13, 2004, is irrelevant to the statute of limitations analysis. "[I]t is the act of informing someone that an action will be taken, rather than the day upon which the action becomes effective, that is the occurrence which triggers the running of the statute of limitations in a civil rights action." *Pierce v. Metropolitan Prop. & Liab. Ins. Co.,* 1983 U.S. Dist. LEXIS 11368, *6

2

(S.D. Ohio Nov. 25, 1983); *see also Delaware State College v. Ricks,* 449 U.S. 250, 259 (1980) (statute of limitations began to run when plaintiff was "notified" of the adverse tenure decision rather than when decision took effect).[1]

In short, plaintiffs' Section 1981 claims accrued, at the latest, on August 6, 2004, when they were notified of the increased down payment, the last of the alleged discriminatory terms that Wachovia supposedly imposed. Thus, these claims are time barred and should be dismissed.

## II.  Plaintiffs Fail To State A Claim Under Section 1981 Because They Do Not -- And Cannot -- Allege Purposeful Discrimination.

Plaintiffs admit that they cannot state a claim under Section 1981 unless they allege that Wachovia purposefully discriminated against them on the basis of race. Pls. Brf. at 8. Plaintiffs have now had two opportunities to come forward with allegations of purposeful discrimination, yet neither their complaint nor their amended complaint contains any such assertions. Instead, plaintiffs assert that Hogsten had "his own undisclosed reasons" for "undermining" plaintiffs' purchases of the homes, Am. Compl ¶ 15, and that Hogsten had "no intention of permitting the transaction to be completed" because "he was not going to make enough money" on his commission, Am. Compl. ¶ 23, 24. On their face, these are not allegations of purposeful discrimination by Wachovia.

---

[1]  Plaintiffs' allegation that "[d]uring the week of August 16, 2004, Hogsten made further remarks to Anderson that the bank was going to be watching him," Pls. Brf. at 5, adds nothing. First, this supposed incident occurred well after plaintiffs' Section 1981 claims had accrued. Second, plaintiffs make no attempt to explain how this alleged cryptic remark involves discrimination in contracting that would be actionable under Section 1981.

In an attempt to evade this glaring defect in their claims, plaintiffs rely on the irrelevant proposition that discrimination may be proved by "both circumstantial and direct evidence." Pls. Brf. at 10. All of the cases plaintiffs cite for this argument deal with the problem of how a plaintiff *proves* allegations of purposeful discrimination without direct evidence of discriminatory intent.[2] Not one of these cases supports what plaintiffs are seeking to do here, which is to evade the requirement at the *pleading* stage of alleging purposeful discrimination by instead alleging the existence of purported circumstantial evidence of such discrimination. Plaintiffs have put the cart before the horse: before purported circumstantial evidence of discrimination may be considered, plaintiffs must allege such discrimination in the first place. Plaintiffs may not plead the former as a substitute for pleading the latter.

Notably, when plaintiffs state how they believe their "prima facie case" of discrimination is met -- namely, by Hogsten's alleged creation of "at least 10 identifiable hurdles . . . for the sole purpose of discouraging Plaintiffs from purchasing property in a white neighborhood," Pls. Brf. at 11 -- they cite absolutely no authority recognizing that such allegations, without more, are sufficient to state a claim for *purposeful* discrimination by Wachovia under Section 1981.

---

[2] *See, e.g., Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (3d Cir. 1996) (reviewing district court's grant of judgment as a matter of law in favor of defendant following a jury verdict in plaintiff's favor); *Carter v. Duncan-Huggins, Ltd.,* 727 F2d 1225 (D.C. Cir. 1984) (reviewing a district court's denial of judgment n.o.v. following a jury verdict in plaintiff's favor); *PAS Communications, Inc. v. K.E. Johnson Consultants, Inc.,* 139 F. Supp. 2d 1149, 1171-74 (D. Kan. 2001) (granting summary judgment in favor of defendant based on plaintiffs' failure to identify specific contracts they allegedly were denied on account of their race).

