# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

## ANSWERING BRIEF OF DEFENDANTS WACHOVIA MORTGAGE CORPORATION AND WACHOVIA CORPORATION IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

---

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall (admitted *pro hac vice*)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

Michael J. Barrie (#4684)
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Counsel for Defendants Wachovia Mortgage Corporation*
*and Wachovia Corporation*

December 21, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ...................1

SUMMARY OF THE ARGUMENT ................................................................................1

CONCISE STATEMENT OF FACTS .............................................................................2

ARGUMENT ....................................................................................................................9

I.      Wachovia Has No Obligation To Extract Information From Documents
        For Plaintiffs' Benefit ...............................................................................................9

II.     Wachovia Has No Obligation To Generate Statistics For Plaintiffs That
        Are Not Relevant To Any Claim Or Defense In This Action ...............................10

III.    Plaintiffs' Remaining Interrogatories Were Improper Or Have Been
        Answered ...............................................................................................................12

IV.     Wachovia Has Responded Appropriately To Plaintiffs' Requests For
        Documents .............................................................................................................15

CONCLUSION ..............................................................................................................17

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carney v. City and County of Denver,* 2006 U.S. Dist. LEXIS 73828 (D. Colo. Oct. 10, 2006) ......................................................................................................11-12

*General Building Contractors Association v. Pennsylvania,* 458 U.S. 375 (1982) ..........11

*EEOC v. District of Columbia Pub. Schs.,* 217 F.R.D. 12 (D.D.C. 2003) ......................12

*Kier v. Commercial Union Insurance Co.,* 808 F.2d 1254 (7th Cir. 1987).....................11

*Smith v. Leggett Wire Co.,* 220 F.3d 752 (6th Cir. 2000)................................................11

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1981 ...........................................................................................................11

Fed. R. Civ. P. 33(d) ......................................................................................................9

## MISCELLANEOUS

Fannie Mae 2002 Single Family Selling Guide, Part X, Chapter 6, § 603.........................7

     Part X, Chapter 6, § 603.15 ......................................................................................8

     Part X, Chapter 6, § 603.17 ......................................................................................8

     Part XI, Chapter 2, § 202 ..........................................................................................6

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

        **A.**       **Nature of the Proceeding**

          Plaintiffs are three African-American couples who allege that Wachovia "forced" them to accept unreasonable conditions in order to obtain loans for the purchase of homes on North DuPont Highway in Dover, Delaware. The loan conditions at issue simply are standard Fannie Mae and Wachovia underwriting requirements: (1) that any repairs affecting the livability of the property be made before closing; (2) that a borrower show the source of his funds; and (3) that business assets used for the down payment or for closing be verified by a CPA. Notwithstanding that these are standard underwriting guidelines in the mortgage lending industry, plaintiffs say that Wachovia only applied them here because of their race.

        **B.**       **Stage of the Proceeding**

          Plaintiffs erroneously assert that Wachovia has not responded to interrogatories and document requests. In fact, Wachovia has engaged in extensive discovery. Plaintiffs simply are unhappy with the information that has been produced, because that information refutes every allegation they have made.

**SUMMARY OF THE ARGUMENT**

          Plaintiffs' motion to compel should be denied in its entirety. There is no basis to compel the production of information that plaintiffs already have. Plaintiffs were given the vast majority of the relevant documents months ago, and they have now deposed two of the individuals at Wachovia most knowledgeable about this case. As we

set forth in detail below, these documents and witnesses have answered all of plaintiffs'

questions.

The only discovery requests to which Wachovia has refused to provide

responsive information are plaintiffs' requests for Wachovia's loan approval rates by race

nationally and in Delaware.  Wachovia is under no obligation to generate this data for

plaintiffs and it has absolutely no relevance to their claims.

