# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| and WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL INTERROGATORIES AND REQUESTS FOR PRODUCTION

GRADY & HAMPTON, LLC

John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*

DATED:     December 28, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE NATURE AND ........................................................................ 1

STAGE OF THE PROCEEDINGS ................................................................................ 1

    A.   NATURE OF THE PROCEEDINGS. ................................................................ 1

    B.   STAGE OF THE PROCEEDINGS. ..................................................................... 1

SUMMARY OF THE ARGUMENT .............................................................................. 2

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT ................................................................................................................... 4

    I.   THE DEFENDANTS HAVE FAILED TO RESPOND TO PLAINTIFFS'
          INTERROGATORIES AND THE REQUESTS FOR PRODUCTION. ............... 4

CONCLUSION................................................................................................................ 8

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Del Campo v. American Corrective Counseling Services, Inc.*, 2007 WL 4287335 (N.

Dist. Ca.) .................................................................................................................... 4

*Oleson v. Kmart Corp.*, 175 F.R.D. 560 (D. Kan. 1997) ..................................................... 4

*Sabitt/Adler Litig.*, 174 F.R.D. 44 (N.D.N.Y. 1997) ........................................................... 6

*Sheridan v. C. I. DuPont de Nemours*, 100 F.3d 1061 (3rd Cir. 1996) ............................... 6

## <u>Authorities</u>

*Moore's Federal Practice 3rd Ed.* §33.105 ................................................................. 2, 4, 6

*Wright and Miller* §2178 .................................................................................................. 2

## STATEMENT OF THE NATURE AND
## STAGE OF THE PROCEEDINGS

A.     NATURE OF THE PROCEEDINGS.

This is an action to compel answers to interrogatories and requests for production.

The underlying action alleges that the Defendants acted illegally in connection with a mortgage transaction that the Plaintiffs had with the Defendants.   Those allegations include allegations of race discrimination and a breach of the duty of good faith and fair dealing.

Both the Plaintiffs and the Defendants had filed interrogatories in this case. Plaintiffs had scheduled the deposition of Mr. Hogsten for November 2, 2007, and the Defendants had scheduled the depositions of the Plaintiffs for October 30 and 31, 2007. There was an informal agreement between counsel that the time for filing interrogatories would be delayed as long as the interrogatory answers were filed prior to the depositions of the respective individuals.   On the day before Mr. Hogsten's deposition, Defendants filed interrogatory answers objecting to virtually every interrogatory.   Plaintiffs' counsel was put in the position of either calling off the deposition until the answers were properly answered in counsel's opinion, or going forward with the deposition.   In order to try to accommodate the scheduling order, Plaintiffs' counsel took the deposition of Hogsten without the benefit of the answers to interrogatories.   The Defendants had failed to file a written response to the requests for production; however, they did supply approximately 1,000 pages of documents.

B.     STAGE OF THE PROCEEDINGS.

Plaintiffs assert that the Defendants have not complied with Rule 33 in answering the interrogatories and Rule 34 in responding to the requests for production.

## SUMMARY OF THE ARGUMENT

1.      Rule 33 provides that the Defendants are required to answer all interrogatories which may be relevant or may lead to relevant material.  The Defendants have virtually objected to every interrogatory which plaintiffs have proposed.  Defendants' reliance upon Rule 33(d) is misplaced.  Neither can Defendants refuse to answer interrogatories by suggesting that Plaintiffs take depositions to ascertain their answers.  See generally *Moore's Federal Practice 3rd Ed.* §33.105 and *Wright and Miller* §2178.  The Defendants have, as a trial tactic, deliberately refused to answer any interrogatories.

2.      The Defendants have not filed any document indicating their compliance with the requests for production as required by Rule 34.  "The party upon whom the request is served shall serve a written response within 30 days after the service of the request…The response shall state that inspection and related activities will be permitted as requested, unless the request is objected to."  Defendants have produced a great deal of documents; however, these documents do not necessarily respond to Plaintiffs' requests for production.

## STATEMENT OF FACTS

Plaintiffs filed interrogatories on September 11, 2007, and September 21, 2007. Plaintiffs' filed requests for production on September 11, 2007.

The Defendants objected to virtually all of the interrogatories. Defendants did not respond to the requests for production as required by Rule 34. Defendants did produce substantial documents to the requests for production; however, Plaintiffs have asserted in their motion that those answers were not complete.

Plaintiffs do not believe it is appropriate to argue the underlying suit which Defendants do on pages 3 through 8 of their brief. Defendants have argued in this motion their position with respect to whether or not the neighborhood in question is a white neighborhood or not, as they did in their prior motion to strike the errata sheet of Mr. Wheatley. The Defendants have also introduced into this case at this time an unverified statement of a David Miller (who was not identified in any of the prior discovery) concerning the condition of the Anderson home. Plaintiffs also suggest that his unverified statement simply continues some of the argument of Defendants, which are disputed by the Plaintiffs. At this stage of the proceedings, the issue is not whether or not Mr. Anderson, Mr. Hogsten's or Mr. Wheatley's version of the facts is correct, but rather whether the information requested in the discovery is relevant or may lead to relevant evidence concerning the claims of the Plaintiffs or defenses of the Defendants and whether the Defendants have complied with Rule 33 and Rule 34. This is not a preliminary motion for summary judgment.

