**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES**

---

Wachovia Mortgage Corporation and Wachovia Corporation (collectively "Wachovia"), for their answer and affirmative defenses to plaintiffs' amended complaint, state as follows:

1.      Admitted.

2.      Denied.  By way of further answer, the Andersons and the Wheatleys have had accounts at Wachovia Bank, N.A., which is not a party to this action and had no involvement with the events alleged.  Wachovia Mortgage Corporation is a subsidiary of Wachovia Bank, N.A.

3.      Wachovia denies the allegation that plaintiffs' previous mortgages from Wachovia were "in predominantly minority or racially-mixed neighborhoods."  This description

is undefined and objectionable.  Wachovia admits that the Andersons and the Wheatleys have previously obtained mortgage loans from Wachovia Mortgage Corporation.

4.      Wachovia denies the allegation that the properties plaintiffs sought to purchase were "in a white neighborhood."  This description is undefined and objectionable.  The remaining allegations in this paragraph are admitted.

5.      Denied.  Plaintiffs never disclosed to Wachovia that they intended to purchase these three homes as investment properties, not as residential properties.  Plaintiffs were able to obtain lower interest rates for their loans than they would have been eligible for had they disclosed that these were investment properties.  Moreover, plaintiffs never disclosed to Wachovia that they formed a limited liability company prior to obtaining their loans and that they intended to transfer the properties to this company.  By failing to disclose these facts, plaintiffs breached the covenant of good faith and fair dealing.  Later, two of the plaintiff couples (the Andersons and the Wilkinses) did transfer their properties to this limited liability company, thereby breaching their mortgage contracts with Wachovia.

6.      Wachovia admits that the homes were unoccupied before plaintiffs purchased them.  Wachovia denies the remaining allegations in this paragraph.  By way of further answer, the interior of the home the Andersons sought to purchase had suffered severe damage as a result of a broken water pipe.  The home the Wheatleys sought to purchase likewise was not in livable condition.  The home the Wilkins sought to purchase was not in need of any repairs affecting the livability of the property.

7.      Wachovia admits that Anderson told Hogsten that all three homes had to be purchased.  Wachovia is without knowledge or information sufficient to form a belief as to

truth of the allegation that the seller of the properties was planning to invest in a 1031 exchange and that it was important for him that all three properties be sold at the same time.  The remaining allegations in this paragraph are denied..

      8.    Admitted that Hogsten was aware that plaintiffs intended to take title separately to their respective properties.  The remaining allegations in this paragraph are denied.

      9.    Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

      10.    Admitted that the Andersons and the Wheatleys had accounts at Wachovia Bank, N.A.  The remaining allegations in this paragraph are denied.  By way of further answer, Wachovia Mortgage Corporation is a subsidiary of Wachovia Bank, N.A.

      11.    Denied.

      12.    Admitted.

      13.    Admitted that the Andersons' property was scheduled to be appraised in July 2004 by a licensed independent appraiser.  Wachovia denies that the appraiser was sent or assigned by Hogsten.

      14.    Wachovia admits that Hogsten and the appraiser went to lunch.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

      15.    Denied.  The property could not be appraised because it was not habitable. On information and belief, the property at that time had extensive mold, no functional toilets or

bath, no heating system, much of the drywall was missing, wiring was exposed, and ventilation ducts were dangling from the ceiling.

16.     Denied.

17.     Denied.  Hogsten properly and correctly explained that the property could only be appraised once the needed repairs were made and the property was restored to a habitable condition.

18.     Denied.

19.     Denied.  By way of further answer, the underwriter Ms. Fazzino was not aware that the interior of the home had been severely damaged by the broken water pipe because the property was not appraised until after the damage had been repaired.  Thus, the appraisal as submitted to the underwriter did not reflect this damage.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied as stated.  The Andersons received a commitment letter noting a "commitment date" of July 14, 2004.  The commitment letter informed the Andersons that they would have to meet certain conditions in order to obtain a loan, including a satisfactory appraisal of the property supporting a value of $266,666.00.

24.    Wachovia admits that after the needed repairs were made, *see supra* ¶ 15, the Andersons' property was appraised at $267,000.00.  The appraisal was signed by the appraiser on August 5, 2004.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Admitted that Hogsten met with the Wilkinses on or about July 2, 2004. The remaining allegations in the paragraph are denied.

29.    Denied.

30    Admitted only to the extent that Hogsten informed Anderson that an appraiser had suggested to Hogsten that the property might be more valuable as a commercial property.  The remaining allegations of this paragraph are denied.

31.    Admitted.

32.    The allegation in the first sentence of this paragraph is admitted.  By way of further answer, sourcing funds is a standard industry underwriting practice.  The remaining allegations in this paragraph are denied.

