## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOLANO ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 06 CV 00567 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA MORTGAGE CORPORATION | ) | |
| *and* WACHOVIA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

### REPLY BRIEF OF DEFENDANTS WACHOVIA MORTGAGE CORPORATION AND WACHOVIA CORPORATION IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall (admitted *pro hac vice*)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

Michael J. Barrie (#4684)
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Counsel for Defendants Wachovia Mortgage Corporation
and Wachovia Corporation*

May 27, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ................................................................................................. 1

I.  Plaintiffs' Claims Are Crippled By Multiple Failures Of Proof .................. 1

II.  Plaintiffs' Answering Brief Fails To Identify Direct Evidence Of Discrimination ................................................................................ 5

III.  Plaintiffs' Answering Brief Fails To Establish A *Prima Facie* Case Of Discrimination ........................................................................... 8

IV.  Plaintiffs' Answering Brief Fails To Establish Pretext ......................... 14

V.  Plaintiffs' Answering Brief Fails To Save Their Good Faith And Fair Dealing Claim From Summary Judgment ............................................ 16

CONCLUSION ............................................................................................ 20

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. Marous Bros. Contr., Inc.,* 211 Fed. Appx. 377 (6th Cir. 2006) .................................... 6

*Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573 (D. Del. 2006) .................................. 8, 15

*Cooley v. Sterling Bank*, 280 F. Supp. 2d 1331 (M.D. Ala. 2003) .......................................... 8, 15

*Cooper v. Paychex, Inc.*, 1998 U.S. App. LEXIS 21383 (4th Cir. 1998) .................................... 6

*Crawford v. Signet Bank*, 179 F.3d 926 (D.C. Cir. 1999) ...................................................... 15

*El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232 (3d Cir. 2007) ............................. 4

*E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990) ........................................ 6

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) .................................................................. 15

*Green v. California Court Apartment, LLC*, 2008 WL 681835 (W.D. Wash. Mar. 10, 2008) .................................................................................................................. 6

*Gregg v. Allen-Bradley Co.*, 801 F.2d 859 (6th Cir. 1986) .................................................. 7

*Hadfield's Seafood v. Rouser*, 2001 WL 1456795 (Del. Super. Ct. Aug. 17, 2001) ..................... 9

*Henn v. National Geographic Soc'y*, 819 F.2d 824 (7th Cir. 1987) .......................................... 7

*King v. Hardesty*, 517 F.3d 1049 (8th Cir. 2008) ............................................................... 5

*Kirt v. Fashion Bug # 3253, Inc.*, 495 F. Supp. 2d 957 (N.D. Iowa 2007) ............................... 6

*Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712 (7th Cir. 1998) .............................. 10

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .......................................... 5, 6, 10

*O'Neal v. State Univ. of New York*, 2006 U.S. Dist. LEXIS 81654 (E.D.N.Y. Nov. 8, 2006) .................................................................................................................. 7

*Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997) .......................................... 8

*Reed v. Hernandez,* 114 Fed. Appx. 609 (5th Cir. 2004) .................................................. 8

*Sallion v. Suntrust Bank*, 87 F. Supp. 2d 1323 (N.D. Ga. 2000) .......................................... 8

*Taylor v. Proctor & Gamble Dover Wipes*, 184 F. Supp. 2d 402 (D. Del. 2002) ....................... 5, 6

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996) ................................................................ 12

*Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297 (N.D. Ill. 2005) ................................................ 8

**Rules and Regulations**

Federal Rule of Evidence 201(b) ..................................................................................................... 12

Federal Rule of Evidence 701 ..................................................................................................... 5, 17

Federal Rule of Evidence 801(d)(2) ............................................................................................... 12

12 C.F.R. § 34.4(a) .......................................................................................................................... 17

**ARGUMENT**

Plaintiffs' answering brief fails to address the multiple deficiencies in their case. They have no direct evidence of discrimination, despite their attempts to find such evidence in purported statements by Hogsten that, on their face, contain no reference to plaintiffs' race and have no independent support in the record.  They cannot establish a *prima facie* case of discrimination because, as they concede, they cannot identify any white borrowers who were treated differently than they were.  And they have not produced any expert testimony -- or indeed any rebutting evidence at all -- to question the legitimate, non-discriminatory explanations that Wachovia has provided for every supposedly unreasonable loan condition or requirement plaintiffs have alleged.

In short, plaintiffs' claims do not survive summary judgment.

**I.    Plaintiffs' Claims Are Crippled By Multiple Failures Of Proof.**

Plaintiffs' answering brief leaves numerous holes in their case:

•    Plaintiffs allege that "similarly situated whites were not required to meet all the requirements imposed upon the Plaintiffs to be eligible for a mortgage," Second Am. Compl. ¶ 66, A-347, yet they concede in their answering brief that they cannot identify a single white borrower who was treated differently than they were.  Pls' Brf. at 23.

•    Plaintiffs do not dispute that the Anderson property had "water damage that needed to be resolved," Schuh Aff. ¶ 5, B-16, and they acknowledge that "Mr. Anderson was aware at the time he signed the contract that there was work that needed to be done on the house."  Pls' Brf. at 5.  Both Wachovia's and Fannie Mae's underwriting guidelines state that

"physical deficiencies or conditions that would affect [the property's] *livability*" must be repaired. A-40, A-34 (emphasis added).[1] Plaintiffs do not contest that that this water damage affected the livability of the home. Furthermore, plaintiffs acknowledge that the Andersons' loan commitment required a "*satisfactory* appraisal supporting [a] minimum value of $266,666.00." A-435 (emphasis added). Plaintiffs have offered no expert testimony to suggest that property can be *satisfactorily* appraised when it has "water damage that need[s] to be resolved."