4

Indeed, as Wachovia explained in its opening brief, these allegations are *not* sufficient, because mortgage lending does not involve a "competitive situation" in which a defendant's favorable treatment of a white borrower at the alleged expense of a black borrower could "create[] the (minimal) suspicion" that the defendant has a discriminatory purpose. *Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 714 (7th Cir. 1998). Plaintiffs need more than their conclusory and unsubstantiated allegation that white homebuyers seeking their own loans to purchase their own houses were not required to make repairs or comply with similar conditions. If plaintiffs had anything to offer beyond this baseless and perfunctory assertion they would have pled it in their complaint.

In sum, without allegations that Wachovia purposefully discriminated against them -- allegations that are conspicuously absent from the complaint -- plaintiffs' Section 1981 claims must be dismissed.

**III.     Plaintiffs' Theory Of Tortious Interference Has No Foundation In Delaware Law.**

Plaintiffs are attempting to assert a claim against Wachovia under Restatement (Second) of Contracts § 766A, for allegedly "causing [their] performance [of their contract with Aigner] to be more expensive or burdensome." Pls. Brf. at 15.

Plaintiffs acknowledge that Section 766A has never been cited by any Delaware court. To the contrary, Delaware courts have expressly held that there can be no claim for tortious interference with contractual relations where, as here, there has been no breach of contract. *See, e.g., American Homepatient, Inc. v. Collier,* 2006 Del. Ch.

5

LEXIS 79, *11 (Apr. 19, 2006) ("Without a breach, there can be no tortious interference."); *Aspen Advisors LLC v. United Artists Theatre Co.,* 843 A.2d 697, 713 (Del. Ch. 2004) ("Because the plaintiffs have failed to state a claim for breach . . . their additional claim that the defendants . . . tortiously interfered with the . . . contract necessarily fails as well."). Thus, Delaware law does not recognize any theory of interference, such as Section 766A, that does not require a showing that the underlying contract has been breached.

Plaintiffs' citation to Delaware Superior Court Pattern Jury Instruction 12.7 in no way shows that their theory is viable under Delaware law. There is no Delaware case citing this instruction and there is no evidence that any Delaware court ever has instructed a jury in accordance with it. Instruction 12.7 covers both the standard interference theory of "caus[ing] a third party not to perform a contract" (which plaintiffs concede does not apply here) as well as plaintiffs' theory of "mak[ing] the performance of the contract more costly." Del. P.J.I. Civ. § 12.7. But the cases the instruction cites as its sources contain no reference at all to "making the performance of a contract more costly" and refer only to the standard theory of inducing a third party to breach the contract. Furthermore, Delaware's pattern jury instructions "are merely advisory and the practitioner should not use these instructions without also reviewing the applicable statutes, court rules and case law." *Russell v. K-Mart Corp.,* 761 A.2d 1, 4 (Del. 2000). Thus, Instruction 12.7, standing alone, is not evidence that Delaware law recognizes plaintiffs' theory of interference.

Nor does plaintiffs' reliance on *Nelson v. Fleet Nat. Bank,* 949 F. Supp. 254 (D. Del. 1996), strengthen their argument. *Nelson* applied Section 766A without

6

doing any predictive analysis of whether the Delaware Supreme Court would adopt that provision.[3] 949 F. Supp. at 260. Thus, *Nelson* has no persuasive value on the issue whether the Delaware Supreme Court would recognize plaintiffs' theory. Moreover, *Nelson* never mentioned the Third Circuit's sharp criticism of Section 766A in *Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63 (3d Cir. 1994). As the Third Circuit correctly noted, "causing the performance of a contract to be more costly 'as an element of proof is too speculative and subject to abuse to provide a meaningful basis for a cause of action.'" 40 F.3d at 66 (quoting *Price v. Sorrell,* 784 P.2d 614, 616 (Wyo. 1989)).

Plaintiffs' attempt to distinguish *Gemini* by arguing that it was "interpreting Pennsylvania law" misses the point. *Gemini* held that the Pennsylvania Supreme Court would not recognize Section 766A because that Section never had been cited by Pennsylvania courts and is deeply flawed as a matter of policy. 40 F.3d at 66. These reasons apply with equal force here. This Court should reject plaintiffs' attempt to plead a claim under Section 766A.

### IV. Plaintiffs' Acceptance Of "Unreasonable" Contract Terms Cannot Give Rise To A Claim For Breach.

Plaintiffs contend that "[t]he conduct of Defendants constituted a breach of the contract for a mortgage and the covenant of good faith and fair dealing in the contract to provide financing." Am. Compl. ¶ 74, 83, 94. This language implies that

---

[3] By contrast, elsewhere in its opinion the *Nelson* court engaged in a very detailed analysis on the issue whether the Delaware Supreme Court would recognize a cause of action for tortious interference with an at-will employment contract. 949 F. Supp. at 261-62.