## CONCISE STATEMENT OF FACTS

Plaintiffs Tolano and Cathy Anderson, Lloyd and Audria Wheatley, and

Richard and Brenda Wilkins are three African-American couples who purchased three

homes on North DuPont Highway, a busy thoroughfare in Dover, Delaware.  These

homes are located in a commercial zone on the edge of Silver Lake, surrounded by

businesses and group housing.  *See* Dover, Delaware zoning map and explanatory legend,

in Appendix of Exhibits accompanying this Brief at B-1, B-2 (showing plaintiffs' lots,

580, 584 and 592 North DuPont Highway, in yellow; the designation "C-1A," where

plaintiffs' homes are located, indicates a commercial zone; "RG-3" represents group

housing); *see also* photographs of plaintiffs' homes at B-3.

Plaintiffs maintain that these homes are located in a "white neighborhood"

with "no minorities."  *See* Amended Complaint ("Am. Compl.") ¶ 4, B-160; Deposition

of Lloyd Wheatley ("Wheatley Dep.") at 136:5-8, B-39.  Census data demonstrates that

this assertion is not correct.  *See* Figures 1 and 2 in Appendix at B-4.[1]  Plaintiffs maintain

without any basis that "the community" did not want African-Americans buying homes

on Silver Lake and put "pressure" on the Wachovia loan officer, J.D. Hogsten, to find

ways to undermine the transaction.  Wheatley Dep. at 135:3-136:14, B-39; *see also*

Wheatley Dep. at 114:1-115:17, B-34.  Plaintiffs do not explain why the business-owners

and residents in the area, many of whom were African-American, would object to

African-Americans buying these three properties.  Nor do they explain how "pressure"

from "the community" could have had any impact on Wachovia's loan-approval process,

when all of the underwriting and other decision-making on their loans took place in

Waterbury, Connecticut, by people who had no contact with "the community" of Silver

Lake and could not have cared what that community thought.  *See, e.g.,* Deposition of

Colleen Fazzino ("Fazzino Dep.") at 105:12-106:1, B-68 to B-69.

To provide context for the discussion of plaintiffs' interrogatories and

document requests below, we briefly summarize the pertinent evidence the parties have

developed in discovery:

**Mr. and Mrs. Anderson:**  the Andersons' core allegation is that they

were required to make repairs to their home before Wachovia would make them a loan.

They make the blanket assertion that "it's not reasonable to require repairs or any work to

be done on a property prior to the acquisition of the property."  Deposition of Tolano

---

[1]     Figure 1 was downloaded directly from the Census Bureau website.
http://factfinder.census.gov.  Figure 2 was downloaded from this same source, but
to aid the reader we added the text box, the green shading on Census block 1000
and the red dot to mark plaintiffs' homes.

Anderson ("Anderson Dep.") at 145:21-24, B-112. They do not dispute that the property needed repairs. For example, Mr. Anderson testified that a pipe had broken and the leaking water had damaged the drywall in the basement and on the first floor. Anderson Dep. at 122:15-23, B-107; *see also* Anderson Dep. at 151:12-19, B-114. According to him, the house "needed some work, you know. It needed work consistent with buying a house and then moving in and fixing it up." Anderson Dep. at 122:22-123:2, B-107.

In fact, the home needed extensive work. As Mr. David Miller explains in his declaration, he had explored purchasing these three properties just prior to plaintiffs' doing so. *See* Declaration of Dave Miller, B-126 to B-128, at ¶¶ 2-4. He confirms that the Anderson home had a broken water pipe that had caused considerable damage on the first floor and in the basement. *Id.* at ¶¶ 7-13. Further, the drywall was missing in several places and the insulation needed to be replaced. *Id.* at ¶¶ 9, 10. Tiles were peeling back from the floor, *id.* at ¶ 10, mold was developing in places, *id.* at ¶ 12, and water from the pipe appeared to have infiltrated into the electrical sockets and may have damaged the wiring in the wall, *id.* at ¶ 13. In Mr. Miller's view, all of the drywall and the insulation, and perhaps the wiring, needed to be gutted out and replaced. *Id.* at ¶ 14.