## ARGUMENT

## I.    THE DEFENDANTS HAVE FAILED TO RESPOND TO PLAINTIFFS' INTERROGATORIES AND THE REQUESTS FOR PRODUCTION.

The Defendants, instead of answering the interrogatories, have relied upon Rule 33(d) or depositions, which they suggested be taken by Plaintiffs. Rule 33(d) does, in some instances, provide a party the right to answer some interrogatories by specifically referring to records from which the answer may be derived, as long as the burden to answer is no greater on the plaintiff than the defendant. The burden in this case would be upon the employer to (1) show that the burden is "substantially the same" for Plaintiff's to find the information; and (2) specify the records to be reviewed in detail sufficient to allow Plaintiffs to identify the documents "as readily as" the Defendants could. *Del Campo v. American Corrective Counseling Services, Inc.*, 2007 WL 4287335 (N. Dist. Ca.) In *Moore's Fed. Practice 3d* at §33.105, the authors discuss in detail the circumstances to which the Rule applies. At §33.105(2), for example, *Moore's* states that the application of the option to produce records is limited to business records only. Section 33.105(3) provides that the records must be identified in sufficient detail to permit a party to locate and copy them. In interrogatory answers 1, 2, 3, 4, 8, 14 and 16, there is only a general reference to the loan files or underwriting guidelines. That is also inadequate. This clearly does not meet the obligation to identify records in detail. The Defendants cannot refer to approximately 1,000 pages of documentation and tell the Plaintiff to find the answers. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997). In the answers, there is a reference to the loan files and the underwriting guidelines.

Furthermore, if there is a close look at the interrogatory answers, it is clear that the burden of answering the questions is a greater burden on the Plaintiffs than it would be on the Defendants.  The Defendants have in their control all of the documents.  There is a limited number of individuals who are involved in this case and Defendants are in a much better position to determine who those individuals are.  Plaintiffs were not aware of the inner workings of the Defendants, or even who the ultimate decision makers were.  Interrogatories 1 and 8, for example, request the names of those individuals who had a role in the application approval process of the Plaintiffs and their role.  This is the kind of question which is normally answered by a defendant.  The refusal to answer and the reliance on Rule 33(d) is simply an improper attempt to avoid answering the interrogatories.

The rule also generally requires that in order for this business option to be met, the burden must be at least as great on the Defendants as it would be on the Plaintiffs to discover the information involved.  As indicated, the Defendants in this case were in a far better position to answer the interrogatories than the Plaintiffs.

The Defendants have also refused to answer some interrogatories by suggesting that any information responsive to an interrogatory should be obtained by deposing Mr. Hogsten or some other official.  See, for example, answer to interrogatories 9, 12, 13 and 14.  Neither Rule 33(d), nor any other rule, permits a Defendant to refuse to answer an interrogatory by suggesting that the information can best be obtained through a future deposition.  The Plaintiffs have an absolute right to have those interrogatories answered.  Since those interrogatories can sometimes be used at trial the Defendant may not simply avoid answering interrogatories by suggesting that the information can be obtained in

depositions.    Defendants cannot justify their refusal to answer interrogatories by reference to deposition statements which may be taken <u>after</u> the interrogatories were filed.  See *Moore's Fed. Practice 3d*, §33.105(2) footnote 9.  Answers to interrogatories by referring to other depositions are improper under Rule 33(d) because none of these documents constitutes a business record.  See *In re:  Sabitt/Adler Litig.*, 174 F.R.D. 44, 49 (N.D.N.Y. 1997).

In interrogatory 15, the Defendants have objected to the data concerning the number of applications of African-Americans as irrelevant.  Wachovia objected that it is under no obligation to compile statistics.  At the deposition of Ms. Fazzino, she was questioned about a form which refers to ethnicity and race.  (Wheatley 300).  She stated that all mortgage companies compile this information (race) and it is reported to the federal government in some way, shape or form.  (Fazzino pp. 115-117)  It does appear that there are such documents available and that they could be produced without a great deal of trouble.  These documents are sought in discovery.  Defendants, in their brief, argued that purposeful discrimination may not be proved by statistics.  Plaintiffs, at this time, are not introducing documents which they have not even seen into evidence.  They are simply trying to obtain the documents to determine what, if any, relevance they are in the documents.  Intentional discrimination can be proved by circumstantial and direct evidence.  *Sheridan v. C. I. DuPont de Nemours*, 100 F.3d 1061, 1071 (3rd Cir. 1996).  The information which Plaintiffs are seeking may lead to information which may be admissible at trial.