33.    Wachovia admits that the Anderson property was appraised at $267,000.00 in August 2004.  The appraisal was signed by the appraiser on August 5, 2004.

34.     Admitted that before the Andersons' property could be appraised, and a loan issued, the property required significant repairs.  *See supra* ¶ 15.  The remaining allegations in this paragraph are denied.

35.     Admitted.

36.     Denied.    By way of further answer, the appraisal identified serious concerns affecting the livability of the Wheatley property.  In particular, there was no heat on the second floor, a possible leak in the roof, and what appeared to be asbestos insulation on the pipes in the basement.

37.     Denied.  By way of further answer, Hogsten has no authority to "lift" bank requirements.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

43.     Denied.

44.    Wachovia admits that the appraiser made a final inspection of the Wheatley property on August 4, 2005.  The appraiser described the property as being in "average overall condition."  The remaining allegations in this paragraph are denied.

45.    Admitted to the extent that the sales of all three of plaintiffs' properties closed in August 2004.

46.    Admitted that the sales of the Andersons' and Wilkinses' properties closed on August 6, 2004.  However, the Wheatleys' loan had not yet been approved, because the Wheatleys did not meet the underwriting requirements of the loan program for which they had applied

47.    Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  By way of further answer, the sales of all three properties did close and plaintiffs did not lose their $40,000.00 deposit.

48.    Admitted the Wheatleys appropriately were required to submit a letter from a contractor certifying that the roof of the house did not leak (a potential problem identified in the appraisal, *see supra* ¶ 36).

49.    Denied.

50.    Denied.

51.    Denied.

52.    Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

7

53.     Denied.  By way of further answer, the Wheatleys did not meet the underwriting requirements for the loan for which they had applied.  Nevertheless, because Wachovia considered the Wheatleys good customers, it offered to make an "exception" loan (meaning a loan that does not comply with applicable underwriting guidelines).  This exception loan had to made at an 80% loan-to-value ratio rather than the 90% loan-to-value ratio for which the Wheatleys had initially applied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

58.      Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

59.      Admitted that the Wheatleys did make a 20% down payment per their alternative loan program.  The remaining allegations in this paragraph are denied.

60.     Denied.  The Wheatleys already were well aware by August 12, 2004, that they were required to make a 20% down payment as a part of their alternative loan program.

61.     Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

62.      Admitted.

63.     Denied.  The Wheatleys already were aware that they were required to make a 20% down payment as a part of their alternative loan program.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

## COUNT ONE

68.     Wachovia incorporates the foregoing responses to paragraphs 1 through 67 as if fully set forth herein.

69.     Wachovia admits that the Andersons paid an application fee in June 2004. The remaining allegations in this paragraph are legal conclusions to which no response is required.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.  Moreover, the Court's July 18, 2007 Order dismissed this claim.

75.    Denied.  Moreover, the Court's July 18, 2007 Order dismissed plaintiffs' claim for breach of contract.

77.    Denied.

WHEREFORE, Wachovia denies that it is liable to the Andersons for any damages or other relief and hereby demands:  (a) that plaintiffs' complaint be dismissed with prejudice; (b) that judgment be entered in Wachovia's favor and against plaintiffs; and (c)  that Wachovia be awarded its costs, including its attorneys' fees incurred in this action.

## COUNT TWO

78.    Wachovia incorporates the foregoing responses to paragraphs 1 through 77 as if fully set forth herein.

79.    Denied.

80.    Wachovia admits that the Wheatleys paid an application fee in June 2004. The remaining allegations in this paragraph are legal conclusions to which no response is required.

81.    Wachovia admits that in July 2004 the Wheatley property was appraised "as is" at a value of $267,000.00.  However, the appraisal identified serious concerns affecting the livability of the home.

82.    Denied.

83.    Wachovia admits that the Wheatleys' loan application initially was denied due to the condition of the home.  The remaining allegations in this paragraph are denied.

84.     Denied.

85.     Wachovia admits that the Wheatleys reapplied for a loan on August 3, 2004.  The remaining allegations in this paragraph are legal conclusions to which no response is required.

86.     Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

87.     Denied.

88.     Wachovia admits that it could not issue a loan to the Wheatleys on August 6, 2004, because the Wheatleys did not meet the underwriting requirements for their loan.

89.     Denied.  After the final inspection, the appraiser the described the Wheatley property as being in "average overall condition."  Wachovia could not issue a loan to the Wheatleys at a 90% loan-to-value ratio because they did not meet the underwriting requirements for their loan program.

90.     Denied as stated.  Wachovia agreed to issue the Wheatleys an "exception" loan because the Wheatleys did not meet the underwriting guidelines for their loan program. This "exception" loan could only be issued at an 80% loan-to-value ratio.