•    Plaintiffs assert that "Hogsten was doing all he could to defeat the mortgage application[s]," Pls' Brf. at 32, yet plaintiffs do not deny that when Colleen Fazzino and Terri Hamm in Waterbury, Connecticut determined that the Wheatleys would have to increase their downpayment to 20%, Hogsten made repeated attempts to get them to change their minds. Fazzino testified that Hogsten was "really beating [her] up." Fazzino Dep. at 103:24-104:3, A-244. She noted in her comments log that she spoke with Hogsten "at great length several times," and "explained [the] prob[lem]s several times," and that he was "pursuing 90 percent again" long after Hamm had determined that the loan could not be approved at that ratio. A-55; *see also* Fazzino Decl. ¶¶ 46-50, A-21 to A-22; Fazzino Dep. at 58:12-60:24, A-233, 102:21-104:18, A-244.

---

[1]    Plaintiffs mistakenly assert that the Fannie Mae 2002 Selling Guide, which contains the Fannie Mae guidelines in effect at the time of these loans, has "not been previously referenced or produced." Pls' Brf. at 3. This is wrong. In November 2007, Wachovia specifically directed plaintiffs to the website where the 2002 Selling Guide can be electronically accessed, www.allregs.com/efnma. *See* responses to plaintiffs' first interrogatories and request for production of documents, C-18, C-24. Moreover, Wachovia has repeatedly "referenced" provisions of the 2002 Selling Guide in its motions in this case. *See* D.I. 41 at 4 n.4; D.I. 47 at 6 n.2 and 7-8. Wachovia also has provided the relevant portions of the Selling Guide with these filings. *See* D.I. 41, Exhibit E; *see also* appendix of exhibits to D.I. 48 at B-202, B-203, B-216, B-227, B-230.

•       Plaintiffs assert that "the Silver Lake Community" put "pressure" on Wachovia to deny plaintiffs' loans, yet their answering brief offers no evidence that anyone in "the Silver Lake Community" had any contact with Wachovia employees.  In particular, plaintiffs offer no evidence that anyone around Silver Lake put pressure on the underwriting personnel in Waterbury, Connecticut.  With the exception of the repairs that Hogsten advised Mr. Anderson to make so that the property could be satisfactorily appraised, there is no dispute that all other "loan conditions" and "requirements" about which plaintiffs complain were the result of decisions made by the underwriters in Waterbury.  It was the underwriter Fazzino who denied the Wheatleys' initial loan application because of the serious livability issues noted in the appraisal.  It was Fazzino's decision to deny the loan that required the Wheatleys to install heat on the second floor of the property and repair the other problems the appraisal described. Fazzino Dep. at 32:9-19, A-226, 89:17-90:2, A-240 to A-241, 91:15-93:1, A-241, 94:4-95:8, A-242; Wheatley Dep. at 58:9-61:5, A-166.  Moreover, it was the underwriter Fazzino, not Hogsten, who required the Wheatleys to get a certificate from a roofing contractor to verify that the roof did not leak.  Fazzino Dep. at 111:14-112:19, A-246, Fazzino Decl. ¶¶ 50-53, A-22. And it was Fazzino and the exception officer Terri Hamm who required the Wheatleys to increase their downpayment to 20%.  Fazzino Decl. ¶¶ 46-50, A-21 to A-22; Fazzino Dep. at 58:12-60:24, A-233, 102:21-104:18, A-244.

•       Plaintiffs say that they "never had any problems with mortgages until they attempted to obtain a mortgage in an all-white neighborhood," Pls' Brf. at 18, yet they offer nothing in their answering brief to substantiate this assertion.  They offer no evidence regarding the condition of the properties they purchased in "African-American neighborhoods," and they offer no evidence regarding what appraisal and underwriting guidelines applied to these loans.

3

They do not contest -- indeed, they do not even mention -- the declaration of DeeAnn Wicks that

Wachovia submitted with its opening brief, which specifically states that the Andersons'

previous loans were *commercial* loans obtained from Wachovia Bank, N.A. (which is not a party

to this action), not residential loans obtained from Wachovia Mortgage Corporation, and that

commercial loans are not subject to the same appraisal and underwriting guideless as residential

loans.  Wicks Decl. ¶ 6, A-6.[2]

        •      Plaintiffs argue that "Defendants' case relies upon the reliability of

Hogsten's testimony."  Pls' Brf. at 18.  But plaintiffs fail to produce any "grounds for

impeachment that would place the facts to which [Hogsten] testifies in legitimate dispute."  *El v.*

*Southeastern Pennsylvania Transp. Auth.,* 479 F.3d 232, 237 (3d Cir. 2007).  Instead, they offer

the flimsy assertion that Hogsten's perfectly legitimate reluctance to speculate at his deposition

about the demographics of Silver Lake somehow "colors" his credibility.  Pls' Brf. at 32.  This is

not "grounds for impeachment" at all:  when not supported by actual data, judgments about the

demographics of a community are hopelessly subjective and inherently suspect.  Hogsten's

unwillingness to engage in such speculation does not begin to call his credibility into question.