7

plaintiffs believe they have (or had) two distinct contracts with Wachovia: (1) the "contract for a mortgage," as to which plaintiffs purport to have a claim for breach of contract; and (2) the "contract to provide financing," as to which plaintiffs purport to have a claim for breach of the implied covenant of good faith and fair dealing.

However, plaintiffs' argument in their brief in opposition to Wachovia's motion to dismiss focuses exclusively on the implied covenant of good faith and fair dealing and says nothing at all about any purported breach of "the contract for a mortgage." Pls. Brf. at 17-18. Thus, plaintiffs have effectively abandoned any claim based on this supposed contract, and apparently now seek to recover solely for Wachovia's purported breach of "the covenant of good faith and fair dealing in the contract to provide financing."

Plaintiffs' sole argument in support of this claim is that by allegedly insisting that they make repairs to the properties and, in the case of the Wheatleys, increase their down payment, Wachovia somehow "forced" them to choose between "losing their deposit of $40,000.00 and the opportunity to purchase the homes that they chose to purchase or complying with the unreasonable requirements of the bank." Pls. Brf. at 17. This argument goes nowhere.

First, there is no precedent for plaintiffs' theory of breach. A claim for breach of the implied covenant of good faith and fair dealing in a "contract to provide financing" arises only in contexts in which a lender insists on conditions of completing the loan that kill the deal. *See, e.g., Dana Transp., Inc. v. Ableco Fin., LLC,* 2005 U.S. Dist. LEXIS 18086, *4 (D.N.J. Aug. 17, 2005) (plaintiff claimed breach of the covenant

8

of good faith and fair dealing where lender's last-minute insistence on conditions of loan scuttled the transaction). In contrast to *Dana,* what plaintiffs are asserting is not a breach by Wachovia of its implied contractual obligation to negotiate in good faith toward completing the loan transactions but in essence an *attempted* breach of this obligation -- Wachovia supposedly *wanted* to kill the loan, but could not induce plaintiffs to abandon the transaction. But there is no such thing as a cause of action for attempting to induce the other party in a contract to walk away from the deal. Moreover, even assuming that the loan conditions on which Wachovia supposedly insisted were "unreasonable" -- which they were not -- insisting on unreasonable contract terms simply is not a breach.

In sum, plaintiffs' claim that they accepted contract terms that they now say were unfair is not a theory of breach, whether of the covenant of good faith and fair dealing or any other covenant. Plaintiffs' contract claims should be dismissed.

## CONCLUSION

For these reasons, and for the reasons set forth in Wachovia's opening brief in support of its motion to dismiss, Wachovia respectfully asks that the Court grant this motion and dismiss plaintiffs' amended complaint with prejudice for failure to state a claim upon which relief can be granted.

                                            Respectfully submitted,

                                            /s/ Michael J. Barrie

| | |
|---|---|
| *Of Counsel* | Michael J. Barrie (#4684) |
| Elizabeth K. Ainslie | Schnader Harrison Segal & Lewis LLP |
| Stephen A. Fogdall | 824 N. Market Street |
| Schnader Harrison Segal & Lewis LLP | 10th Floor, Suite 1001 |
| 1600 Market Street, Suite 3600 | Wilmington, DE 19801-3011 |
| Philadelphia, PA 19103 | (302) 888-4554 |
| (215) 751-2000 | |

*Counsel for Defendants Wachovia Mortgage Corporation*
*and Wachovia Corporation*

Dated: November 13, 2006

**CERTIFICATE OF SERVICE**

       I, Michael J. Barrie, certify that the forgoing Reply Brief of Defendants Wachovia Mortgage Corporation and Wachovia Corporation to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) has been electronically filed and is available to be viewed and downloaded on the Court's ECF website. I further certify that I have served a copy of the Motion and Brief upon the following by overnight mail:

                John S. Grady, Esquire
                Grady & Hampton, LLC
                6 North Bradford Street
                Dover, DE 19904

                              /s/ Michael J. Barrie

November 13, 2006