Indeed, the house was in such disrepair that when the independent appraiser, John Mullens, arrived in early July to do the appraisal, he determined that an appraisal would be impossible with the home in that state. Deposition of James Hogsten ("Hogsten Dep.") at 27:15-28:14, B-136; *see also* Hogsten Dep. at 93:19-24, B-152. Because a satisfactory appraisal is a condition of obtaining a loan, Mr. Hogsten encouraged Mr. Anderson to make the repairs. *See* Hogsten Dep. at 32:9-17, B-137; *see also* Hogsten Dep. at 37:2-8, B-138; Hogtsen Dep. at 28:15-20, 29:8-10, B-136. Mr.

Anderson did so, a satisfactory appraisal of the property was obtained, and the Andersons received a loan in August 2004.  Hogsten Dep. at 33:7-24, B-137.

Plaintiffs allege that Mr. Hogsten handpicked Mr. Mullens as the appraiser in an attempt to "undermine" the sale.  *See* Am. Compl. ¶ 12-15, B-161.  But, as Mr. Hogsten explained at his deposition, neither he nor anyone else at Wachovia ever selects an appraiser.  Rather, when an appraisal is needed, a loan processor in Wachovia's service center in Waterbury, Connecticut places an order with GreenLink LLC, a subsidiary of Wachovia Corporation in Florida, which hires an independent appraiser. Hogsten Dep. at 25:7-26:11, B-135 to B-136.  For example, in the case of the Anderson loan, Rosemary Ciullo in the Waterbury service center placed an order for an appraisal on June 29, 2004.  *See* order confirmation, B-180 to B-181.  On June 30, 2004 GreenLink assigned Mullens Valuation Services LLC to do the appraisal.  *See* appraisal assignment confirmation, B-178 to B-179.  So plaintiffs' allegation that Mr. Hogsten somehow arranged for Mr. Mullens to do the appraisal has no basis in fact.

**Mr. and Mrs. Wheatley:**  Like the Andersons, the Wheatleys say that they had to make repairs to their home and have them inspected before Wachovia would give them a loan.  They do not dispute that repairs were needed.  They simply maintain that they did not want to make the repairs *then*.  They "didn't see the . . . immediate reason to require all this extensive repair when the house appraised at its value of the loan."  Wheatley Dep. at 127:10-18, B-37.  But while the house may have appraised for its purchase price, the appraisal noted serious concerns, including:

- "[A] lack of heat in subject property on 2nd floor";

- "It does appear some work is needed on wood shake roof but assumed not to have any leakage";

- "It does appear some of the piping in basement is wrapped with asbestos."

Appraisal of Daniel A. Gladden, in Appendix at B-186 (emphasis added). In his deposition, Mr. Wheatley candidly admitted that the concerns noted in the appraisal directly affected the livability of the property and needed to be addressed. *See* Wheatley Dep. at 58:9-61:5, B-20.[2] The Wheatleys were able to address some of these concerns (for example, inspections of the roof and the asbestos were obtained) but they have yet to submit any documentation showing that they installed heat on the second floor.

The Wheatleys also allege that they were improperly required to increase their down payment from 10% to 20%. As Ms. Fazzino explained at her deposition, this

---

[2]    Wachovia's underwriting guidelines state:

> [A]n appraisal may be based on the "as is" condition of the property if minor conditions that do not affect the livability of the property exist -- such as minor deferred maintenance -- as long as the appraiser's opinion of value reflects the existence of these conditions. The underwriter must review carefully the appraisal for a property appraised in an "as is" condition to ensure that the property does not have any physical deficiencies or conditions that would affect its livability. *If there are none*, Wachovia Mortgage Corporation does not need to require minor repairs to be completed before it delivers the mortgage to [Fannie Mae].

Wachovia Underwriting Guidelines, in Appendix at B-196 (emphasis added).

This guideline tracks the language of the Fannie Mae Selling Guide in effect at the time the Wheatleys purchased their home. *See* Fannie Mae 2002 Single Family Selling Guide, Part XI, Chapter 2, § 202: Status of Construction, in Appendix at B-202, at the bullet point beginning "For existing construction . . . ." Also available at http://www.allregs.com/efnma.

was required because, quite apart from the concerns about the property, the Wheatleys did not meet the guidelines for their loan product. The Wheatleys wanted to use assets of Mr. Wheatley's limousine business to purchase the home, and the underwriting guidelines required that these be verified by a CPA. *See* B-208. Because Mr. Wheatley did not use a CPA for his business, the Wheatleys could not meet this guideline. Fazzino Dep. at 99:21-101:9, B-67.