The Defendants, to date, have produced documents entitled "Wachovia 000 through 294," WILK001 through 313," and "WHEATLEY001 through 403.  Despite the

production of those documents, other information which has been requested still has not been produced.  Plaintiffs learned at the deposition of Ms. Fazzino, for example, that most of the communication between her and Mr. Hogsten were by email (Fazzino p. 71).  Counsel's recollection is that only one email was produced.  (Wheatley 301).  Request #8 would clearly include these emails.  Because Defendants have not specifically answered the Plaintiffs' requests, it is difficult to determine how complete the Defendants answers really are.  On its face, it appears to Plaintiffs that the Defendants only chose to provide what it wished to and refused to produce any information it chose not to.  The only request that appears to be completely met is request #12.  That request was not completely met until after the deposition of Wheatley.

## CONCLUSION

Plaintiffs propounded 15 interrogatories. The Defendants objected to all of them. The Defendants' reference to Rule 33(e) and Defendants' suggestion that the information could be obtained by taking the deposition pursuant to Rule 30(b)(6) is a clear flagrant violation of the rules. The only reasonable conclusion of the Defendants' objections is that for tactical reasons they simply were not going to answer any interrogatories. Because of Defendants' refusal to answer the interrogatories, Plaintiffs were put in a position to choose either to postpone the deposition of Mr. Hogsten, or going forward without the information to which they were entitled. Plaintiffs are still entitled to answers to interrogatories signed by a corporate representative of the Defendants. Plaintiffs are prepared to address with the Court each interrogatory and the Defendants responses. On the other hand, Plaintiffs would suggest that a review of all of the answers of the Defendants make clear that the Defendants were of a mind not to comply with Rule 33. The Plaintiffs would request that the Defendants answer the interrogatories as required by the Rule without any further objections or references to Rule 33(d) or deposition responses. See Rule 33(b)(4).

Plaintiffs have also filed 12 requests for production. Rule 34 clearly requires the Defendants to answer in writing those requests and object to any information that it believes is not relevant. That was simply not done and Defendants have waived any objections which it might have. The Court should order the Defendants to supply a written statement indicating how it is responding and answering the requested information.

8

Rule 37 also provides for an award of reasonable attorney's fees. The Defendants' responses (or lack thereof) are clearly in violation of Rule 33 and Rule 34. There were, in fact, virtually no answers to the interrogatories and there was no response at al to the requests for production. An award of attorney's fees is appropriate in this case.

GRADY & HAMPTON, LLC

_____/S/_____John S. Grady_____
John S. Grady (I.D. #009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*

DATED:        December 28, 2007

Westlaw.

Slip Copy

Slip Copy, 2007 WL 4287335 (N.D.Cal.)
(Cite as: Slip Copy)

Del Campo v. American Corrective Counseling
Services, Inc.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
Elena DEL CAMPO et al., Plaintiffs,
v.
AMERICAN CORRECTIVE COUNSELING
SERVICES, INC. et al., Defendants.
No. C-01-21151 JW (PVT).

Dec. 5, 2007.

Lester A. Perry, Salt Lake City, UT, Paul Arons,
Law Office of Paul Arons, Friday Harbor, WA,
Ronald Wilcox, Attorney at Law, San Jose, CA, O.
Randolph Bragg, Horwitz, Horwitz & Associates,
Chicago, IL, for Plaintiffs.
Charles D. Jenkins, Dan D. Kim, Charles Edward
Perkins, Jenkins Goodman Neuman & Hamilton
LLP, San Francisco, CA, David L. Hartsell,
McGuirewoods LLP, Chicago, IL, Timothy P. Irving
, Ross, Dixon & Bell, San Diego, CA, for
Defendants.

**ORDER RE: MOTION TO COMPEL
DISCOVERY AND ORDER GRANTING
MOTIONS FOR LEAVE TO FILE EXCESS
PAGES FOR MOTION AND REPLY BRIEF**
PATRICIA V. TRUMBULL, United States
Magistrate Judge.

**I. INTRODUCTION AND FACTUAL
BACKGROUND**

*1 Plaintiffs assert in this class action complaint
that private entity Defendant American Corrective
Counseling Services ("ACCS"), violates the Fair
Debt Collection Practices Act, 15 U.S.C. §§ 1692 et
seq. ("FDCPA") by operating a Bad Check
Restitution Program in connection with the District

Attorney.[FN1] Plaintiffs also sued District Attorney
George Kennedy, but the trial court dismissed all
claims against him. Plaintiffs allege that ACCS
unlawfully threatens to prosecute program
participants and attempts to collect fees not allowed
under the statute. ACCS was the umbrella
corporation for allegedly independent companies:
ACCS Administration Inc. ("Admin"), Fulfillment
Unlimited, Inc. ("FUI"), and Fundamental
Performance Strategies ("FPS"). In November of
2004, ACCS was sold and the other companies
became inactive. Plaintiffs have also sued Admin,
FUI, FPS, and various individuals including Don
Mealing, President of ACCS, and Lynn Hasney,
Vice President of ACCS and President of Admin.

> FN1. The holding of this court is limited to
> the facts and the particular circumstances
> underlying the present motion.

This case was stayed in October of 2002, pending a
global settlement. In September of 2005, after the
global settlement was disapproved, the stay was
lifted.