91.     Denied.  The Wheatleys were well aware before August 12, 2004, that they did not meet the underwriting requirements for the loan program for which they had applied and that if they wanted to obtain a loan it would need to be at an 80% loan-to-value ratio.

92.     Denied.

94.     Denied.

95.     Wachovia denies that any action it allegedly took in this case violated 42 U.S.C. § 1981.  The remaining allegations in this paragraph are legal conclusions to which no response is required.

96.     Denied.  Moreover, the Court's July 18, 2007 Order dismissed this claim.

97.     Denied.  Moreover, the Court's July 18, 2007 Order dismissed plaintiffs' claim for breach of contract.

WHEREFORE, Wachovia denies that it is liable to the Wheatleys for any damages or other relief and hereby demands:  (a) that plaintiffs' complaint be dismissed with prejudice; (b) that judgment be entered in Wachovia's favor and against plaintiffs; and (c) and that Wachovia be awarded its costs, including its attorneys' fees in this action.

## COUNT THREE

98     Wachovia incorporates the foregoing responses to paragraphs 1 through 97 as if fully set forth herein.

99.     The allegations in this paragraph are legal conclusions to which no response is required.

100     Denied.

101.     Wachovia admits that Hogsten met with the Wilkinses on or about July 2, 2004.  The remaining allegations in this paragraph are denied.

102.    Wachovia admits that the Wilkinses paid an application fee.  The remaining allegations in this paragraph are legal conclusions to which no response is required.

103.    Denied.

104.    Denied.

105    Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

106.    Denied.

107    Denied.

108.    Denied.

109    Denied.

110    Denied.

111.    Wachovia has no knowledge or information concerning discussions that allegedly took place between Anderson and the Wilkinses.  The remaining allegations in this paragraph are denied.

112.    Denied.

113    Denied.  Moreover, the Court's July 18, 2007 Order dismissed this claim.

114    Denied.  Moreover, the Court's July 18, 2007 Order dismissed plaintiffs' claim for breach of contract.

WHEREFORE, Wachovia denies that it is liable to the Wilkinses for any damages or other relief and hereby demands:  (a) that plaintiffs' complaint be dismissed with prejudice; (b) that judgment be entered in Wachovia's favor and against plaintiffs; and (c) that Wachovia be awarded its costs, including its attorneys' fees incurred in this action.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

Plaintiffs' claims are barred in whole or in part for failure to state a claim upon which relief can be grated.

### *Second Affirmative Defense*

Plaintiffs' claims under 42 U.S.C. § 1981 are barred by the statute of limitations.

### *Third Affirmative Defense*

Plaintiffs' claims are barred in whole or in part by their own material breaches of contracts they allege they had with Wachovia.

### *Fourth Affirmative Defense*

Plaintiffs' claims are barred in whole or in part by their own breach of the covenant of good faith and fair dealing.

### *Fifth Affirmative Defense*

Plaintiffs' claims are barred in whole or in part because they fraudulently induced Wachovia to enter into the alleged contracts.

### *Sixth Affirmative Defense*

Plaintiffs' claims are barred in whole or in part because they voluntarily accepted every supposedly unreasonable loan condition that Wachovia allegedly imposed.

### *Seventh Affirmative Defense*

Plaintiffs' claims are barred in whole or in part by the doctrine of substituted contracts.

### *Eighth Affirmative Defense*

Plaintiffs' claims are barred in whole on in part by the doctrine of merger.

### *Ninth Affirmative Defense*

Plaintiffs' claims are barred in whole or in part because any injuries they allegedly suffered were not caused by Wachovia.

### *Tenth Affirmative Defense*

Plaintiffs' claims are barred in whole or in part because any injuries they allegedly suffered were caused or aggravated by their own failure to mitigate such injuries.

### *Eleventh Affirmative Defense*

Plaintiffs' claims are barred in whole or in part because Wachovia at all times acted reasonably and in good faith.

### *Twelfth Affirmative Defense*

Plaintiffs' claims under state law are barred in whole or in part because they are preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.*

Wachovia reserves the right to raise additional affirmative defenses at any point.

WHEREFORE, Wachovia demands: (a) that plaintiffs' complaint be dismissed with prejudice; (b) that judgment be entered in Wachovia's favor and against plaintiffs; and (c) that Wachovia be awarded its costs, including its attorneys' fees incurred in this action.

/s/ Michael J. Barrie
Michael J. Barrie
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

*Counsel for Defendants Wachovia Mortgage Corporation*
*and Wachovia Corporation*

Dated: February 5, 2008

**CERTIFICATE OF SERVICE**

I, Michael J. Barrie, certify that the forgoing Answer and Affirmative Defenses were served upon the following via the Court's electronic filing system:

John S. Grady, Esquire
Grady & Hampton, LLC
6 North Bradford Street
Dover, DE 19904

/s/ Michael J. Barrie
_____

February 5, 2008