The incompetent lay opinion testimony that plaintiffs offer from Mr. Hill illustrates this

perfectly.  Hill's highly dubious assertion that "[a]nyone who has ever lived for any period of

time in Dover would know" that "the homes around Silver Lake were almost all owned by white

---

[2]      Neither the Wheatleys nor the Wilkinses had prior mortgages with Wachovia.  In their complaint, plaintiffs' alleged that the Wheatleys had a prior Wachovia mortgage, *see* Second Am. Compl. ¶ 3, A-339, but Mr. Wheatley retracted that assertion at his deposition.  *See* Wheatley Dep. at 15:9-24, A-155.

families," Hill Aff. ¶ 7, B-15, is worthless as evidence and does not undermine any of Hogsten's testimony.  *See* Fed. R. Evid. 701.

In sum, plaintiffs have no case.

**II.     Plaintiffs' Answering Brief Fails To Identify Direct Evidence Of Discrimination.**

Plaintiffs erroneously assert that they need not rely on the *McDonnell Douglas* burden-shifting framework because they supposedly have produced "direct evidence" of discrimination by Wachovia.  *See* Pls' Brf. at 28.  Plaintiffs' sole authority for this assertion is *King v. Hardesty,* 517 F.3d 1049 (8th Cir. 2008), in which the court declined to apply *McDonnell Douglas* only because the defendant specifically referenced the race of the plaintiff by saying "white people teach black kids better than someone from their own race."  *Id.* at 1059.  Plaintiffs have produced no such evidence in this case.

The only alleged statement that plaintiffs attempt to characterize as a reference to their race is Hogsten's supposed use of the phrase "you people."  Pls' Brf. at 27-28.  Plaintiffs erroneously argue that this is "direct evidence" of discrimination because "there is more than one *possible* meaning to the phrase 'you people'" and "[t]here is no reason at this stage to suggest" that Hogsten was not referring to their race.  Pls' Brf. at 27 (emphasis added).  This argument fails.

First, even assuming that plaintiffs were correct in asserting that the phrase "you people" could have "more than one possible meaning," on plaintiffs' own argument that phrase could *not* be direct evidence of discrimination.  Direct evidence is evidence that has absolutely no ambiguity:  "Courts have made plain that only the most blatant remarks, *whose intent could*

*be nothing other than to discriminate*, are considered sufficient to constitute direct evidence of discrimination." *Taylor v. Proctor & Gamble Dover Wipes,* 184 F. Supp. 2d 402, 413 (D. Del. 2002) (emphasis added). "Direct evidence of discrimination does not require a factfinder to draw *any inferences* in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Arnold v. Marous Bros. Contr., Inc.,* 211 Fed. Appx. 377, 380 (6th Cir. 2006) (emphasis added). The fact that plaintiffs are themselves asking this Court to *infer* that Hogsten meant "black people" when he allegedly said "you people" means that this phrase is not, even on plaintiffs' view, direct evidence of discrimination.

Indeed, even the cases that plaintiffs themselves cite refuse to treat "you people" as direct evidence of discrimination. *See E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 924 (11th Cir. 1990) (determining that "you people can't do a thing right" was "the kind of stray remark" that cannot be characterized as direct evidence); *Green v. California Court Apartment, LLC,* 2008 WL 681835, *6 (W.D. Wash. Mar. 10, 2008) (determining that "you people are all the same" is "ambiguous" and "not evidence of direct racial discrimination"); *Cooper v. Paychex, Inc.,* 163 F.3d 598 (4th Cir. 1998) (unpublished table decision), 1998 U.S. App. LEXIS 21383, *10, *24-*25 (analyzing plaintiff's discrimination claim under the *McDonnell Douglas* framework and thus by definition treating "you people" as indirect evidence of discrimination); *Kirt v. Fashion Bug # 3253, Inc.,* 495 F. Supp. 2d 957, 976 (N.D. Iowa 2007) (determining that reference to "you people" is "only circumstantial evidence of discriminatory intent, because one must infer a reference to African-Americans from the use of 'you people'").

Second, even assuming that a racially derogatory meaning is one "*possible* meaning" of the phrase "you people," plaintiffs are not entitled to an inference of discrimination

based on a speculative *possible* meaning. Plaintiffs must offer *some* reason to think that this is in fact what Hogsten meant -- assuming he even said this. But plaintiffs' sole basis for saying that Hogsten meant "black people" is that "there is no reason at this stage" *not* to conclude this. Pls' Brf. at 27. That simply is not sufficient, even on summary judgment. A "mere possibility is not enough to get past the summary judgment stage." *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986); *see also Henn v. National Geographic Soc'y,* 819 F.2d 824, 831 (7th Cir. 1987) ("In passing on a motion for summary judgment, a court must indulge in inferences in favor of the non-moving party, but it need not indulge all *possible* inferences.") (emphasis added).

Third, plaintiffs do not deny in their answering brief that plaintiffs' counsel failed to ask Hogsten at his deposition whether he ever used the phrase "you people." That alone deprives them of any inference in their favor regarding the meaning of this phrase. *Cf. O'Neal v. State Univ. of New York,* 2006 U.S. Dist. LEXIS 81654, *46 (E.D.N.Y. Nov. 8, 2006) (refusing to construe ambiguous letter in plaintiff's favor because plaintiff's counsel failed to ask witnesses about the letter at their depositions).