However, because of Mr. Wheatley's history with Wachovia -- he was considered a five star customer -- Wachovia made an "exception" loan for him, meaning a loan that did not comply with the underwriting guidelines. Fannie Mae will not purchase an exception loan and mortgage insurers generally will not insure them. *See* Fazzino Dep. at 59:1-6, B-57; 123:17-124:13, B-73; Hogsten Dep. at 94:24-95:12, B-153; 106:4-13, B-156. Nevertheless, Wachovia made the loan, but at an 80% loan to value, to reflect the fact that Wachovia could not obtain mortgage insurance. Fazzino Dep. at 59:1-6, B-57; Hogsten Dep. at 94:24-95:12, B-153.

**Mr. and Mrs. Wilkins:** The only supposed discriminatory act alleged by the Wilkinses is that they "were required to prove that the funds used for [their] deposit was [their] money and show its source." Am. Compl. ¶ 30, B-163. They erroneously assert that "[t]his is not normal customary practice of the bank." Am. Compl. ¶ 31, B-163. To the contrary, Fannie Mae guidelines state that "[t]he lender must obtain documentation for all sources for the funds that the borrower uses to make the down payment and pay closing costs." Fannie Mae 2002 Single Family Selling Guide, Part X, Chapter 6, § 603, B-216. Likewise, Wachovia's underwriting guidelines, which conform to Fannie Mae's, state that "[t]he borrower must have enough liquid assets to cover the

7

amount of the down payment that must come from *his or her own funds*." Wachovia
Underwriting Guidelines, Assets: Sources of Funds, B-217 (emphasis added).

       In the Wilkinses' case, the source-of-funds issue arose because they paid
the $13,333.00 earnest money deposit with a credit card. *See* underwriter's note at B-
224; *see also* credit card statement at B-226. A credit card is not an acceptable source of
funds for a deposit or down payment. Both Fannie Mae's and Wachovia's guidelines
state that a credit card may only be used for small items such as lock-in fees, credit
reports and appraisal reports. *See* Fannie Mae Single Family 2002 Selling Guide, Part X,
Chapter 6, § 603.17, B-227; *see also* Wachovia Underwriting Guidelines at B-220.

       According to plaintiffs' Amended Complaint, the Wilkinses were
informed of this issue on July 23, 2004. *See* Am. Compl. ¶ 32, B-163. On July 26, 2004,
Dr. Wilkins took out a secured loan and repaid the credit card. *See* promissory note at B-
228; *see also* credit card statement at B-229. Because a secured loan is an acceptable
source of funds, the underwriter deemed the issue resolved and approved the loan. *See*
B-225; *see also* Fannie Mae 2002 Single Family Selling Guide, Part X, Chapter 6, §
603.15, B-230; B-219.

**ARGUMENT**

The Court should deny plaintiffs' motion to compel in its entirety.  Many of plaintiffs' requests were improper to begin with.  To the extent plaintiffs were entitled to any information at all, Wachovia has provided it.

## I.    Wachovia Has No Obligation To Extract Information From Documents For Plaintiffs' Benefit.

Plaintiffs erroneously maintain that Wachovia "failed to provide any responses" to Interrogatories 1, 3, 4, 8, 11, 14 and 16.  To the contrary, Wachovia responded, as is appropriate, under Rule 33(d), which provides:

> Where an answer to an interrogatory may be derived or ascertained from the business records . . . of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records . . . and the burden of deriving or ascertaining the answers is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records . . . .

Fed. R. Civ. P. 33(d).