On July 10, 2007, Plaintiffs filed a Motion to
remove all confidentiality designations made by
ACCS. On November 6, 2007, the Court granted
the Motion to remove all confidentiality
designations, granted the Motion to adopt a
discovery plan and granted in part the Motion for
sanctions. On November 5, 2007, Plaintiffs filed the
motion presently before the court, to compel further
responses to thirty-five requests for production of
documents and thirty interrogatories. Plaintiffs also
filed requests for leave to file excess pages for the
memorandum and reply briefs in support of the
motion. Due to the number of discovery matters
involved in the motion, the court Grants the
Motions for leave to file excess pages.

Five issues are central to the disputes between the
parties over the discovery involved: 1) the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 4287335 (N.D.Cal.)
(Cite as: Slip Copy)

Page 2

timeliness of the motion; 2) the propriety of various issue-related discovery; 3) the organization of discovery responses; 4) the use of Rule 33(d) in responding to interrogatories; and 5) ACCS' responsibilities to provide a privilege log for any documents withheld under claim of privilege. The following order provides substantial guidance on these five central issues. It is the hope of the Court that, with the following guidance, the parties will be able to resolve the remaining discovery disputes. Accordingly, the December 11, 2007 hearing date is CONTINUED to January 29, 2008 and the parties are Ordered to meet and confer to resolve this discovery dispute in light of the guidance provided.

## II. DISCUSSION

### A. Timeliness of Motion

ACCS has objected that this motion to compel is improper because it is untimely and because Plaintiffs failed to adequately meet and confer. Plaintiffs propounded the discovery at issue in June of 2006. (Exhs. 1 and 2 to Motion). ACCS provided initial responses in August of 2006. After some meet and confer and extensions of time to respond, ACCS provided supplemental responses in December of 2006. (Exhs. 3 and 4 to Motion.) ACCS counsel, Mr. Jenkins, explains that February and March of 2007 were spent on appellate issues and that ACCS was expecting a stay of the litigation until after the appeal process was completed. (Jenkins Decl. in opp. to mtn for fees at ¶ 12.) The stay of proceedings pending appellate proceedings was denied in September of 2007. (Docket # 396). Although Plaintiffs had not engaged in any substantive meet and confer since February of 2007, the procedural posture of this case renders the delay reasonable and the delay does not constitute a waiver of the right to move to compel.

### B. Issues Open for Discovery

1. *Class Certification and Alter-Ego Discovery*

*2 The parties dispute whether discovery of class certification and alter-ego liability is appropriate at this time. At a Case Management Conference on October 30, 2007, Judge Ware directed the parties to proceed with a summary judgment on the issue of liability before adjudication of the issue of class certification. Judge Ware directed the parties to filed cross-motions for summary judgment on liability, to be heard on March 5, 2008. Plaintiffs contend that Judge Ware resisted ACCS' efforts to restrict discovery on these issues. (Arons Decl. ¶ 2.) ACCS contends that Judge Ware expressed no opinion on the issues and merely stated that discovery issues are referred to the undersigned Magistrate Judge. (Jenkins Decl. in opp. to mtn. to compel discovery at ¶¶ 7-8.)

Judge Ware referred all discovery disputes to the undersigned Magistrate Judge. There has been no Order limiting or bifurcating discovery in this case. Moreover, if discovery into these issues is delayed, it will not start for at least six months. In light of the delay already suffered in this case, this court finds it appropriate to proceed with discovery on the issues of class certification and alter-ego liability. Nonetheless, the liability summary judgment motions scheduled for March of 2008 are not irrelevant to the question of undue burden. ACCS may assert the upcoming summary judgment motions on liability as a factor that makes the burden of responding to specific discovery requests undue. ACCS is cautioned, however, that to properly resist discovery on the basis of undue burden it must meet the burden under Federal Rule of Civil Procedure 26(c), governing the issuance of protective orders. Rule 26 empowers the Court to " make any order which justice requires to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(7). The burden of proof is on the moving party to make a clear showing of particular and specific need for the protective order. *See Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975). ACCS if further cautioned that an insufficient assertion of undue burden will subject it to further sanctions.

2. *Issues Added in Amended Consolidated*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 4287335 (N.D.Cal.)
**(Cite as: Slip Copy)**

*Complaint*

The discovery at issue in this motion was propounded in 2006, prior to Plaintiff's filing of the Amended Consolidated Complaint now governing this litigation. ACCS contends that its responses were reasonable in light of the pleadings on file at the time discovery was propounded. Without addressing whether this contention is accurate, the court notes that Rule 26(e) imposes on every party to duty to "seasonably to amend" discovery responses that are incomplete or incorrect. Fed.R.Civ.P. 26(e). To the extent that changes in the pleadings are responsible for ACCS responses being inadequate, it is time for ACCS "seasonably to amend" those responses.