Thus, plaintiffs have no direct evidence of discrimination.[3]

---

[3]    In stark contrast to the at best ambiguous statements supposedly made by Hogsten, Mr. Anderson stated in no uncertain terms at his deposition that he sought to prevent people he "didn't want to be neighbors with" from buying plaintiffs' properties. Anderson Dep. at 28:20-29:7, A-103. Wachovia's counsel taking the deposition thought that Mr. Anderson said he did not want "some gay" causing his "property values to go down." This was confirmed by the fact that Mr. Anderson immediately apologized for the reference, *id* at 29:6, and seemed embarrassed by it. This was further confirmed when Wachovia's counsel received the deposition transcript. Now, months after Mr. Anderson's deposition and after Wachovia has already filed its opening brief, plaintiffs

*...Continued*

III.    **Plaintiffs' Answering Brief Fails To Establish A *Prima Facie* Case Of Discrimination.**

Plaintiffs' answering brief concedes that they cannot establish the central element of their *prima facie* case because they "cannot produce actual comparisons of other white applicants at Wachovia."  Pls' Brf. at 23.  This is fatal to their claims.  *See, e.g., Cooley v. Sterling Bank,* 280 F. Supp. 2d 1331, 1340 (M.D. Ala. 2003) (rejecting claim of credit discrimination under Section 1981 where plaintiff "has not presented sufficient evidence to establish that [defendant] approved loans for white applicants with similar qualifications"); *Sallion v. Suntrust Bank*, 87 F. Supp. 2d 1323, 1330-31 (N.D. Ga. 2000) (rejecting claim of credit discrimination "because [plaintiff] has not established [that defendant] approved the loan application of any similarly situated applicant who is not a member of the protected classes"); *cf. Brown v. Interbay Funding, LLC,* 417 F. Supp. 2d 573, 578-79 (D. Del. 2006) (rejecting claim of discrimination under ECOA where "there is no evidence of record depicting different appraisal methodology being applied to Non-African American[s]").

Plaintiffs attempt to escape the consequences of this failure of proof by arguing that it is somehow unfair to expect them to come up with it.  They cite no case in which a court has allowed a claim of credit discrimination to go forward in the absence of such comparative

*Continued from previous page*

are insisting that Mr. Anderson said "yahoo" not "gay."  The errata sheet is untimely and should be disregarded.  *See, e.g., Welsh v. R.W. Bradford Transp.,* 231 F.R.D. 297, 301 (N.D. Ill. 2005); *Reed v. Hernandez,* 114 Fed. Appx. 609, 611 (5th Cir.  2004).

Plaintiffs further wrongly maintain that on summary judgment the Court is required to accept assertions in an errata sheet as true.  Pls' Brf. at 30, 31.  Plaintiffs cite no authority for that erroneous contention.  Moreover, it simply is not the law.  *See, e.g., Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 103 (2d Cir. 1997) (refusing to allow plaintiff to defeat summary judgment by using an errata sheet to alter his deposition testimony).

evidence.  Instead, they cite an unpublished Delaware Superior Court case under the Delaware

Equal Accommodations Law, *Hadfield's Seafood v. Rouser,* 2001 WL 1456795, *4 (Del. Super.

Ct. Aug. 17, 2001).  *See* Pls' Brf. at 21-22.  That case bears no relationship to this case.  In

*Rouser*, plaintiffs alleged that the poor service they received at a restaurant was racially

motivated.  In that type of service-industry context, conceivably, one might in some

circumstances be able to infer disparate treatment solely from the poor service itself.  By

contrast, mortgage loans are governed by highly technical underwriting and appraisal

requirements.  Although plaintiffs personally feel that those requirements should have been

handled differently in this case, they have offered no expert testimony suggesting that these

guidelines were not correctly applied.  In the absence of such expert testimony, the only

legitimate basis on which supposed disparate treatment could be inferred is actual comparative

evidence showing that non-minority borrowers were treated differently.  Plaintiffs have none.

        Plaintiffs also try to blame their failure to establish a *prima facie* case on this

Court's discovery rulings.  This argument is meritless because plaintiffs never sought this type of

comparative evidence in discovery.  Rather, what plaintiffs requested was:  (1) Wachovia's loan

*approval* statistics by race both nationally and in Delaware, *see* plaintiffs' request no. 4, C-7,

plaintiffs' request no. 11, C-9; and (2) data on the *number of applications* by African-Americans

for homes over $250,000.00 both generally and in Kent County, and the number approved, *see*

plaintiffs' interrogatory no. 15, C-11.  Statistics of this sort might theoretically have some

relevance in a disparate impact case alleging that a bank has a discriminatory policy or practice

of *denying* loans to African-Americans.  But that is not plaintiffs' case:  plaintiffs' claim is that

in order to get their loans -- *which were approved* -- they had to satisfy supposedly unreasonable

loan conditions which were not imposed on whites.  The loan approval and loan application

statistics plaintiffs sought have no relevance at all to that claim. The only statistics that could possibly be relevant to plaintiffs' claim would be statistics comparing loan conditions imposed on African-Americans and loan conditions imposed on borrowers of other races. As Wachovia explained in its brief in opposition to plaintiffs' motion to compel discovery, such statistics simply do not exist. One would have to go through each and every loan file to ascertain what conditions were or were not imposed. *See* D.I. 47 at 10-12. And, as this Court correctly held, such intrusive discovery simply could not be justified. D.I. 55.[4]