Plaintiffs argue that reliance on this Rule somehow is "not proper when answers could have been given."  Pls' Mot. at 1-2.  That argument turns Rule 33(d) into a dead letter:  by definition, *whenever* Rule 33(d) is invoked, an answer to the interrogatory at issue "could have been given."  The point simply is that the responding party has no obligation to give such an answer if the interrogating party could just as easily find it in the records himself.  Nor is there any merit to plaintiffs' assertion that Rule 33(d) does

not apply because the documents "constitute hundreds of pages." Pls' Mot. at 2. Apart from demonstrating that Wachovia has been more than cooperative in producing documents, the volume of records confirms that Wachovia is in no better a position than plaintiffs to wade through them to find plaintiffs' answers.

In short, Wachovia's reliance on Rule 33(d) was perfectly proper. The motion to compel should be denied.

## II.    Wachovia Has No Obligation To Generate Statistics For Plaintiffs That Are Not Relevant To Any Claim Or Defense In This Action.

In Interrogatory No. 15, and Requests for Production Nos. 4 and 11, plaintiffs seek loan-approval statistics from Wachovia that have no relevance to this case and, even if they could be generated, would be onerous to produce.

Plaintiffs' Interrogatory No. 15 reads:

> If the data is available, identify the number of applications by African-Americans for homes over $250,000.00 and the number of African-American applicants for homes over $250,000.00 in Kent County and the number of applications which have been approved in each category.

Plaintiffs' Request for Production No. 4 seeks:

> All internal documents indicating the rate of approval of applications by income or race or any other categories in Delaware or nationally.

Plaintiffs' Request for Production No. 11 seeks:

> Any documents reflecting the mortgage approval rates
> of African-Americans in Delaware.

In this Section 1981 case, plaintiffs must prove purposeful discrimination

by Wachovia. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391

(1982) ("[Section] 1981 . . . can be violated only by purposeful discrimination.").  The

loan-approval statistics plaintiffs seek do not begin to establish this because they do not

relate to plaintiffs' "particular charge of discrimination."  *Kier v. Commercial Union*

*Insurance Co.,* 808 F.2d 1254, 1258 (7th Cir. 1987).  Plaintiffs are not alleging

discriminatory *denial* of their loans.  Their theory is that Wachovia "forced" them to

repair their properties, to demonstrate the source of their funds, and, in one case, to

increase the down payment because of their race.  Loan approval rates have no relevance

to that theory.  Plaintiffs do not even *ask* for race-related statistics reflecting when repairs

or other underwriting issues were addressed before a loan was approved.  Moreover, such

statistics, if they even could be generated, would have to be created from scratch, and

would not begin to demonstrate discriminatory intent by Mr. Hogsten or anyone else in

this case.[3]

---

[3]     *See Kier,* 808 F.2d at 1258 ("Kier alleged that Commercial fired him because of
his age.  The proffered statistics showed that new attorneys hired were
substantially younger than those previously employed.  Kier was not alleging
discriminatory hiring.") (emphasis added); *Smith v. Leggett Wire Co.,* 220 F.3d
752, 762 (6th Cir. 2000) ("[T]he statistics relating to the percentage of minority
supervisors at Adcom and other Leggett & Platt facilities were not relevant to the
issue whether Adcom terminated Smith because of his race."); *Carney v. City and
County Denver,* 2006 U.S. Dist. LEXIS 73828, at *10-*11 (D. Colo. Oct. 10,
*...Continued*

Plaintiffs' sole attempt to explain how these statistics could be relevant is their bare assertion that this information would be "helpful in determining the overall policies of Wachovia." Pls' Mot. at 3. But "the overall policies of Wachovia" are not at issue here. There is no allegation anywhere in plaintiffs' Complaint or Amended Complaint that Wachovia has a *policy* of denying loans based on race. Indeed, there is not even an allegation that Wachovia has a policy of requiring African-American borrowers to make a higher down payment or to make supposedly unnecessary repairs to their properties.

In sum, the Court should refuse to compel production of the statistics plaintiffs' seek.