### C. Organization of Discovery Responses

Plaintiffs contend that ACCS has not met its obligations under Rule 34 to produce documents either as kept in the ordinary course of business or organized to correspond with the document requests. ACCS argues that it has produced the documents as kept in the ordinary course of business. Brett Stohlton, Chief Operating Officer of ACCS, declares that the documents previously produced in another litigation were produced in the same manner as previously produced and that the documents produced for the first time "were produced in the same manner that those documents were kept in the ordinary course of ACCS' business. "(Stohlton Decl. ¶¶ 5-6.) Absent any evidence that this declaration is untrue, ACCS has complied with its obligations under Rule 34.[FN2]

> FN2. As ACCS notes, Plaintiffs have already been compensated for the effort of indexing the documents produced in the form of sanctions ordered on November 6, 2007.

### D. Use of Rule 33(d) in Responding to Interrogatories

*3 Plaintiffs object to ACCS' attempt to answer certain interrogatories by a general reference to documents produced. Rule 33 provides for response to interrogatories by reference to documents only in a very specific manner:

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed.R.Civ.P. 33(d). ACCS' responses are not in compliance with this rule. If ACCS intends to use the Rule 33(d) process, it must: 1) show that the burden is "substantially the same" for Plaintiffs to find the information; and 2) specify the records to be reviewed in detail sufficient to allow Plaintiffs to identify the documents "as readily as" ACCS could. ACCS is cautioned that an improper use of Rule 33(d) will result in sanctions.

### E. Privilege Logs

Plaintiffs contend that ACCS has waived any objections as to privilege by failing to produce a privilege log in a timely manner. Rule 26(b)(5) requires a party to claim privilege expressly and " describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."Additionally, the advisory comments to the 1993 Amendments to Rule 26(b)(5) state:

A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 4

Slip Copy, 2007 WL 4287335 (N.D.Cal.)
**(Cite as: Slip Copy)**

sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

Fed.R.Civ.P. 26(b)(5)1993 Advisory committee notes. Thus, failure to produce an adequate privilege log can amount to a waiver of the privileges asserted. *See Cunningham v. Connecticut Mut. Life Ins.,* 845 F.Supp. 1403 (S.D.Cal.1994).

ACCS argues that certain requests are so poorly drafted that it would be unfair to require ACCS to prepare a privilege log. ACCS cites Request number 12, seeking summaries or reports quantifying ACCS' activity in collecting checks, such as number of letters mailed and amount of money recovered. ACCS argues that this request could be construed so broadly as to require all attorney-client reports because the request states that it includes "reports generated for ACCS' internal use, and reports generated for any other purpose."There is nothing objectionable in this request. ACCS has a duty to investigate whether it has responsive documents. If it has reports about ACCS' business practices for which it claims attorney-client privilege, it must support that claim with a privilege log.

*4 In contrast, Request number 13, which seeks all documents related to collection efforts, is impermissibly broad. ACCS' argument that this request calls for all attorney-client privileged documents because all privileged documents in this litigation could fit within the definition of "related to collection efforts." It would be an unfair and undue burden to force ACCS to create a privilege log containing every letter between attorney and client. Accordingly, this Request is narrowed to exclude letters between ACCS and its counsel of record. Similarly, Request number 31, seeking any analysis of the impact of ACCS' collection efforts on the criminal justice system, is narrowed to exclude work product relating to ACCS' public policy arguments.

The Court declines to find a waiver due to the current failure to produce a privilege log. However, ACCS is now on notice of the circumstances for which a privilege log must be produced. Failure to timely produce a privilege log as outlined in this order may result in a waiver of any privileges not properly asserted.

A proper assertion of privilege should contain the following for each document, communication or information withheld:
1. the date; 2. author; 3. primary addressee; 4. secondary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document); 5. type of document or nature of the communication; 6. Client (i.e., party asserting privilege); 7. Attorneys; 8. Subject matter of document or privileged communication; 9. Purpose of document or privileged communication (i.e., legal claim for privilege); and 10. Whether the document or communication is work product or attorney-client privilege.

*Miller v. Pancucci,* 141 F.R.D. 292, 302 (C.D.Cal.1992).

### III. CONCLUSION

For the foregoing reasons, It Is Hereby Ordered that:
1. Plaintiffs' Motions for leave to file excess pages are GRANTED;
2. The December 11, 2007 hearing date for Plaintiffs' Motion to Compel is CONTINUED to January 29, 2008;
3. The parties shall take the guidance in this order and meet and confer in a genuine effort to resolve the remaining disputes without resort to further court intervention; and
4. The parties shall file a joint statement of the issues remaining in dispute, if any, no later than January 8, 2008 and shall file separate briefs in support of their respective positions no later than January 15, 2008.

IT IS SO ORDERED.