As an attempted substitute for proving that white borrowers were treated differently than they were, plaintiffs assert that they should be allowed to establish a *different prima facie* case, one not recognized in any case law.[5] They say they have met this purported *prima facie* case because: (1) "Plaintiffs have testified that, in fact, the ring around Silver Lake was predominantly white," Pls' Brf. at 22; and (2) "Plaintiffs have produced their own testimony of how their treatment was significantly different than their prior experiences at this bank and other banks," Pls' Brf. at 23. This argument fails.

---

[4]    Moreover, as Mr. Anderson himself testified, plaintiffs conducted their own investigation in the community to seek out borrowers who might corroborate their claims. Anderson Dep. at 96:10-97:23, A-120. This was the only proper way for plaintiffs to attempt to obtain this information, not by a fishing expedition through Wachovia's files. As of the date of Mr. Anderson's deposition, they had identified no one. *Id.* And, as is now plain, they have failed to identify anyone since. If, as is clearly the case, their own investigation has yielded nothing, that is not Wachovia's fault (or the fault of this Court). Rather, it is because plaintiffs' claims have no merit.

[5]    Ironically, plaintiffs cite *Latimore v. Citibank Federal Savings Bank,* 151 F.3d 712 (7th Cir. 1998), for the assertion that *McDonnell Douglas* was not intended to be a "straight jacket." Pls' Brf. at 21. Plaintiffs entirely miss the point of that case. *Latimore* held not that a plaintiff in a credit discrimination case should be permitted to establish a *prima face* inference of discrimination by some novel means of their own devising, but that a plaintiff is not entitled to a burden-shifting presumption of discrimination when a bank takes an adverse action with respect to his or her loan. *Latimore,* 151 F.3d at 715-15.

First, plaintiffs have failed to offer any evidence substantiating their assertion that they indeed experienced in this case "treatment [that] was significantly different" from their experience with prior loans. As noted above, *see* footnote 2, neither the Wheatleys nor the Wilkinses had prior Wachovia loans. As to the Andersons, plaintiffs do not contest DeeAnn Wicks' declaration in which she explains that the Andersons' prior loans were not residential loans through Wachovia Mortgage Corporation but were commercial loans through Wachovia Bank, N.A. A-6. Plaintiffs do not contest that these prior commercial loans were not subject to the same appraisal and underwriting guidelines as the loans in this case. *Id.*

Second, as to plaintiffs' contention that the "ring" around Silver Lake is "predominantly white," plaintiffs never explain what this is supposed to mean. If this simply means that a majority of residents around the Lake are white, then Wachovia is prepared to accept this. But plaintiffs go much further than this, asserting that they were purchasing "property in an *all white* Silver Lake neighborhood." Pls' Brf. at 30 (emphasis added). Even assuming this description were accurate -- which it is not -- plaintiffs have absolutely no evidence that this supposedly "all white Silver Lake neighborhood" had any influence, or even *tried* to have any influence, on the approval of plaintiffs' loans. Furthermore, the objective facts simply do not support the description of the neighborhood as "all white," even under the summary judgment standard. Plaintiffs make no attempt to respond to Wachovia's request that this Court take judicial notice of the census data for Dover, Delaware that Wachovia submitted with its opening brief, which squarely demonstrates that plaintiffs' homes were not in an "all white" neighborhood. *See* Op. Brf. at 2 n.2. Plaintiffs' argument that "[n]o one on behalf of the Defendants has testified as to the significance of the census information," Pls' Brf. at 22, is irrelevant because no one at Wachovia *needs* to testify to this data. The census data is "not

subject to reasonable dispute." *United States v. Esquivel,* 88 F.3d 722, 727 (9th Cir. 1996) (citing Fed. R. Evid. 201(b)).[6]

       Nor can plaintiffs derive any support from the hearsay statement supposedly made by DeeAnn Wicks of Wachovia Bank, N.A., that Silver Lake is an "exclusive lily white community." The only evidence that this statement ever was made is Mr. Anderson's deposition testimony. Moreover, this alleged statement is inadmissible and cannot be considered on summary judgment. Ms. Wicks is not a party to this action, nor is her employer, Wachovia Bank, N.A. And even if Wachovia Bank, N.A., were a party to this action, this alleged statement was not made in the scope of Ms. Wick's employment, on Mr. Anderson's own testimony. According to Mr. Anderson, he had this alleged conversation with Ms. Wicks during the loan application process for the loan *in this case*, which was a loan he obtained through Wachovia Mortgage Corporation, which is *not* Ms. Wicks employer. *See* Fed. R. Evid. 801(d)(2) (statement is considered an "admission" by a party opponent when made by "the party's agent or servant concerning a matter *within the scope of the agency or employment*") (emphasis added).