## III.    Plaintiffs' Remaining Interrogatories Were Improper Or Have Been Answered.

Plaintiffs have no basis to seek any additional information on the remaining interrogatories they mention in their motion: Nos. 5, 6, 7, 9, 10, 12, 13 and 15. Interrogatory No. 5 seeks "the name and address of the first appraiser used by the Defendants in this case." The interrogatory may be seeking information about John

---

*Continued from previous page*

2006) ("[E]ven if the evidence showed a statistically significant deviation between the number of black officers in the DPD and the number of qualified applicants for the job, which it does not, at best plaintiff's statistics might reveal some disparity in the hiring and promotion of blacks within the department. However, since plaintiff alleges no claim based on a failure to hire or a failure to promote, her statistical evidence is ultimately irrelevant to the claims in this lawsuit."); *see also EEOC v. District of Columbia Pub. Schs.*, 217 F.R.D. 12, 15 (D.D.C. 2003) (discovery of race statistics denied "because the only means of possibly obtaining this information would be to search the individual files of each teacher who was employed by DCPS").

Mullens, the appraiser who was assigned by GreenLink to appraise the Anderson property in early July 2004. *See supra.* Mr. Mullens determined that he could not perform an appraisal, in part due to the condition of the property. Hogsten Dep. at 28:11-14, 93:19-24. Plaintiffs counsel neglected to mention in his motion that he already has John Mullens' telephone number, because Wachovia provided it in its Rule 26 disclosures in September 2007, long before Interrogatory No. 5 even was served. There is no basis to compel the production of information plaintiffs' counsel knows full well he already has.

Interrogatory No. 6 seeks information concerning how "the bank selected the appraisers in this case." Plaintiffs have this information. *See supra*.

Interrogatory No. 7 seeks the name of any "other loan officers of Wachovia in Kent County who have mortgage responsibilities similar to those of Mr. Hogsten." Mr. Hogsten testified at his deposition that there are no other loan officers for Kent County. *See* Hogsten Dep. at 95:13-19.

Interrogatory No. 9 asks: "Did Mr. Hogsten ever inform or suggest to Mr. Anderson that any of the properties in question was a potential commercial property?" This is not an interrogatory. It is a request for an admission that Mr. Hogsten said that the Anderson property might be more valuable as a commercial property. Mr. Hogsten is not a party to this action and Wachovia is not in a position to speak on his behalf. Furthermore, plaintiffs' counsel already knows the answer to this question. Mr. Hogsten testified at his deposition that he did relay to Mr. Anderson an appraiser's comment that the property might be more valuable in a commercial use. *See* Hogsten Dep. at 90:12-20.

Nor is this a particularly surprising observation: as noted above, these properties are located on a busy highway, surrounded by businesses, in a commercial zone. *See* B-1.

Interrogatory No. 10 seeks "the criteria of the bank, written or oral, for appraisals, repairs and warranties in connection with the loan application process." These documents already have been provided to plaintiffs. *See* B-193 to B-203. This Interrogatory also seeks "financial criteria, written and oral, for approving loan applications." To the extent relevant, these also have been produced. *See, e.g.,* B-204 to B-215. Moreover, plaintiffs' counsel has had the opportunity to discuss these documents with Ms. Fazzino, the underwriter for the Anderson and Wheatley loans. If plaintiffs' counsel is lacking information at this point, the responsibility is solely his own.

Interrogatory No. 12 asks whether paragraph 52 of plaintiffs' Amended Complaint (alleging that "the bank wanted an additional down payment from Wheatley before this matter could go to closing") is correct. Like Interrogatory No. 9, this simply is a request for an admission that the Wheatleys had to make a higher down payment than their original loan application contemplated. No one disputes this. Moreover, plaintiffs' counsel discussed this thoroughly with Ms. Fazzino. *See, e.g.,* Fazzino Dep. at 52:6-73:18, B-55 to B-60.

Interrogatory No. 13 seeks "the reasons why Wachovia was unable to obtain a PMI" for the Wheatley loan. Again, plaintiffs' counsel discussed this with both Ms. Fazzino and Mr. Hogsten. *See, e.g.,* Fazzino Dep. at 59:1-6, B-57; Hogsten Dep. at 94:24-95:12, B-153. There is nothing inappropriate about referring plaintiffs to witnesses for an answer to this question.