N.D.Cal.,2007.
Del Campo v. American Corrective Counseling Services, Inc.
Slip Copy, 2007 WL 4287335 (N.D.Cal.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 4287335 (N.D.Cal.)
**(Cite as: Slip Copy)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Anderson v. Wachovia Mortgage

12/6/2007                                                      Colleen Fazzino

---

Page 70

1    Q  All right.  Turn to WHEAT 301.
2        (Off the record briefly.)
3        MR. FOGDALL:  She has it in front of her.
4    BY MR. GRADY:
5    Q  Can you tell me what was going on at the time you
6    wrote this e-mail?
7    A  I'm not sure which Wheatley file this e-mail
8    pertains to, but I'm basically asking JD to change the
9    product so I can approve the loan.
10   Q  This is dated 7/20/04.  Does that help you?
11   A  No.
12   Q  And the product still has not changed.  The
13   product was the original financing, which we talked about
14   in the beginning of this deposition; is that correct?
15   A  I had a hard time hearing you.
16   Q  The product that we're referring to --
17   A  Yeah.
18   Q  -- is that the product that we were discussing at
19   the beginning of the deposition?
20   A  Yes, the no ratio.
21   Q  No ratio, or there was another one also being
22   discussed at the beginning.
23   A  And we counteroffered to a stated.
24   Q  Why did you have to get this off your desk?
25   A  Well, because I can't just hold files.

---

Page 71

1    Q  You need something to be done.  Okay.
2        Do you recall what JD's reaction was to this?
3    A  Without reviewing the file, no.
4    Q  Do you recall if you were getting any other
5    e-mails from JD?
6    A  I don't recall any.
7    Q  Did you normally communicate with him by
8    telephone or by e-mail?
9    A  E-mail.
10   Q  You talked about a concern having a CPA confirm
11   employment.  Is there any other way that you're permitted
12   to confirm employment other than a CPA?
13   A  I also needed the CPA to help me with the asset
14   situation.
15   Q  There were two issues, one was the employment,
16   and the other one was the asset?
17   A  Right.
18   Q  Let's talk about the employment.  Could you
19   verify employment with some assistance other than a CPA?
20   A  Depending on the product, in some cases
21   possibly.
22   Q  How about in this case?
23   A  I'd have to review the file again.
24   Q  Did you make any specific conditions about the
25   repair of the Wheatley house by -- what I mean is, any

---

Page 72

1    certain work had to be done or -- I guess I'm trying to ask
2    you about what exactly Wheatley had to do to meet your
3    concerns about the house.
4        MR. FOGDALL:  Objection to the form of the
5    question.  There's been no testimony relating to
6    conditions or work that Mr. Wheatley had to do to meet
7    Ms. Fazzino's approval.  If you can answer the question,
8    go ahead and answer it.
9    A  Okay.  Can you ask the question again?  I
10   apologize.
11   BY MR. GRADY:
12   Q  Okay.  In your testimony, you indicated that, at
13   least early on, one of the reasons for turning down
14   Wheatley was because of the need for repairs as pointed out
15   in the appraisal?
16       MR. FOGDALL:  Objection to the form of
17   the --
18   BY MR. GRADY:
19   Q  Do you recall that?
20       MR. FOGDALL:  Objection to the form of the
21   question, mischaracterizes the witness' prior testimony.
22   Go ahead and answer the question if you can.
23   A  Are you referring to the first loan?
24   BY MR. GRADY:
25   Q  Yes.

---

Page 73

1    A  The first loan was declined due to property.
2    Q  Right.  And then my question is:  Did you as the
3    underwriter ever make any specific and direct directions to
4    anybody as to any repairs that Wheatley had to do?
5        MR. FOGDALL:  Objection to the form of the
6    question.  Go ahead and answer it if you can.
7    A  I don't remember asking anyone to make any
8    repairs, no.  That's not something that I would do.
9    BY MR. GRADY:
10   Q  Is it your testimony that at the beginning to the
11   end between August 6 and August 13, you didn't know if the
12   repairs had been made on Wheatley's house or not?
13       MR. FOGDALL:  Objection to the form of the
14   question.  Go ahead and answer.
15   A  Without -- again, without reviewing the file, I
16   was not made aware that all of the repairs were completed,
17   and I don't remember if any were.  I have nothing in front
18   of me to review.
19       MR. GRADY:  All right.  I think that's all we
20   have.  I'd like to thank you for your time and patience.
21   Your counsel has a right to ask you some questions now if
22   he wishes.
23       MR. FOGDALL:  Yes, I will ask some
24   questions.  Why don't we take a five-minute break, and
25   then we'll do that.

---

Brandon Smith Reporting Service, LLC
Brandon Smith Reporting

Anderson v. Wachovia Mortgage

12/6/2007                                          Colleen Fazzino

Page 114

1  we've had a lot of exhibits marked, there's a little
2  problem with being 200 miles away. Can we at some point
3  in time make a copy of this document and mark it as the
4  next exhibit or just -- unless you have suggestions, but
5  I'd like to get some of these exhibits marked. Can we do
6  that?
7          MR. FOGDALL: Yes. Do you --
8          MR. GRADY: We can talk about this, or I
9  can just send exhibits to the court reporter, whichever
10  way you want to do it. I just want to make sure before we
11  leave this whole subject of the exhibits, we have some
12  understanding of how we're operating. I don't mind just
13  sending them to the court reporter, but, I like I say, we
14  have to kind of come to some closure on what we're going
15  to do with the rest of the exhibits.
16          MR. FOGDALL: You're right. I don't think
17  at this point we're going to be able to go back through as
18  we sit here and identify all the documents that you talked
19  about with the witness when you were questioning her
20  unless you made a list of them. Then we can refer to that
21  and collect them. I tried to do that as you were going
22  along, but I confess I didn't do a 100-percent complete
23  job of that. So I don't know that I can reconstruct all
24  the documents that you showed her. Given that, I'm
25  comfortable with, after you get the transcript, going