       Lastly, there is no basis to support plaintiffs' contention that they can somehow establish a *prima facie* case of discrimination because of alleged "procedural irregularities" "by Hogsten." Pls' Brf. at 19; *see also* Pls' Brf. at 23. Plaintiffs cannot dispute that all but one of the supposed requirements about which they complain were imposed by people *other than Hogsten*. Fazzino*,* not Hogsten, denied the Wheatleys' loan when she saw the appraisal and noted that there was no heat on the second floor of the property, there was asbestos in the basement, and the

---

[6]    Plaintiffs also do not deny that there is a condominium complex on the shore of the Lake, right next door to the Anderson property. *See* A-10. Plaintiffs do not contend that they have gone door-to-door through this complex to verify that it is "all white."

roof may have had a leak.  Fazzino Dep. at 32:9-19, A-226, 89:17-90:2, A-240 to A-241, 91:15-93:1, A-241, 94:4-95:8, A-242.  Thus, Fazzino, not Hogsten, forced the Wheatleys to address the appraiser's concerns, which they did.  *See* Wheatley Dep. at 58:9-61:5, A-166.  Plaintiffs point to no evidence that this was a "procedural irregularity" and plaintiffs do not maintain that Fazzino was racially biased.  Moreover, Fazzino, not Hogsten, required the Wheatleys to submit a letter from a roofing contractor at the first closing on August 6.  Fazzino Dep. at 111:14-112:19, A-246, Fazzino Decl. ¶¶ 50-53, A-22.  Again, plaintiffs point to no evidence that this was a "procedural irregularity."

Equally unsupported is plaintiffs' assertion that Hogsten "would not permit a commitment letter to be issued for Wheatley until Wheatley's home met Hogsten's repair standards."  Pls' Brf. ay 26.  Loan commitments are issued out of Waterbury, Connecticut, as the loan processor Maria Belo explained.  *See, e.g.,* Belo Dep. at 12:15-25, A-304.  Plaintiffs have no evidence that Hogsten somehow interfered with that process.  A commitment was never issued for the Wheatleys' first loan application because that application was denied.  A commitment for the Wheatleys' second loan application could not be issued until the problems with the Wheatley downpayment were resolved.  That did not occur until the second closing on August 13, 2004.[7]

The *only* supposed "loan condition" that plaintiffs can attribute to Hogsten is the advice he gave to Mr. Anderson that he should repair the water damage so that the property could be appraised.  Plaintiffs cannot seriously maintain that this was a "procedural irregularity" because they *do not dispute* that the property had "water damage that needed to be resolved."

---

[7]        *See* Section V below for further discussion of the Wheatley downpayment.

Schuh Aff. at 5, B-16.  Moreover, they do not dispute that a "satisfactory appraisal" was a condition of the loan, *see* A-435, and they do not dispute that there was no appraisal because the appraiser, John Mullens, determined that he could not do an appraisal with the property in that state.  A-89 to A-92.  Hogsten was simply trying to save the loan from being denied.  Hogsten at 28:15-20, A-195.  As Skowronski explained, Hogsten was "letting [the Andersons] know ahead of time" what to expect from the underwriters if they "were to continue to go through with this deal."  Skowronski Dep. at 32:6-11, A-287.  Plaintiffs have offered no evidence to rebut this.

In short, plaintiffs' answering brief fails to establish a *prima facie* case of discrimination.

## IV.    Plaintiffs' Answering Brief Fails To Establish Pretext.

Plaintiffs likewise fail to show that any of the legitimate non-discriminatory reasons that Wachovia has provided for its actions were pretexts for discrimination.  Because "[f]ederal courts do not sit as a court of appeals that reexamines a bank's business decisions," a plaintiff "must meet the bank's non-discriminatory reason *head on and rebut it*."  *Cooley,* 280 F. Supp. 2d at 1343.  Plaintiffs make no attempt to do this.

As to the Anderson property, plaintiffs do not dispute the legitimate, non-discriminatory reason that the water damage had to be repaired so that the property could be satisfactorily appraised.  Hogsten Dep. at 28:15-20, A-195; Schuh Aff. ¶ 5, B-16; *see also* A-435 (requiring a "*satisfactory* appraisal supporting minimum value of $266,666.00") (emphasis added).  Nor do plaintiffs dispute that Mullens, the appraiser assigned to the Anderson property, determined that he could not do the appraisal when he saw the condition of the property.  A-89 to A-91.  Plaintiffs offer no expert testimony regarding the professional standards of appraisers to

14

support any purported inference that Mullens' determination was improper. *See Brown v. Interbay Funding, LLC,* 417 F. Supp. 2d 573, 579 (D. Del. 2006) (noting that appraisal standards are beyond the ordinary knowledge of lay jurors and require expert testimony); *Crawford v. Signet Bank,* 179 F.3d 926, 929 (D.C. Cir. 1999) (same).  Plaintiffs' assertions that Hogsten and Mullens were "friendly" and "went out to lunch" simply do not reveal any "weakness, implausibility, inconsistency, incoherency or contradiction" in this legitimate, non-discriminatory reason. *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994).