14

**IV.    Wachovia Has Responded Appropriately To Plaintiffs' Requests For Documents.**

Plaintiffs acknowledge that Wachovia has produced a substantial number of documents in this case. Pls' Mot. at 3. Yet they erroneously state that Wachovia has not responded to plaintiffs' Requests Nos. 4, 5, 6, 7, 8, 9, 10 and 11.

Request No. 5 seeks "internal documents reflecting any list of approved appraisers." [4] As already explained, Wachovia does not maintain "internal documents" that list "approved appraisers." Orders for appraisals are placed with GreenLink. That is the extent of Wachovia's involvement in the selection of appraisers. GreenLink is not a party to this action and Wachovia is under no obligation to produce whatever lists of "approved appraisers" GreenLink might or might not maintain.

Request No. 6 seeks "documents that specify any preferences or considerations which the bank uses in the mortgage application process when dealing with individuals who are already Wachovia customers." There are no such documents. However, Wachovia made a loan to the Wheatleys in this case, notwithstanding that the loan did not meet Wachovia or Fannie Mae Guidelines, in part because it considered Mr. Wheatley a five-star customer. *See* B-231.

Request No. 7 seeks "documents which are used or relied upon by the Defendants to distinguish what requirements are made for down payments on mortgage applications . . . and how the interest rates are computed." The Andersons and the

---

[4]    We discuss Requests 4 and 5 in Argument II above.

Wilkinses have made no allegation that their down payments were discriminatory or unreasonable. The down payment requirements for the Wheatley have been produced and were discussed in Ms. Fazzino's deposition. *See* B-204 to B-215; Fazzino Dep. at 51:10-73:18, B-55 to B-60. Moreover, none of the plaintiffs has alleged that their interest rate was unreasonable or discriminatory. Indeed, the Wheatleys' interest rate ultimately was lower than the rate for which they originally applied. *Compare* B-232 (interest rate: 6.750%), *with* B-240 (interest rate: 6.625%).

Request No. 8 seeks communications between individuals within Wachovia regarding the condition of plaintiffs properties. All such documents have been produced.

Request No. 9 seeks "any documents of the Defendants requiring the source of the mortgage applicants' money." These already have been produced. *See* B-216 to B-230.

Request No. 10 seeks Wachovia's underwriting guidelines for appraisals. These have been produced. *See* B-193 to B-201.

In short, plaintiffs' have absolutely no grounds to complain about any of Wachovia's responses to their document requests. The motion to compel should be denied.

## CONCLUSION

For these reasons, defendants Wachovia Mortgage Corporation and Wachovia Corporation hereby respectfully ask that the Court deny plaintiffs' motion to compel discovery in its entirety.

Respectfully submitted,

/s/ Michael J. Barrie
Michael J. Barrie  (#4684)

*Of Counsel*                                        Schnader Harrison Segal & Lewis LLP
Elizabeth K. Ainslie                            824 N. Market Street
Stephen A. Fogdall (admitted *pro hac vice*)   10th Floor, Suite 1001
Schnader Harrison Segal & Lewis LLP     Wilmington, DE 19801-3011
1600 Market Street, Suite 3600              (302) 888-4554
Philadelphia, PA 19103
(215) 751-2000

Dated:  December 21, 2007

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ORDER

---

AND NOW, this __ day of _____ , 2007, upon consideration of plaintiffs' motion to compel discovery and the brief in opposition thereto filed by Wachovia Mortgage Corporation and Wachovia Corporation, it is HEREBY ORDERED that plaintiffs' motion is DENIED in its entirety.

_____
Sue L. Robinson, U.S.D.J.

**CERTIFICATE OF SERVICE**

I, Michael J. Barrie, certify that the forgoing Brief in Opposition to

Plaintiffs' Motion to Compel Discovery has been electronically filed and is available to

be viewed and downloaded on the Court's ECF website. I further certify that I have

served a copy of the Brief upon the following by overnight mail:

John S. Grady, Esquire
Grady & Hampton, LLC
6 North Bradford Street
Dover, DE 19904

/s/ Michael J. Barrie

December 21, 2007