Page 115

1  through it and identifying the documents that you
2  discussed with her and then having those marked after the
3  fact.
4          MR. GRADY: All right. That's fine. Let's
5  keep going.
6          MR. FOGDALL: Mr. Grady, we'll just number
7  them sequentially, then, with the exhibits that we marked
8  just now when I was questioning her.
9          MR. GRADY: You finished with number 19.
10  I'll start with number 20. Okay?
11          MR. FOGDALL: Okay.
12  BY MR. GRADY:
13      Q   You have WHEAT 300 in front of you?
14      A   Yes.
15      Q   This document I guess starting with line 13 and
16  14 refers to ethnicity and race?
17      A   Yes.
18      Q   Do you see that?
19      A   Yes.
20      Q   And this is Mr. Wheatley's document, I believe.
21  And it's has -- applicant race has a 3. Do you see that?
22      A   Yes.
23      Q   What does 3 stand for?
24      A   I have to be honest with you, the inputting of
25  the information on this form was the responsibility of the

Page 116

1  processor, so I'd have to go back and look it up. This was
2  done on a different system.
3      Q   Whose signature is down there?
4      A   That is my signature.
5      Q   You just signed off on this?
6      A   I did.
7      Q   Did you know when you were processing this whole
8  thing that Mr. Wheatley was black?
9      A   No, I did not.
10      Q   Or that Mr. Anderson was black?
11      A   No.
12      Q   So you had no idea?
13      A   It's really not relevant.
14      Q   I'm just asking you if you knew.
15      A   No, I did not.
16      Q   Okay. But when you signed off on this, did you
17  know what the 3 meant, the race?
18      A   To be honest with you, no. I never really
19  paid -- as an underwriter, you're required to know so many
20  guidelines and review so many documents, as you can see
21  with all these exhibits, that something like that just
22  really didn't, I didn't have to worry about it.
23      Q   Do you know why this requirement is on the form?
24      A   I'm sorry?
25          MR. FOGDALL: Objection.

Page 117

1  BY MR. GRADY:
2      Q   Do you know why the form asks for race?
3          MR. FOGDALL: Objection to form and
4  foundation. Go ahead and answer if you can.
5      A   I know that all mortgage companies do compile
6  this information, and it is reported to the federal
7  government in some way, shape or form.
8      Q   Do you know if there were documents prepared that
9  go out to the federal government?
10          MR. FOGDALL: Objection to the form of the
11  question. If you understand it, go ahead and try to
12  answer it.
13      A   That is not done in this building, so I don't
14  know how they do it or when they do it.
15  BY MR. GRADY:
16      Q   Let me go back to some of your testimony. You
17  talked about -- you talked about the appraisal of
18  Mr. Wheatley's property. Do you recall that?
19      A   Yes.
20      Q   And you testified that there were several
21  concerns that you saw in the appraisal?
22      A   Correct.
23      Q   Among others, there might have been the roof,
24  asbestos and heating on the second floor?
25      A   The lack of heat on the second floor.

6995009
WHEATLEY

# HOME MORTGAGE DISCLOSURE (HMDA)
## Validation Worksheet

The **HMDA Validation Worksheet** prints at the time "Final Action" is taken on the loan application. For closed loans, complete this form at time of funding authorization. For all other loans, complete this form when the Notice of Action Taken is prepared. Review this worksheet, make any corrections in MLS to ensure accurate HMDA reporting, and certify this task has been completed by signing this form. Accuracy of our HMDA Loan Application Register is extremely important. Inaccurate reporting will subject Wachovia to substantial fines and penalties and reputation risk.

1. __6995009__    **Loan ID/Number**

2. __6060 / 0805983__    **Company/Sub -** (should be 6060)/**Branch RC**

3. __06/22/04__    **Date Application Received.** This is the date WMC (via LO, wholesale office or exclusive agent or bank employee) received and agreed to accept the loan application for processing or actually began loan processing. Processing can begin in the absence of fees paid; complete information such as account numbers, etc; all signatures on the application; receipt of processing documents; property address, etc. Do not use a "dummy" date, even if the interest rate is locked prior to receipt of the application. This date must match the "date application received" on the 1003 Application. For Wholesale Loans, this date must match the "date received" by WMC. For Correspondent Loan Purchases, the date application received is suppressed ("N/A").