As to the Wheatley property, nowhere in plaintiffs' answering brief do they dispute that the appraisal for their property noted serious issues including:  1) the lack of heat on the second floor; 2) concerns about the condition of the roof; and 3) asbestos in the basement. A-166; *see also* Wheatley Dep. at 58:9-61:5.  Nor do plaintiffs dispute that Fazzino, not Hogsten, determined that the property was not livable based on the appraisal.  Fazzino Dep. at 32:9-19, A-226, 89:17-90:2, A-240 to A-241, 91:15-93:1, A-241, 94:4-12, A-242.  Plaintiffs have offered no testimony from an underwriting expert to suggest that Fazzino's decision was improper. Plaintiffs submit the affidavit of Mr. Schuh who says that the Wheatley property was "livable," Schuh Aff. ¶ 5, B-16, but "livable" in this context is a technical underwriting term.  Mr. Schuh's inadmissible lay opinion testimony is not sufficient to cast doubt on Fazzino's judgment as the underwriter that the Wheatley property did not satisfy the applicable guidelines.[8]  Nor have plaintiffs made any allegation that Fazzino acted with discriminatory intent.

---

[8]     Mr. Schuh does not dispute in his affidavit any of the concerns that the appraiser identified in the Wheatley appraisal.  However, Mr. Schuh does say that the Wheatley and Wilkins properties "had been rented out."  If Mr. Schuh means to imply that people were living in the Wheatley and Wilkins properties at that time, then Mr. Schuh's

*...Continued*

Lastly, plaintiffs have failed to demonstrate pretext with respect to the Wheatleys' increased downpayment or the underwriter's concerns about the Wilkinses' use of a credit card to pay their earnest money deposit. They make no attempt to challenge the explanation of the underwriter George Akerley that a credit card is not an acceptable source of funds for an earnest money deposit. A-61 to A-65. As to the Wheatleys' downpayment, plaintiffs do not dispute that the Wheatleys had no CPA for their business and they do not contest that the underwriting guidelines required that their business funds be verified by a CPA. Fazzino Decl. ¶¶ 41-44, A-21; Fazzino Dep. at 51:10-19, A-231, 99:21-101:9, A-243.

Thus, plaintiffs have failed to show that any of Wachovia's legitimate, non-discriminatory reasons for the events in this case were pretexts for discrimination. The Court should enter summary judgment in Wachovia's favor.

## V.    Plaintiffs' Answering Brief Fails To Save Their Good Faith And Fair Dealing Claim From Summary Judgment.

The crux of plaintiffs' good faith and fair dealing claim is that Wachovia supposedly exploited "the fact that the Plaintiffs needed to buy all three houses in order to complete their deal" and seized opportunity to "erect[] unreasonable hurdles before [plaintiffs] could receive" their loans. Pls' Brf. at 35. Like their discrimination claim, this claim cannot survive summary judgment.

---

*Continued from previous page*

affidavit is in conflict with the undisputed testimony of the parties. *See* Wheatley Dep. at 55:18-20, A-165 ("[T]here was no living person in the home. So it wasn't in the best pristine or livable condition."); Wilkins Dep. at 90:9-10, A-276 (stating that the properties "had been unoccupied for about the same length of time"); *see also* Anderson Dep. at 122:1-7, A-127.

First, as to preemption, plaintiffs' answering brief fails to address the core issue: plaintiffs are attempting to substitute their own personal judgment as to how their loans should have been handled for the national underwriting guidelines that govern the mortgage lending industry. The upshot of plaintiffs' claim is that the mortgage industry should not be regulated by uniform clear rules but rather by *ad hoc* accommodations tailored to the whim of the individual borrower. Plaintiffs' claim by definition "obstruct[s], impair[s], [and] condition[s] a national bank's ability to fully exercise its Federally authorized real estate lending power." 12 C.F.R. § 34.4(a).

On the merits, plaintiffs fail to offer any rational support for their theory. Plaintiffs do not dispute that the Anderson property needed repairs. Plaintiffs' sole argument that the repairs were somehow unreasonable is that Mr. Anderson "thought that the property was well-worth what he was paying for it and that he would like to go to settlement and fix it up later." Pls' Brf. at 8. But banks do not loan a quarter of a million dollars to a borrower based on the borrower's personal feeling that the property is "worth what he is paying for it." The borrower cannot defer significant repairs until "later" simply because he "would like to go to settlement." Plaintiffs have offered *no* expert testimony that repairs to the Anderson property prior to closing were unreasonable under standard lending-industry practices. Mr. Andersons' self-serving assertion that "it's not reasonable to require repairs or any work to be done on a property prior to the acquisition of the property," Anderson Dep. at 145:21-24, A-132, is inadmissible lay opinion testimony, *see* Fed R. Evid. 701, and does not begin to show that these repairs were unreasonable.

Nor is there any merit to plaintiffs' argument that these repairs were unreasonable because the underwriting guidelines do not contain the actual words "move-in condition," the

phrase Hogsten used when he advised Mr. Anderson to repair the property.  Pls' Brf. at 35-36.
Both Wachovia's and Fannie Mae's underwriting guidelines state that "physical deficiencies or
conditions that would affect [the property's] *livability*" must be repaired.  A-40, A-34 (emphasis
added).  Hogsten explained at his deposition that "move in condition" just means *livable*.
Hogsten Dep. at 29:8-18, A-195, 42:12-23, A-99.  Plaintiffs cannot manufacture a claim for
breach of the covenant of good faith and fair dealing out of some purported semantic distinction
between "livable" and "move in condition."  Moreover, plaintiffs have offered no expert
testimony that the property the Andersons sought to purchase was, indeed, *livable*.