4. __Y__    **Has Property Been Selected -** Y/N? If Y, Property Address must be valid and complete for proper geocoding. No dummy address!! Enter N if property has not yet been selected, or if applicant wishes to be pre-qualified or pre-approved ("credit-only" application). Pre-quals are excluded from HMDA reporting. If N, street address should be "NA." (No dummy street or TBD, etc.) Enter only city and state.    __DOVER, DE__

5. __1__    **Loan Type.**   1 = Conventional    3 = VA
                       2 = FHA           4 = USDA/Rural Housing Service

6. __1__    **Loan Purpose.**   1 = Purchase      2 = Home Improvement
                         3 = Refinancing

7. __FNSI30FEX__    **Loan Program I.D. -** Lot loans and Reverse Mortgages are excluded from HMDA reporting.

8. __1__    **Occupancy -**   1 = Owner Occupied/principal dwelling      2 = Not O/Occ(2nd and Investment)
                       3 = Multifamily (Not Applicable)

9. __240,000.00__    **Loan Amount.** For closed loans, this should be the Note amount. For loans denied, withdrawn, incomplete, or counteroffer refused, this should be the *requested* loan amount.

10. __3__    **Final Action Taken.**   1 = Loan Originated/Closed (WMC made final credit decision)
2 = Approved, but not accepted. Loan received *final* approval, no contingencies. If borrower cannot meet underwriting contingencies at closing, report as denied. (Don't forget the second review and FLAT). Use this code in case of rescission.
3 = Denied - File contains second review and FLAT
4 = Withdrawn (Borrower took action) Do not use this code if file indicates underwriter denial. Code file as withdrawn only if borrower took action before lender made a final credit decision.
5 = Incomplete (Lender took action) 6 = Purchased-whole loan purchase, Delegated Underwriting = Y

11. __N__    **Delegated Underwriting** Y/N? Enter Y only if WMC has given delegated underwriting authority on this particular loan transaction to an independent Third Party Originator (e.g. Correspondent). Do not enter Y for agents of WMC such as our affiliates and PMI contract underwriters.

12. __07/22/04__    **Date of Final Action**
1. Loan Originated. This should be the Note Date, except on Correspondent (whole loans), it should be the Funds Cleared Date.
2. Approved, but not accepted - Date in conversation log that customer rejected loan
3. Denied - Date on Notice of Action Taken or "Accept By" date for counteroffers.
4. Withdrawn - Date in conversation log that customer withdrew
5. Incomplete - Date on Notice of Action Taken notice sent to customer (after first deadline passed).
6. Purchased - Funds Cleared Date

13. __2__    **Applicant Ethnicity ***
     __2__    **Co-Applicant Ethnicity ***

14. __3__    **Applicant Race ***
     __3__    **Co-Applicant Race ***

15. __1__    **Applicant Sex ***
     __2__    **Co-Applicant Sex ***

> * Required if face-to-face interview either by applicant(s) or loan originator/broker observation. Information must be requested on telephone applications. If no co-applicant, enter N/A.

16. __N__    Is income being used to qualify applicant? (Y/N). Enter N only if income is not considered in making the credit decision, e.g. streamline refinance. Enter Y if income is considered, debt/income ratios are calculated, even if income is *not verified*, e.g. "stated income."

17. __18,333.00__    **Gross Monthly Income -** All income *relied upon* to make the credit decision. (Must match underwriting worksheets). If application is withdrawn or incomplete, income should match verified income (if any) or reported income on application.

18. __4__    **Reasons for denial.** Use standard reasons on Notice of Action Taken and HMDAVAL screen to ensure proper HMDA coding and mapping. (No free form language)

19. _____    **3B code used.** WMC brokered the loan to another lender who made the final credit decision to approve the loan. These records are excluded from WMC's HMDA Loan Application Register (LAR).

20. _____    **APR from final TIL (required for closed loans)**

I have personally reviewed the HMDA Validation Worksheet and information in the loan origination system against the actual (hard copy) information in the file and certify to its accuracy and completeness.

Date Reviewed:    __7/22/04__

Validated by: _____
Signature _____
Print name: _____ (F922100)

**EXHIBIT**
26
Fazzino 12-6-07

  Colleen Fazzino
07/20/2004 08:14 AM

To:     James Hogsten/FUMC/USR/FTU
cc:     Maria Belo/FUMC/USR/FTU, Lin Lennon/FUMC/USR/FTU

Subject:  Wheatley Product

JD
This product still has not chg'd.
I cannot continue to hold the file - pls contact Secondary as soon as you can & get this chg'd.
I absolutely have to get this off my desk. It's coming up on my reports and I am having to explain daily
why I still have it.

Call me if there is anything I can do to help
Thanks
Col

EXHIBIT
25
Fazzino 12-6-07

WHEAT000301

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of December, 2007, a true and correct copy

of the **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT THEIR MOTION**

**TO COMPEL INTERROGATORIES AND REQUESTS FOR PRODUCTION** was

served via CM/ECF Pacer upon the following:

Stephen A. Fogdall, Esquire
Schnader, Harrison, Segal &
Lewis, LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286

Michael J. Barrie, Esquire
Schnader, Harrison, Segal &  Lewis,
LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE  19801


GRADY & HAMPTON, LLC

_____/S/____John S. Grady_____
John S. Grady (I.D. 009)
6 North Bradford St.
Dover, DE 19904
(302) 678-1265
*Attorneys for Plaintiffs*