Nor can plaintiffs survive summary judgment based on the fact that the Anderson
loan commitment, which required a "satisfactory appraisal supporting [a] minimum value of
$266,666.00," did not use the phrase "move-in condition."  Pls. Brf. at 36.  Plaintiffs have
offered no expert testimony explaining what *they think* a "satisfactory appraisal" is.  Nor have
they offered any expert testimony that a property can be "satisfactorily appraised" when the
borrower would not be able to *move in* to the property because significant water damage had yet
to be "resolved."  Schuh Aff. ¶ 5, B-16.

Nor do plaintiffs dispute that the appraisal for the Wheatley property "noted
certain concerns."  Pls' Brf. at 37.  Plaintiffs do not explain how it could be unfair to require that
heat be installed on the second floor of a house, or why it should be unreasonable to require an
inspection of the roof when the appraisal suggests there could be a leak.

There likewise is no merit to plaintiffs' assertion that "Wheatley's loan
application kept changing until the very day of the second settlement, where he was suddenly
required to produce a 20% down payment."  Pls' Brf. at 36.  Plaintiffs have failed to tell a

18

consistent or coherent story regarding this downpayment. On the one hand, they say that "the first time Wheatley heard about the down payment going from 10% to 20%" was on "August 13, 2004." Pls' Brf. at 13. But in the *very next sentence* of their brief they say that "on August 12, 2004, [Mr. Wheatley] was informed by Mr. DeStefano that Wachovia was unable to obtain PMI for his home and that the only way to go forward was to put down 20%." *Id.* Moreover, plaintiffs' Second Amended Complaint alleges that the Wheatleys were informed of the higher downpayment the week before, at the first closing on August 6. *See* Second Am. Compl. ¶¶ 53-56, A-345 to A-346. Mr. Anderson insists that the allegations "contained in the Second Amended Complaint are true," Anderson Aff. ¶ 2, B-10, so plaintiffs' own competing narratives of the Wheatley downpayment are hopelessly irreconcilable.[9]

---

[9]    Mr. Wheatley's recollections of the events relating to the downpayment are confused in other respects as well. He said at his deposition that he originally applied for a "non-income verification loan" with a 15% downpayment. Wheatley Dep. at 32:14-18, A-159. He says that this was then changed to an "income verification loan" with a 10% downpayment, Wheatley Dep. at 33:5-11, A-159, which, in the end, became a 20% downpayment. Wheatley Dep. at 109:3-15, A-178. However, the uncontested documentary record shows that the Wheatleys originally applied for a loan of $240,000.00 on June 22, 2004, A-400, A-404, which is 90% of the $266,666.67 purchase price of the Wheatley property. At no time did the Wheatleys ever apply for a loan with a loan-to-value ratio of 85%. Nor was the Wheatleys' loan ever changed to an "income verification loan," as Mr. Wheatley asserts. The Wheatleys' original loan was what the industry terms a "no ratio" loan, meaning that the Wheatleys were not asked to provide their income on the application. Fazzino Dep. at 30:21-25, 31:22-32:2, A-226, 80:20-81:1, A-238. The Wheatleys' credit score was not high enough for this "no ratio" loan, so Fazzino made a counter-offer to a "stated income" loan, in which the borrower's income is *stated* but not verified. Fazzino Dep. at 30:19-31:14, A-226, 84:20-86:2, A-239 to A-240, 89:3-13, A-240. After she made this counter-offer, she received the appraisal for the Wheatley property noting the serious livability concerns and denied the loan. Fazzino Dep. at 87:19-90:5, A-239 to A-241. The Wheatleys then addressed many of these concerns and reapplied for their stated income loan. Fazzino Dep. at 95:21-97:3, A-242. This second loan application was ultimately approved at an 80% loan to value ratio, a requirement imposed by Terri Hamm.

Plaintiffs point to no evidence that any of the decisions by the underwriting department in Waterbury relating to the Wheatley loan were wrong or were made in bad faith. And plaintiffs offer no expert testimony as to how they think the Wheatleys' loan should have been handled. These failures are fatal to their claim. The Court should grant summary judgment in favor of Wachovia.

## CONCLUSION

For these reasons, as well as those set forth in their opening brief, defendants Wachovia Mortgage Corporation and Wachovia Corporation hereby respectfully ask that the Court enter summary judgment in their favor.

Respectfully submitted,

/s/ Michael J. Barrie
Michael J. Barrie (#4684)
Schnader Harrison Segal & Lewis LLP
824 N. Market Street
10th Floor, Suite 1001
Wilmington, DE 19801-3011
(302) 888-4554

*Of Counsel*
Elizabeth K. Ainslie
Stephen A. Fogdall
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

*Counsel for Defendants Wachovia Mortgage Corporation
and Wachovia Corporation*

Dated: May 27, 2008

**CERTIFICATE OF SERVICE**

I, Michael J. Barrie, certify that the forgoing Reply Brief of Defendants Wachovia

Mortgage Corporation and Wachovia Corporation in Support of their Motion for Summary

Judgment has been electronically filed and is available to be viewed and downloaded on the

Court's ECF website.  I further certify that a copy of this Reply Brief has been sent by overnight

mail to the following:

John S. Grady, Esquire
Grady & Hampton, LLC
6 North Bradford Street
Dover, DE 19904


/s/ Michael J. Barrie
Dated:  May 27, 2008